## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT STEINBUCH,

                 Plaintiff,

       - against -                Case No. 1:05-CV-00970 (PLF)

JESSICA CUTLER,

                 Defendant.

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

       Defendant Jessica Cutler ("Cutler"), by counsel and making for now a limited appearance, submits this reply to plaintiff Robert Steinbuch's ("Steinbuch") Opposition to Cutler's Motion to Dismiss the Complaint ("Opp." or "Opposition"), filed September 15, 2005. The facts on which Cutler relies are of record.

## PRELIMINARY STATEMENT

       Steinbuch seeks to entice this Court down a road no court in a reported decision has ever ventured to travel. In essence, Steinbuch invites the Federal judiciary to become the ultimate referee in disputes between disaffected former casual sex partners who happen to be citizens of different States. Despite its noisy irrelevancies, the Opposition does not seriously dispute that there was no legally cognizable relationship between Steinbuch and Cutler created by their 12-day tryst that is worthy of protection under the common-law tort claim of public disclosure of private facts. Under Steinbuch's theory, any human being who has carnal knowledge of another outside of marriage, <u>under any circumstances,</u> could run to the court to complain when a former lover decides to reveal the sordid details of their mutually consensual love-making. This Court should decline to make new law by issuing such a declaration. Instead,

Dockets.Justia.com

this Court should hold that Steinbuch's claim (the lion's share of which is time-barred anyway) fails to state a claim upon which relief can be granted.

## REPLY TO STEINBUCH'S INTRODUCTORY STATEMENT

In an attempt to stave off dismissal of this meritless lawsuit, Steinbuch seeks through the Opposition to transform his legally insufficient complaint into a wholly different cause of action by raising new factual contentions and legal issues. The focus of Steinbuch's "revised" (but unamended) complaint is that he and Cutler had a relationship that established principles of law should seek to protect. No such relationship ever existed.

Read in context, the complaint makes clear that Steinbuch and Cutler had their first substantive encounter on the evening of May 6, 2004, and almost immediately began their tryst, which ended abruptly on May 18, 2004, with the publicity of Cutler's Blog by Wonkette (not Cutler). There is no precedent holding that a short-lived, mutually consensual tryst of the kind enjoyed by Steinbuch and Cutler amounts to a "relationship" protectable by law. For Steinbuch now to suggest that disclosure of the sensational details of the tryst on the Blog (later made public by Wonkette) caused him "pain and suffering beyond that which any reasonable person should be expected to bear" (Opp. 1) is absurd.

## REPLY TO STEINBUCH'S STATEMENT OF FACTS

Steinbuch asserts that the facts contained in the Opposition "are taken from the complaint, and must be accepted as true for the purpose of a motion to dismiss" (Opp. 2 n.1). The Opposition, however, advances a torrent of factual claims that either have no support in the complaint or are flatly contradicted by the Blog, which Steinbuch incorporated into the complaint by attaching it as an exhibit.

In the complaint, Steinbuch acknowledges that "Wonkette described the [Blog's]

contents, <u>republished numerous excerpts on the Wonkette web site</u>, and linked to the public blog, beginning the media 'feeding frenzy' that followed" (Compl. ¶ 17) (emphasis added).  In the Opposition, however, Steinbuch retreats from this allegation, claiming that "Cox [editor of Wonkette] did <u>not</u> copy or repeat Cutler's public blog into her own blog, Cox merely hyperlinked to Cutler's own public blog" (Opp. 5).  The allegations on this point in the complaint and those set forth in the Opposition cannot both be true.  Under Fed. R. Civ. P. 8 and 12, the allegation in the complaint must prevail.  Furthermore, although Steinbuch asserts in the complaint that "Cutler admiringly referenced [Wonkette] in her public blog" (Compl. ¶ 16), he does not purport to allege, either in the complaint or the Opposition, that Cutler actually provided Wonkette with the Blog's URL, or otherwise facilitated the publication of the Blog via Wonkette.  Having failed to plead these essential facts, it is not enough for Steinbuch now to state in conclusory fashion that "[a]s a result of [Cutler's] actions, her public blog became notorious throughout Washington, D.C. and the nation" (Opp. 5).

Through her narrowly focused, legally competent declaration that accompanied her motion, Cutler establishes that:   (1) she did not publicly advertise the existence of the Blog; (2) she disclosed the Blog's URL only to four friends but did <u>not</u> herself disclose it to Wonkette[1]; and (3) she did not give anyone else permission to disclose the existence of the Blog to Wonkette (*see* Cutler Decl. ¶¶ 5, 9).  Wonkette somehow discovered the Blog without Cutler's knowledge or consent.  Thus, in reviewing her motion to dismiss, this Court should consider Cutler's declaration and treat the motion as a Rule 56 motion for summary judgment (as permitted under Rule 12(b)) because the declaration presents relevant new facts in a legally competent manner

---

[1]    Cutler clarified on page 8 of her principal memorandum that one of the four was a friend of a friend, to whom Cutler gave express permission to access the Blog.

that supplements the complaint without contradicting it.

In the Opposition, Steinbuch offers new "facts" not presented in his complaint; he also invents statements attributed to Cutler's declaration that the declaration does not contain. For example, Steinbuch asserts that "Cutler admits that she deliberately declined to password protect her blog" (Opp. 2). That is not true. Steinbuch's assertion implies that Cutler was presented with the option of having her Blog password-protected but intentionally declined it. Cutler's declaration actually avers this: "I could not find in the 'Basic Settings' area or any other area of Blogger the option of making a blog password protected" (Motion to Dismiss, Ex. 1 [Cutler Decl. ¶ 5]). Regardless, for purposes of her Motion to Dismiss, it is undisputed (but also not material) that the Blog was not password-protected.

In the Opposition (but not in the complaint), Steinbuch further asserts that Cutler: (1) was hired to write for Wonkette; (2) went on television with Wonkette editor Ana Marie Cox; (3) "sought widespread public attention and publicity for herself"; (4) "further disseminated the contents of the public blog through the channels of mass media"; (5) republished the entire Blog in a June 2, 2004, article written for a British newspaper; (6) posed for *Playboy* magazine; and (7) entered into an authorship contract to write a novel based on her experiences (Opp. 6). All such allegations are unsworn and thus incompetent. They are also irrelevant to Steinbuch's pleaded claims of public disclosure of private facts and intentional infliction of emotional distress. They thus will not be addressed here further. As for Steinbuch's new claim that Cutler's recently published novel, *The Washingtonienne*, constitutes a misappropriation of plaintiff's likeness (Opp. 6 n.4), suffice it to say that the book is fiction and that Steinbuch seeks no relief in the complaint arising out of the book's publication.

Building on his unpleaded misappropriation of likeness claim, Steinbuch — for

4

the very first time — claims in the Opposition that eight specific statements in the Blog are <u>false</u> (Opp. 7).  For example, Steinbuch repeatedly cites paragraph 31 of the complaint to support his new contention that Cutler made false statements about Steinbuch.  In fact, paragraph 31 makes no claim that any specific assertion in the Blog is untrue.  At most, paragraph 31 quibbles with Cutler's assertion in the Blog that Steinbuch told her "he likes submissive women" by insisting that Steinbuch actually said "I don't mind passive" (Opp. 2).  But, in her Blog (and now in the complaint), Cutler was merely describing her recollection of what Steinbuch told her without purporting to quote him directly.  Thus, there can be no legitimate contention that, in the Blog, Cutler inaccurately put words into Steinbuch's mouth.  Furthermore, saying, as Steinbuch now attempts to do, that Cutler presented facts that were "scandalized to attract more attention" and that "Cutler added apocryphal events" (Compl. ¶ 31) simply does not support Steinbuch's new contention that Cutler "made <u>false</u> claims about Plaintiff" (Opp. 2) (emphasis added).

Leaving aside the fact that most of Cutler's Blog statements Steinbuch claims to be false are either taken out of context or are not provably false statements of fact, Steinbuch's complaint contains no allegation of falsity with respect to <u>any</u> of the statements in the Blog.[2] Moreover, no fair reading of Steinbuch's complaint reveals a claim for invasion of privacy by false light or defamation.  On the contrary, the most plausible reading of the complaint is that <u>all</u> the Blog's statements "of and concerning Plaintiff" (Compl. ¶ 13 (internal quotation marks omitted)) are true statements of fact.

---

[2]     Steinbuch provides no standard for determining what the terms "freaky shit," "fucked every which way," "talking dirty," "crazy," "nasty sex like animals," and "submissive women" actually mean.  Accordingly, even if Steinbuch had pleaded a claim for false light or defamation, which he did not, it is doubtful that any of the foregoing statements constitute express or implied verifiably false statements of fact.  *See generally Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) ("a statement on matters of public concern must be provable as false before there can be liability under state defamation law").

Finally, Steinbuch's allegations that he "suffered severe emotional distress, humiliation, embarrassment, and anguish" (Opp. 7 (quoting Compl. ¶¶ 33-34)) do no more than repeat the conclusory, specificity-lacking allegations of the complaint.

## ARGUMENT

## REPLY TO STEINBUCH'S DISCUSSION POINT II

Steinbuch's argument that Cutler "fails to apply the proper standard for a motion to dismiss" (Opp. 8) is unfounded. Cutler's declaration in support of her Motion to Dismiss is a matter "outside the pleading," but Fed. R. Civ. P. 12(b) clearly gives the Court discretion to consider it within the framework of a Rule 56 motion for summary judgment. *See Mittleman v. United States*, 997 F. Supp. 1, 6 (D.D.C. 1998) ("In the event matters outside the pleadings are presented to and not excluded by the court, and the court assures itself that such treatment would be fair to both parties, a motion to dismiss may be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56."), *aff'd*, No. 98-5126, 1998 U.S. App. LEXIS 28527 (D.C. Cir. Oct. 15, 1998). Cutler's declaration is narrowly focused and limited to providing this Court background information about how and why the Blog was created. It is material only insofar as it fills the factual gap left by Steinbuch's complaint about how Wonkette could have discovered the Blog if its existence was not publicly advertised or known.[3] As noted, these facts do not contradict any allegation of Steinbuch's complaint; they are merely supplemental and not reasonably capable of being disputed. They are relevant only to the

---

[3]    By attaching as Exhibit A to his complaint the entire Blog, including the introductory statement, Steinbuch has incorporated all factual statements therein into his complaint as a matter of law. *See* Fed. R. Civ. P. 10(c). As a result, this Court should consider the statement in the introduction that the Blog "was NEVER cached by Google" a well-pleaded factual allegation establishing that it was not possible to find the Blog using the Google search engine before May 28, 2004 (*see infra* pp. 6-7).

issue of whether, by the mere creation of the Blog, Cutler gave "publicity" to Steinbuch's allegedly private facts.

Steinbuch has failed to contest Cutler's facts with any countervailing evidence of his own, although Rule 12(b) permitted him to do so. Regardless, should this Court decide not to consider Cutler's declaration, Steinbuch's complaint and the text of the Blog demonstrate as a matter of law that his claims are largely time-barred and are otherwise legally unsustainable because: (1) the facts Cutler disclosed were either never private or lost their private character after Steinbuch waived and/or ratified their disclosure; (2) Cutler had a First Amendment privilege to disclose intimate facts of her sexual relationship with Steinbuch (whom the Blog does not expressly name); and (3) the sexual details disclosed in the Blog do not as a matter of law constitute extreme and outrageous conduct, and Steinbuch's claim of severe emotional distress is formulaic and devoid of particularity.

Steinbuch complains that Cutler is improperly relying on the Blog "for the truth of the matters asserted therein" and as statements of "undisputed facts" (Opp. 9). Steinbuch confuses issue by stating the definition of hearsay in Fed. R. Evid. 801(c). But whether a particular statement is admissible as evidence within the terms of the rule against hearsay is not at issue on a motion to dismiss. Moreover, it was Steinbuch — not Cutler — who voluntarily attached a copy of the complete Blog as an exhibit to his complaint <u>and</u> asserted that the statements therein "of and concerning" him were all true (*i.e.*, by casting them as private <u>facts</u>). There are legal consequences to that decision. *See* Fed. R. Civ. P. 10(c); *see also* Motion to Dismiss 1 n.1.[4] As Wright and Miller explain, "by attaching an exhibit, the pleader often may

---

[4]   Even "where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the [<u>defendant's</u>] motion [to dismiss] papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*,

foreclose recovery on a theory of relief that he claims is available to him <u>since the document itself may reveal the existence of an insurmountable defense</u>." Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1327 (3rd ed. 2004) (emphasis added). To Steinbuch's evident chagrin, this is what has occurred in this case. The factual statements of the Blog (specifically including the May 28, 2004, introduction apparently written by "Kevin at Wizbang") are thus <u>not</u> "anonymous hearsay statements" (Opp. 9). Rather, they have been incorporated into Steinbuch's complaint as well-pleaded factual allegations, which must be taken as true when reviewing a motion to dismiss.

In Steinbuch's Discussion Point II, he now argues that his complaint pleads a claim for invasion of privacy by false light in addition to a claim for public disclosure of private facts (Opp. 9; *see also* Opp 10). Even a cursory reading of Steinbuch's complaint, however, reveals no claims that the Blog portrayed Steinbuch in a false light and indeed no allegations whatsoever of specific falsity with respect to the Blog. For this reason, Steinbuch's complaint fails to contain a "short and plain statement of the claim showing that the pleader is entitled to relief" under a false light theory of recovery. *See* Fed. R. Civ. P. 8(a); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (Rule 8 "requires 'simply [that] . . . the defendant [give] fair notice of <u>what the plaintiff's claim is</u> and the grounds upon which it rests.'") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)) (emphasis added).[5]

---

77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, No. 01-5032, 38 Fed. Appx. 4, 2002 U.S. App. LEXIS 1149038 (D.C. Cir. Apr. 17, 2002).

[5]    Steinbuch's reliance on *Perkins v. School Bd. of Pinellas County*, 152 F.R.D. 227, 229 (M.D. Fla. 1993), and *Gilbert v. Medical Econ. Co.*, 665 F.2d 305, 310 (10th Cir. 1981), is misplaced. In *Perkins*, the plaintiff's complaint alleged unlawful discrimination under Title VII of the Civil Rights Act of 1964 but mentioned 42 U.S.C. § 1981 in the prayer for relief. Only after the plaintiff stipulated that she was not seeking relief under § 1981 did the court deny the defendant's Rule 12(b)(6) motion to dismiss based on the complaint's alleged ambiguity. Steinbuch's complaint, by contrast, makes no mention of false light whatsoever, but he now

## REPLY TO STEINBUCH'S DISCUSSION POINT III

**A.     Steinbuch Lacked Any Reasonable Expectation of Privacy in a Sexual Tryst**

Steinbuch spends most of his Discussion Point III(A) repeating the allegations of the complaint and summarily concluding that Cutler's disclosures in the Blog constitute "an improper public disclosure of private facts" (Opp. 10-11). Repeated holdings by the Supreme Court establish, however, that the kind of "relationship" that Steinbuch and Cutler enjoyed during their brief tryst is not protectable by law.[6]

In *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990), *modified in part on other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 781 (2004), motel owners challenged a municipal ordinance requiring motels renting rooms for less than 10 hours to be licensed as sexually oriented businesses. In rejecting the motel owners' argument that the ordinance violated the associational rights of their patrons, as set forth in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), Justice O'Connor, writing for the entire Supreme Court, stated:

> [W]e do not believe that limiting motel room rentals to 10 hours will have any discernible effect on the sorts of traditional personal bonds to which we referred in *Roberts*. Any 'personal bonds' that are formed from the use of a motel room for fewer than 10 hours are not those that have 'played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs.'

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 237 (1990) (quoting *Roberts v. United States*

---

improperly maintains he is seeking relief under that theory. In *Gilbert*, the court was willing to construe the allegation of "vilifying and exposing plaintiff to public ridicule, embarrassment and humiliation" as an allegation of false light invasion of privacy because the plaintiff had correctly named each of the other three torts in her complaint, namely intrusion, appropriation, and public disclosure of private facts. Steinbuch's complaint, by contrast, mentions the latter theory alone.

[6]     Steinbuch's reliance on *Lawrence v. Texas*, 539 U.S. 558 (2003) (Opp. 13 n.7) is misplaced. The gravamen of *Lawrence* related to unwarranted <u>government intrusion</u> into sexual conduct between consenting adults. The instant case does not involve government intrusion into anything.

*Jaycees*, 468 U.S. 609, 619 (1984), *modified in part on other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 781 (2004)).

In *Roberts*, Justice Brennan explained the criteria necessary for finding the kinds of personal relationships whose formation and preservation are protected by the Constitution's guarantees of liberty:

> The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family — marriage, . . . childbirth, . . . the raising and education of children, . . . and cohabitation with one's relatives . . . . Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty.

*Roberts*, 468 U.S. at 619-20.

Steinbuch's and Cutler's serial acts of copulation surely did not by themselves transform their relationship into one involving "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *See id.* Moreover, Steinbuch's and Cutler's sexual encounters did not bear any of the earmarks of the "high degree of selectivity" the Supreme Court determined in *Roberts* were necessary for a relationship to enjoy constitutional liberty (and therefore privacy) guarantees.

Steinbuch and Cutler had no "relationship" worthy of constitutional privacy. They

operated together purely as casual sex partners in a series of brief encounters.  That Cutler saw

nothing "sacred" about her escapades with Steinbuch is evident because she shared in detail with

friends and office colleagues what she was doing.  For his part, Steinbuch initiated his sexual

relationship with Cutler using a staffer of Senator DeWine (who was senior to Cutler) as his

proxy (*see* Compl., Ex. A [Blog entry for 5:54 p.m., May 6, 2004]).  Steinbuch again engaged his

proxy to determine from Cutler her reaction to their first "date" and her willingness to see

Steinbuch further, implicitly to continue the sexual activities they had enjoyed together on May 6

(*see* Compl., Ex. A [Blog entry for 2:02 p.m., May 7, 2004]).  Not only did these actions reflect

Steinbuch's diminished expectation of privacy, but they virtually guaranteed that his encounters

with Cutler would not remain private, at least within Senator DeWine's office or on Capitol Hill.

Steinbuch also became aware almost immediately that details of his and Cutler's

sexual encounters had been spread around the same office in which they both worked.

Steinbuch did not respond by breaking off the affair but, instead, intensified the frequency and

variety of his sexual activities with Cutler.  Thus, Steinbuch's current purported indignation over

Cutler's disclosures on the Blog is unpersuasive on its face and unavailing as a matter of law.

Finally, Steinbuch's reliance on *McSurely v. McClellan*, 753 F.2d 88, 112 (D.C.

Cir. 1985), is misplaced.  There, the D.C. Circuit found an existing, viable marital relationship as

the foundation for the husband's reasonable expectation of privacy.  Furthermore, the case

involved a third party's disclosure of the facts of the wife's premarital sexual relationships to the

husband.  Thus, despite the court's comment that this constituted  "an improper public disclosure

of private facts," the holding of the case was actually that this disclosure constituted an intrusion

upon the husband's right to seclusion.[7]

For these several reasons, the facts pleaded in Steinbuch's complaint, including the Blog's factual statements incorporated therein as Exhibit A, do not establish that Steinbuch had a reasonable expectation of privacy regarding his sexual activities with Cutler. The disclosures in the Blog cannot as a matter of law constitute private facts. Because Steinbuch is unable to prove any set of facts to meet this element of the tort of public disclosure of private facts, his complaint should be dismissed with prejudice.

**B.      Steinbuch Has Not Pleaded a Claim for False Light.**

Steinbuch's Discussion Point III(B) merits no reply, except to say (again) that he has not pleaded a claim for false light invasion of privacy. Furthermore, Steinbuch's unsubstantiated accusations of falsity (*see* Opp. 11-12) are nowhere to be found in the complaint, lack evidentiary support in the form of an affidavit or declaration, and are therefore mere allegations of counsel that this Court must ignore.

**C.      Steinbuch's Allegations of Publicity Do Not As a Matter of Law Meet the Requirement of Giving Publicity to Private Facts.**

**1.      Cutler's Extraneous "Admissions" Are Outside the Complaint, Should Not Be Considered Here, and Are In Any Event Irrelevant to the Publicity Analysis.**

While criticizing Cutler for using a declaration in support of her Motion to

----

[7]      This is borne out by the D.C. Circuit's statement that "Alan McSurely's right to be 'let alone'— to not have John Brick stand by his side and pressure him to read about the intimate details of his wife's premarital relationships and not to have his marriage maliciously disrupted— is the type of privacy interest protected." *McSurely*, 753 F.2d at 113. Indeed, it would be difficult to impute to the *McSurely* court a holding that the husband had any standing to seek relief for the disclosure of his wife's private facts about her premarital sexual relationships unless (as the court actually held) the disclosure of those facts to the husband intruded upon his seclusion as his wife's partner in a marriage. Steinbuch does not allege intrusion upon seclusion, and there is no marital relationship between Steinbuch and Cutler that was threatened by Cutler's disclosures.

Dismiss because it is a matter outside the pleading, Steinbuch quotes lavishly from Cutler's interview with the *Washington Post Magazine* (Opp. 13) which is nowhere adverted to in his complaint. By contrast, Cutler's declaration is legally cognizable as evidence and supports the conversion of her motion to dismiss into a motion for summary judgment. In addition, Cutler's declaration specifically demonstrates how the Blog was initiated and restricted by Cutler to a group of only four friends and that it was not sent to Wonkette by, through, or because of Cutler.

That Cutler characterized the Blog in an interview with *Playboy* magazine as "writing on the bathroom wall," and added that "[w]ith a blog, you can't expect your private life to be private anymore," is no evidence of how the Blog was actually disseminated and therefore no admission of giving publicity to private facts. Cutler's interview statements are thus irrelevant to the publicity analysis. Even so, the latter quote is equally, if not more, consistent with Cutler's theory that her disclosure of the details of her sexual encounters with Steinbuch to the four friends who had initial access to the Blog resulted in those facts losing whatever private character they might have had. The result was a publicity of public facts.

**2.     The Blog's Existence on the Internet, Without More, Does Not Constitute Publicity.**

Steinbuch's argument that placing allegedly private facts on the Internet inherently equates to giving publicity, irrespective of the nature, context, and surrounding circumstances (*see* Opp. at 15), does not withstand analysis. *Blumenthal v. Drudge*, 992 F. Supp. 44, 48 (D.D.C. 1998), is distinguishable for two reasons. *Blumenthal* was a defamation case; the case at bar involves the separate tort of public disclosure of private facts. The publicity element of the latter tort differs significantly from the publication element of defamation. Thus, while disclosure to four people might constitute defamatory "publication," it does not equate to giving "publicity" for purposes of the separate tort of invasion of privacy. *See* Motion to Dismiss 21.

13

Additionally, the website at issue in *Blumenthal*, the Drudge Report, was (even in 1997 when the complaint in that case was filed) a well-recognized, frequently visited media outlet. Anything published on the Drudge Report would be, in the words of the Restatement, "a communication that reaches, or is sure to reach, the public." RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a (1977). The same cannot be said of the Blog, which was not a publicly advertised, well-recognized, or frequently visited site before Wonkette gave publicity to it. Also, unlike the Drudge Report, the Blog "was NEVER cached by Google." (*see* Compl., Ex. A [Blog introduction]). Consequently, Ana Marie Cox, editor-in-chief of Wonkette, would have had to guess the Blog's URL and its web host out of the millions of possibilities available — an impossible task. Thus, Steinbuch has not satisfied his burden of alleging publicity.

3. **Disclosure of the Blog to One or Even a Few Individuals Does Not Constitute Publicity.**

Steinbuch's Discussion Point III(C)(3) (Opp 15-16) rests on the false premise that placement of the Blog on the Internet itself enabled a large audience to read it. As Cutler has already demonstrated, her disclosure of the Blog's URL to only four friends made it virtually impossible for anyone else (including Ana Marie Cox) to read the Blog unless one of those four shared the URL with Wonkette, which, in turn, undisputedly shared it with a large audience on May 18, 2004.[8] Steinbuch's argument that placement of the Blog on the Internet is the functional

---

[8] One of the extraneous media sources Steinbuch quotes (*see* Opp. 25 (quoting Richard Leiby's *Reliable Source* column in the Washington Post)) supports Cutler's argument that Wonkette, not Cutler, gave publicity to the Blog. *See* Richard Leiby, *One Congressional Record (Or Was It?) That Everyone Read*, WASH. POST, May 20, 2004 at C3 ("The woman's explicit accounts of her alleged frolics — including an affair 'with a married man who pays me for sex' — were given wide notice this week by Ana Marie Cox, the Washington cyber-gossip at www.wonkette.com, who posted the diary."). At least one other blogger appears to agree with Leiby's impression that the Blog's publicity originated with Wonkette. *See* Destiny-Land: The Happiest Blog on Earth, http://www.aolwatch.org/backup/washingtonienne.htm ("Perhaps it's appropriate that it was Wonkette who ultimately gave the anonymous online diary its

equivalent of a radio or television broadcast is not persuasive because such a broadcast would necessarily involve the use of a station, frequency, and program by which a large audience could be presumed to see or hear the broadcast statement. Before Wonkette independently revealed the Blog to Wonkette's large audience, the Blog's mere existence on the Internet at a URL unknown to all but five people (Cutler and her four friends) did not have the same technical attributes as a radio or television broadcast. Steinbuch's attempt to impose on Cutler the burden of seeking or receiving assurances of confidentiality or using a mass e-mail list (*see* Opp. 16) does not alter the fact that the Blog was not available to a large audience before Wonkette made it so.

Steinbuch's reliance on *McSurely v. McClellan*, 753 F.2d 88, 112 (D.C. Cir. 1985) (Opp. 17), is once again misplaced. On the very page of the opinion quoted by Steinbuch, the *McSurely* court made clear that the disclosure met the publicity requirement because it was a third party's disclosure of a wife's private facts to her husband. According to the D.C. Circuit, this was because "the publication requirement may also be satisfied by proof of disclosure to a very limited number of people <u>when a special relationship exists between the plaintiff and the 'public'</u> to whom the information has been disclosed." *Id.* at 112 (emphasis added). Steinbuch has not claimed and, indeed, cannot demonstrate any special relationship between himself and the four friends to whom Cutler disclosed the Blog's URL.

**4.    Steinbuch's Complaint Contains No Allegation That Cutler Was Responsible for Disclosing the Blog to Wonkette.**

Steinbuch's new assertion in the Opposition that "Cutler Herself Actually Sent Her Public Blog to Cox" (Opp. 18) is false and is nowhere to be found in the complaint. Such claim therefore constitutes an unsubstantiated allegation of counsel. Beyond this, the fact that

---

notoriety.").

the Blog provided a hyperlink to Wonkette is a far cry from "an admission that [Cutler] notified Wonkette as to the existence of the Blog" (Opp. 19). Just because www.sitemeter.com theoretically allowed Wonkette to discover the Blog (Opp. 19) does not establish that such notification actually occurred. Steinbuch has not alleged that Ms. Cox actually used this tool or that, had she done so, she would have found the Blog by that means and investigated it directly on her own. Steinbuch's argument here is uninformed speculation that lacks either evidentiary support or a foundation in Steinbuch's complaint.

**D.    Steinbuch Cannot Escape the Legal Effect of His Well-Pleaded Facts Showing That He Waived Whatever Right to Privacy He May Have Theoretically Had.**

**1.    Steinbuch's Counsel's Allegations That Steinbuch Did Not Approve of Cutler's Disclosures Are Outside the Complaint and Lack Evidentiary Support.**

Steinbuch attempts in his Discussion Point III(D)(1) to contradict the pleaded allegations of his complaint (which, as noted, include the factual statements in the Blog) with mere counsel's assertion that Steinbuch objected to Cutler's disclosure of their mutual spanking to someone in Senator DeWine's office (*see* Opp. 20-21). Steinbuch, alas, foreclosed his own theory of relief because the very document he attached as an exhibit to his complaint reveals his unambiguous statements and conduct amounting to waiver. His counsel's unsubstantiated allegations to the contrary carry no weight here and must be ignored.

**2.    Steinbuch's Statements As Recounted in the Blog Are Incorporated Into the Complaint and Clearly Demonstrate Waiver.**

In his Discussion Point III(D)(2), Steinbuch attempts to avoid a finding of waiver by arguing that his retroactive consent to Cutler's disclosure of the sexual spanking did not amount to a waiver of privacy with respect to other details of their sexual relationship (Opp. 21). Steinbuch's reliance on *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823, 845

16

(C.D. Cal. 1998), is misplaced. In *Michaels*, the defendant argued that "the wide distribution of a different videotape, one depicting sexual relations between Lee and her husband Tommy Lee, negates any privacy interest that Lee might have in the Tape depicting sexual relations with [co-plaintiff] Michaels." *Id.* at 840. Clearly, the *Michaels* court rejected the contention that "public exposure of one sexual encounter forever removes a person's privacy interest in all subsequent and previous sexual encounters" in the specific context of the subsequent and previous sexual encounters being between the plaintiff and underlined non-parties. There is no parallel here. The *Michaels* court was never asked to decide the question presented here, namely, whether the plaintiff's waiver with respect to some details of his sexual encounters with the defendant removed his privacy interest with respect to other details of those same sexual encounters.

Steinbuch's reliance on *Times Mirror Co. v. Superior Court*, 244 Cal. Rptr. 556, 561 (Ct. App. 1988), *Y.G. v. Jewish Hospital*, 795 S.W.2d 488 (Mo. Ct. App. 1990), and *Multimedia WMAZ, Inc. v. Kubach*, 443 S.E.2d 491 (Ga. 1994), is similarly unavailing. The facts of those cases involved a special reason for the disclosure to a limited circle of people. In *Times Mirror*, the plaintiff, who witnessed her roommate's murder and was subsequently identified in a newspaper article reporting about the crime, disclosed her name to selected neighbors, friends, family members, and officials investigating the murder. The court held that cooperation with the criminal investigation and seeking solace from friends and relatives did not render the witness's identity not a private fact. *See* 244 Cal. Rptr. at 561.

In *Y.G.*, the court found that a married couple who conceived through *in vitro* fertilization had not waived its right to privacy over its use of this method merely by attending a commemorative function with other participants in the program at the hospital where the program was conducted. *See* 795 S.W.2d at 502. In *Multimedia*, the court ruled that the

17

plaintiff's disclosure that he had AIDS to approximately 60 individuals — which included friends, family members, medical personnel, and members of an AIDS support group, all of whom the plaintiff thought had reason to know of his disease — did not constitute a waiver of his right to keep his identity from the television viewing public. There are no factual similarities between these cases and the case at bar.

Steinbuch had no special reason for consenting to the disclosure of details of his sexual relationship with Cutler to members of Senator DeWine's staff. Steinbuch also had no basis for thinking that any of these staff members had any plausibly compelling reason to know such facts, even if they could be considered private. There are therefore no circumstances here that would rebut the presumption that Steinbuch's consent to disclosure amounts to waiver.[9]

### 3.    Steinbuch's Counsel's Allegations That Steinbuch Inquired Into Cutler's Sexual and Non-Sexual History and That Cutler Lied to Steinbuch Are Outside the Complaint and Are Irrelevant.

Once again, Steinbuch employs unsubstantiated assertions of counsel (*see* Opp. 24-25) about his supposed inquiry into Cutler's character and sexual history to contradict the facts pleaded in the complaint. This Court should give these inherently implausible, extraneous assertions no weight. As the complaint and its exhibit demonstrate, Steinbuch had sexual relations with Cutler within a few hours of the beginning of his first "date" with her. During much of that time, Cutler was intoxicated, and Steinbuch knew virtually nothing about her.

---

[9]    Steinbuch's attempt to discredit Cutler's citation of *Nobles v. Cartwright*, 659 N.E.2d 1064 (Ind. Ct. App. 1995), *Sipple v. Chronicle Publishing Co.*, 201 Cal. Rptr. 665 (Cal. Ct. App. 1984), *Reuber v. Food Chemical News, Inc.*, 925 F.2d 703 (4th Cir. 1991), *Duran v. Detroit News, Inc.*, 504 N.W.2d 715 (Mich. Ct. App. 1993), and *Cash v. Smith*, 31 F.3d 1301 (11th Cir. 2000), also falls short. Contrary to Steinbuch's incorrect assertion (Opp. 22-23), Cutler did not cite these cases in support of her waiver argument. She cited them in support of her argument that the ostensibly private facts of Cutler's sexual relationship with Steinbuch lost their private character after noon on May 7, 2004 (*see* Motion to Dismiss 19-20).

Contrary to Steinbuch's mistaken contention (*see* Opp. 24), these facts are not relevant to waiver but, rather, to whether Steinbuch had a reasonable expectation of privacy in his sexual relationship with Cutler.  He manifestly did not.

**E.    Cutler's Disclosures Are Protected by the First Amendment.**

> **1.    Cutler's Personal Opinion About the Newsworthiness of Her Disclosures Is Not the Test for Newsworthiness.**

As he does throughout the Opposition, Steinbuch again relies in his Discussion Point III(E)(1) on Cutler's extraneous, purported "admissions" (in the form of newspaper interviews) to support his contention that the Blog is not newsworthy (Opp. 25-26), and therefore presumably not eligible for First Amendment protection.  But whether Cutler at one time subjectively believed that the Blog was ordinary, uninteresting, and undeserving of media attention is not the test for newsworthiness.  Rather, the test is an objective one.  Specifically, as Cutler noted in her principal brief at page 25, the newsworthiness privilege "extends also to the use of names, likenesses or facts in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published."  *Shulman v. Group W. Prod., Inc.*, 955 P.2d 469, 485-86 (Cal. 1998) (quoting RESTATEMENT (SECOND) OF TORTS § 652D, cmt. j); *accord Annonsen v. Donahue*, 857 S.W.2d 700, 703 (Tex. App. 1993); *see also Sipple v. Chronicle Publishing Co.*, 201 Cal. Rptr. 665, 670 (Cal. Ct. App. 1984) (legitimate public interest "must be determined according to the <u>community</u> mores") (emphasis added).  As discussed further below, the Blog satisfies this test.

> **2.    Just Because Cutler's Disclosures Involved Graphic Sexual Descriptions Does Not Automatically Deprive Them of Newsworthiness.**

In his Discussion Point III(E)(2), Steinbuch sets forth the test for newsworthiness

under California law and then claims that it is "hornbook law" that "[s]exual relations . . . are normally entirely private matters" (Opp. 26; internal quotation marks omitted). Steinbuch appears to argue here that disclosure of graphic sexual details can <u>never</u> be newsworthy because such details are inherently and always private. Steinbuch's argument founders on two counts. First, his reliance on *Doe v. Mills*, 536 N.W.2d 874 (Mich. Ct. App. 1995), is misplaced because the passage Steinbuch quotes (with heavy alteration) relates to the disparate issue of whether sexual matters constitute private facts, not whether a disclosure of such facts can, under certain circumstances, be privileged. The First Amendment privilege would be meaningless if it could never apply (as Cutler argues it should here) to disclosures of otherwise private facts. Second, as demonstrated in the very case Steinbuch cites for the proposition that privacy in certain matters is essential to the well-being of society (Opp. 26), the newsworthiness of sexual matters involves a far more subtle and nuanced analysis. *See Bonome v. Kaysen*, No. 03-2767, 2004 Mass. Super. LEXIS 172, at *16 (Super. Ct. 2004) (author's disclosure of sexual matters in which she was personally involved found to be newsworthy and thus privileged).

3.    **Steinbuch's Argument That Cutler's Disclosures Are Not Newsworthy Is Purely Conclusory.**

In his Discussion Point III(E)(3), Steinbuch artificially constrains the newsworthiness analysis to the newsworthiness of the disclosed facts themselves. As the cases Cutler cited in her principal brief show (*see* Motion to Dismiss 25-26), the newsworthiness of the disclosure depends on there being a substantial relevance between the private facts disclosed and some broader topic of legitimate public concern. It is therefore insufficient for Steinbuch to argue in effect that the very nature of Cutler's explicit descriptions of her sexual encounters with Steinbuch inherently make them "a morbid and sensational prying into private lives for its own sake" (*see* Opp. 27 (quoting *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823,

840 (C.D. Cal. 1998)).  Steinbuch's incorrect assertion that Cutler made no attempt to describe
the newsworthiness of her disclosures simply ignores the portions of her principal brief which
did just that (*see* Motion to Dismiss 26-27, 30).

    **4.**    **Steinbuch's Unsubstantiated Allegations of Falsity Contradict the Pleaded
Allegations of the Complaint and Should Be Given No Weight.**

        Steinbuch's Discussion Point III(E)(4) (Opp. 28) merits no reply, except to say
that his improper use of extraneous, unsubstantiated allegations of falsity contradict the pleaded
allegations of his complaint.  Cutler has sufficiently addressed this issue elsewhere.

    **5.**    **Cutler's Disclosures Are Newsworthy Because They Have a Reasonable
Nexus to Matters of Legitimate Public Interest.**

        In Steinbuch's Discussion Point III(E)(5), he contends that Cutler can demonstrate
no nexus between the sexual descriptions in the Blog and any "newsworthy topic" (Opp. 29).  He
is mistaken.  The facts disclosed by Cutler were part of the larger story she relayed to her friends
about her personal experiences in Washington.  Just as issues of sexually related medical
conditions and non-consensual sex were held to be legitimate matters of public concern in
*Bonome v. Kaysen*, No. 03-2767, 2004 Mass. Super. LEXIS 172 (Super. Ct. 2004), so too is the
interplay between sex and power in the Nation's capital.  The Blog reflected Cutler's attempt to
express to her friends how unsavory and power-driven Washington, D.C. can be and how she
was navigating this environment.  In so doing, it was appropriate for Cutler to disclose specific
details of her personal interactions to "develop and explore" her experiences.  *See id.* at *17.

        Without providing her friends with specific details, there was no adequate way
Cutler could have shared with them her personal experiences.  The details tell the story and make
it interesting, indeed compelling.  For these several reasons, the Blog has the necessary
substantial relevance to matters of legitimate public concern to merit First Amendment

protection.

**REPLY TO STEINBUCH'S DISCUSSION POINT IV**

**A.    A One-Year Statute of Limitations Applies to Steinbuch's Invasion of Privacy Claim.**

Steinbuch's tortured argument, based on a misreading of selected judicial decisions (two of which are outside this jurisdiction), that a three-year limitation period applies to his invasion of privacy claim (*see* Opp. 32-33) are at variance with District of Columbia law. The one-year limitation period under D.C. Code § 12-301(4) applies to <u>all</u> invasion of privacy claims, specifically including claims for public disclosure of private facts.  *See Grunseth v. Marriott Corporation,* 872 F. Supp. 1069, 1074 (D.D.C. 1995), *aff'd,* 79 F.3d 169 (D.C. Cir. 1996); *Doe v. Southeastern University,* 732 F. Supp. 7, 8 (D.D.C. 1990), *appeal dismissed*, 927 F.2d 1257 (D.C. Cir. 1991); *Nix v. Hoke,* 139 F. Supp. 2d 125, 134 n.9 (D.D.C. 2001).

**B.    Even If the Blog Is Considered A Single Document, Each Set of Allegedly Private Facts Is Expressly Delimited in the Blog By Posting Date and Time.**

Steinbuch tries to avoid the one-year time bar by arguing that "Cutler's public blog cannot be parsed into pieces" and that his cause of action accrued when the most recent version of the Blog was created on May 18, 2004.  Steinbuch's stratagem is foreclosed by the relevant District of Columbia caselaw.  As in *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 882 (D.C. 1998), Steinbuch's complaint (by incorporating the Blog) in effect alleges a number of separate and distinct unlawful disclosures of private facts.[10]  Even assuming *arguendo* that the Blog is a single document (Cutler never argued to the contrary), it nevertheless

---

[10]    *Wallace* expressly rejected application of the continuing tort doctrine to defamation.  *See Wallace* 715 A.2d at 882.  The same result should obtain here because "invasion of privacy is essentially a type of defamation."  *Grunseth v. Marriott Corporation,* 872 F. Supp. 1069, 1074 (D.D.C. 1995), *aff'd,* 79 F.3d 169 (D.C. Cir. 1996).

22

contains separately date- and time-stamped entries, each containing a distinct set of allegedly private facts. The Blog is therefore clearly divisible into separate disclosures for statute of limitations purposes, and there is no "overwhelming" task for this Court to determine when each Blog entry was posted (*see* Opp. 35). Steinbuch backhandedly concedes the divisibility of the Blog when he says that "[e]very time Cutler edited and added to this single-main page, she created a new document" (Opp. 34).

   If invasion of privacy is essentially a type of defamation for purposes of applying the one-year limitation period, as District of Columbia authority holds, then accrual of the cause of action for invasion of privacy should be similarly applied. Thus, as "[d]efamation occurs on publication," *id.* at 882, so too must invasion of privacy occur at the moment publicity is given. As Cutler noted in her principal brief (*see* Motion to Dismiss 13), solely for purposes of her statute of limitations argument, Cutler assumes (as does Steinbuch) that each entry of the Blog was given publicity the moment it was posted on the Internet. Under the circumstances, the one-year limitation period began to run for each divisible Blog posting on the date of posting. Accordingly, both Steinbuch's invasion of privacy claim and his intertwined intentional infliction of emotional distress claim are time-barred as to all Blog entries posted before May 16, 2004.

**C. The Discovery Rule Does Not Apply Under the Circumstances of This Case.**

   Steinbuch's attempt to seek refuge in the discovery rule is disingenuous and unpersuasive. Contrary to Steinbuch's contention (Opp. 36), none of Cutler's cases apply the discovery rule to invasion of privacy claims. Moreover, Steinbuch has found no District of Columbia case (and Cutler's research has disclosed none) applying the discovery rule to a public

disclosure of private facts claim.[11]  Steinbuch's vigorous argument that the Blog was given

publicity the moment each version of it was placed on the Internet and that such posting was akin

to a mass media broadcast on television or radio (*see* Opp. 14-19) suggests that the fact of injury

(if any) was readily apparent from each such moment.  Also, it is undisputed that Steinbuch

actually became aware of the Blog no later than May 18, 2004, when 354 days remained <u>before</u>

the one-year limitation period expired as to the first Blog entry concerning Steinbuch.  If this

Court is to accept Steinbuch's theory of publicity, there is no unfairness in (and no policy

justification in support of) holding that Steinbuch's claim as to each Blog entry accrued on its

posting date, not when Steinbuch actually discovered it only a few days later.

## REPLY TO STEINBUCH'S DISCUSSION POINT V

Steinbuch's Discussion Point V makes no attempt to demonstrate that the Blog's

disclosures contravene "applicable contemporary community standards of offensiveness and

decency."  *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993).  Nor does Steinbuch explain how the

Blog involves the kind of "deceit or falsity" commonly found in intentional infliction of

emotional distress cases by which "it can be presumed that the defendant would foresee severe

consequences."  *See Waldon v. Covington*, 415 A.2d 1070, 1077 (D.C. 1980).  Steinbuch also

fails to establish that his intentional infliction claim is <u>not</u> intertwined with his invasion of

privacy claim for statute of limitations purposes.  Finally, Steinbuch fails to answer Cutler's

argument that his conclusory allegation of suffering severe emotional distress is utterly devoid of

---

[11]    District of Columbia courts have been reluctant to apply the discovery rule to the analogous claim of defamation.  *See., e.g., Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 299 (D.C. 2001) (declining to adopt discovery rule to "defamatory statements published in a mass media outlet" because "[i]n defamation cases . . . at least where mass media are involved, the fact of injury can be readily determined.") (internal quotation marks and ellipses omitted); *Caudle v. Thomason*, 942 F. Supp. 635, 641 (D.D.C. 1996) (recognizing that D.C. Court of Appeals "has not yet applied the [discovery] rule to a defamation claim").

particularity sufficient to support a finding of emotional disturbance with a substantial risk of harmful physical consequences.  *See Clark v. Associated Retail Credit Men.*, 105 F.2d 62, 65 (D.C. Cir. 1939).  For these several reasons, Steinbuch's claim for intentional infliction of emotional distress fails to state a claim upon which relief can be granted.

### CONCLUSION

For the foregoing reasons, as well as those set forth in Cutler's principal memorandum, the motion should in all respects be granted, and plaintiff's complaint should be dismissed with prejudice.

Dated:  Washington, D.C.
September 26, 2005

BERLINER, CORCORAN & ROWE, L.L.P.

Attorneys for Defendant

By:    /s/ Thomas E. Wilson
Thomas E. Wilson
D.C. Bar No. 132704
Alexander C. Vincent
D.C. Bar No. 472459
Jason A. McClurg
California State Bar No. 232897
Application to D.C. Bar Pending

1101 17th Street, N.W.
Suite 1100
Washington, D.C.  20036-4798
Telephone:  (202) 293-5555
Fax:  (202) 293-9035
E-mail:       twilson@bcr-dc.com
acv@bcr-dc.com
jam@bcr-dc.com