UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
ROBERT STEINBUCH,                   )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )   Case No. 1:05-cv-00970 (PLF)
                                    )   Judge Paul L. Friedman
JESSICA CUTLER,                     )
                                    )
        Defendant.                  )
                                    )
```

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND COMPLAINT
AND DEFENDANT'S REQUEST FOR LEAVE
TO SUPPLEMENT PLAINTIFF'S MOTION TO DISMISS**

Defendant Jessica Cutler, by the through the undersigned counsel, respectfully submits

her Opposition to Plaintiff Robert Steinbuch's motion to amend his complaint (Docket 37).

Defendant Cutler also respectfully requests that the Court consider this brief and supporting

evidence in support of her pending motion to dismiss the original complaint filed in this action

(Docket 29).

The Court should deny Plaintiff's motion to amend his complaint.  The claims in the

proposed amendment, like the original complaint, are time-barred, the requirements for diversity

jurisdiction are not met, and amendment of the complaint would be futile.

Defendant's Rule 12(b)(1) motion to dismiss the Complaint for lack of subject matter

jurisdiction remains pending and should be granted.  Once allegations of jurisdictional facts are

challenged, the plaintiff must support those allegations with "competent proof."  McNutt v.

General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Rosenboro v. Kim, 994 F.2d 13,

18 (D.C. Cir. 1993).  Plaintiff has failed to meet his burden to support his claim of diversity

Dockets.Justia.com

jurisdiction with any "competent proof" whatsoever, either in his motion to amend, or earlier in his response to the motion to dismiss for lack of subject matter jurisdiction, or in his opposition to defendant's motion for a protective order, which was granted by this Court.

At the April 5, 2006 hearing, the Court ruled that the one-year limitations period under D.C. Code §12-301(4) governs all claims in the case: invasion of privacy, false light and intentional infliction of emotional distress. There is a legal certainty that the $75,000 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. §1332 *as to any timely claim* cannot be met. First, since defendant Jessica Cutler moved to dismiss for failure of subject matter jurisdiction, Plaintiff has filed several briefs and proposed pleadings, none of which contain "competent proof" that more than $75,000 in damages was proximately caused by any "blog" posting within the one year limitations period. Plaintiff has had numerous opportunities to provide "competent proof" of injury to satisfy the requisite jurisdictional threshold, if it were possible, but he has been unable to do so.

Second, Mr. Steinbuch's good faith ability to claim such injury is complicated by the fact that, in other lawsuits he has filed, he has claimed that his reputation was previously harmed by defamatory statements in March of 2003 (See Complaint, Stienbuch (sic) v. Kappel, USDC, D.D.C., Civil Action File No. 04-cv-00188-RMC-AK, Exhibit A, hereto), which he claims cost him more than $ 1,000,000 in damages to reputation and harm to his employment. Mr. Steinbuch must show first that, as of the time of the single blog entry at issue here, his already (he claims) seriously impaired reputation was **worth** $ 75,000; and next that the single blog entry on May 18, 2004 caused some identifiable additional and quantifiable harm to that ruined reputation.

More critically in that regard, Plaintiff's own sworn testimony demonstrates to a legal certainty that the jurisdictional threshold cannot be met, either as to any blog posting within the limitations period or even considering all blog postings (and alleged "re-postings") together.  Mr. Steinbuch will have to explain his testimony in the Kappel case in September of 2004, four months after his already ruined reputation was allegedly further harmed by the publication of Ms. Cutler's anonymous blog entry.  The Court should remember that, at the April 5, 2006 hearing, counsel for Mr. Steinbuch stated:  "With respect to the damage and why we're here, Your Honor, this is about his name and professional association."  [Tr., p. 31].  He went on to explain:  "It's a professional injury, Your Honor.  The real harm in this case is the injury to his reputation and his profession."  [Tr., p. 35].

Mr. Steinbuch is going to have to explain why, if that is true, he testified in September of 2004 to the contrary when asked about his "current professional reputation:"

Q.    What is your current professional reputation, as far as you know?
A.    In the Senate?
Q.    Yes.
A.    **I think it is good**. (Emphasis added)

[Steinbuch depo., p. 145, Exhibit B, hereto].[1]  This was Mr. Steinbuch's own opinion, four months after the single blog entry at issue in this case (and even after the alleged "re-posting" of the blog on another website).  This sworn testimony hardly shows that Mr. Steinbuch suffered **<u>any</u>** injury, much less $75,000 in harm.[2]  Under the circumstances, his vague, conclusory allegations in the complaint (and proposed amended complaint) are not sufficient to establish the

---

[1]    The deposition was filed in the Kappel case by Mr. Steinbuch at Docket No. 38-2.  This Court may take judicial notice of its own records.  United States v. Clemons, 440 F.2d 205, 211 (D.C. Cir. 1970) ("It is clear that a court may take judicial notice of its own records").

[2]    In yet another of the lawsuits he has filed, Mr. Steinbuch also claims harm to his admittedly "good" reputation from the publication of the book "Washingtonienne" on June 15, 2005.  (See Complaint, Steinbuch v. Cutler, et al, USDC, E.D. Ark., Civil Action File No. 04-cv-00620-WRW, Exhibit C, hereto).

jurisdictional amount of harm to Mr. Steinbuch's reputation by the slings and arrows of his "outrageous" fortune.

Finally, Mr. Steinbuch's claims in the complaint and proposed amended complaint are futile in any respect. As he alleges in the complaint, he was employed as Counsel to the United States Senate Judiciary Committee and was, therefore, a public official. As such, the speech about which he complains in the proposed amended complaint was constitutionally protected and cannot serve as the basis for the claims alleged. His proposed amended claims would fail under a Rule 12(b)(6) motion to dismiss. This court should deny the motion to amend and grant Defendant's motion to dismiss.

## ARGUMENT

## I.    THE COURT SHOULD CONSIDER THIS RESPONSE IN SUPPORT OF A FACTUAL ATTACK ON JURISDICTION UNDER RULE 12(B)(1)

Before a federal court may hear a case, it must ascertain whether it has jurisdiction over the underlying subject matter of the action. Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."). Indeed, "because subject matter jurisdiction goes to the foundation of the court's power to resolve a case, [] the court is obliged to address it *sua sponte*." See Price v. College Park Honda, et al., Civil Action No. 05-0624 (PLF), 2006 U.S. Dist. LEXIS 14906, at *17 (D.D.C. March 31, 2006) (internal quotation omitted). Arguments not presented by counsel may be considered, along with disputed or undisputed facts within or outside the pleadings. Id.; See Hunter v. District of Columbia, 384 F. Supp. 2d 257, 259-60 (D.D.C. 2005) (Friedman, J.).

Motions to dismiss for lack of subject matter jurisdiction are proper under Federal Rule of Civil Procedure 12(b)(1). See Price, 2006 U.S. Dist. LEXIS 14906, at *18. The plaintiff

bears the burden of proving jurisdiction.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-183 (1936); see also Land v. Dollar, 330 U.S. 731, 735 (1947).  "Although a district court may dispose of a motion to dismiss on the basis of the complaint alone, a court may consider materials beyond the pleadings when evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  While the complaint is to be construed liberally, the Court need not accept factual inferences drawn by plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions."  Price, 2006 U.S. Dist. LEXIS 14906, at *18 (internal citations and parenthetical omitted); see also Federal Election Comm. v. National Rifle Assoc., 553 F. Supp. 1331, 1343 (D.D.C. 1983) ("A 'factual attack' [] challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.  Moreover, a 'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist.") (internal citations omitted).

In this case, Defendant has offered proof – through the testimony of Mr. Steinbuch in one of his other lawsuits – that even Mr. Steinbuch himself did not consider his reputation to be harmed by the single blog entry at issue in this case (or, indeed, by the entire course of conduct associated with the posting and alleged reposting of the blog).  In fact, Mr. Steinbuch testified that, four months after the purported injury, he considered his reputation to be "good," the same characterization that he gave to his reputation **before** the conduct at issue in that case.  In light of this sworn testimony, he must come forward with specific facts, supported by evidence (i.e., "competent proof"), showing that the alleged harm satisfies the minimum jurisdictional amount.  See Hunter, 384 F. Supp. 2d at 260.  Vague, generalized, conclusory assertions of monetary

harm in such circumstances are not enough to survive a factual attack on subject matter jurisdiction. See id. That is, the evidence shows that the damages claim made in the complaint apparently were not made in good faith, so the Plaintiff must come forward with specific facts and "competent proof" that his damages, exclusive of interest and costs, exceeds $ 75,000.

Mr. Steinbuch has repeatedly failed to provide such competent proof, which is ground to find that the jurisdictional threshold has not been met. See Rosenboro, 994 F.2d at 17-18 (holding that, because plaintiff failed to produce any evidence indicating that she could prove nearly $ 48,000 in unliquidated damages arising from an automobile crash resulting in medical expenses of $ 2,130, there was a legal certainty that plaintiff's claim did not satisfy amount in controversy requirement). Indeed, the uncontroverted evidence (via Mr. Steinbuch's own testimony that his reputation was **not** harmed) shows to a legal certainty that the jurisdictional threshold cannot be met. The court should dismiss the complaint in such circumstances for lack of subject matter jurisdiction. See Hunter, 384 F. Supp. 2d at 260-61.

## II.   A MOTION TO AMEND A COMPLAINT SHOULD BE DENIED WHERE THE PROPOSED AMENDMENT IS FUTILE AS A MATTER OF LAW

Although leave to amend a complaint is generally granted freely under Fed.R.Civ.P. 15(a) "when justice so requires," leave to amend is not automatic and should be denied where there is "futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). "If the proposed change clearly is frivolous or advances a claim … that is legally insufficient on its face, the court may deny leave to amend." 6 Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d, Section 1487, and cases therein. As this Court has stated: "A futile motion to amend would include one in which the amended complaint clearly would not survive a motion to dismiss." Price, 2006 U.S. Dist. LEXIS 14906, at *9-10. Denial of leave to amend also is appropriate on grounds of lack of subject matter jurisdiction. Price, 2006 U.S. Dist. LEXIS 14906, at *12

(denying leave to amend as futile because it would not survive motion to dismiss for lack of

subject matter jurisdiction); <u>see also</u>, <u>Pink v. Modoc Indian Health Project</u>, 157 F.3d 1185, 1189

(9th Cir. 1998) (affirming denial of leave to amend under abuse of discretion standard where

leave to amend would have been futile due to lack of subject matter jurisdiction).

III.    **THE PROPOSED AMENDMENT FAILS TO CURE THE FATAL DEFECTS IN THE ORIGINAL COMPLAINT, AS THE CLAIMS ARE TIME-BARRED AND FAIL TO MEET THE AMOUNT IN CONTROVERSY REQUIREMENT FOR SUBJECT MATTER JURISDICTION TO EXIST**

Plaintiff's proffered amended complaint fails to cure the lack of subject matter

jurisdiction. Defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction

remains pending. Defendant respectfully incorporates herein her moving papers (Docket 29) and

reply memorandum (Docket 31) into this opposition to the motion to amend.

The proposed first amended complaint purports to invoke the subject matter jurisdiction

of this Court pursuant to 28 U.S.C. § 1332 based upon diversity (proposed amended complaint ¶

9). It asserts (at paragraph 12) without substantiation that the amount in controversy exceeds the

sum of $75,000 exclusive of interest and costs. Plaintiff's original complaint, his proposed

amended complaint and his sworn deposition testimony in another case conclusively demonstrate

that Plaintiff is unable to allege in good faith that the amount in controversy *for any timely filed*

*claim* exceeds $75,000. Indeed, it appears to a legal certainty that Plaintiff's claim is less than

the requisite jurisdictional threshold, even considering the entire blog as a whole and the alleged

"reposting" of it.

A.    **All Blog Entries Other Than the May 18, 2004 Entry Are Time-Barred, and That Single Entry Did Not Cause the Requisite Harm For Subject Matter Jurisdiction to Exist**

Plaintiff's conclusory allegations as to the amount in controversy at paragraph 8 of his

original complaint and paragraph 12 of his proposed amended complaint were premised on

Plaintiff's rejected position that a three-year limitations period governed this case. Plaintiff's theories of liability cannot hold water in light of this Court's April 5, 2006 ruling that the one-year limitations period under D.C. Code § 12-301(4) governs all claims. Moreover, Plaintiff's claims are barred by his own allegations in the original complaint and proposed amended complaint. The Complaint, after all, must be taken as true with respect to specific facts which are alleged[3] and it is possible for a party to plead himself out of court. Early v. Bankers Life & Cas. Co., 959 F.2d 75, 79 (7th Cir. 1992).

In his proposed amended complaint, Plaintiff alleges the following facts which demonstrate that – with the exception of the May 18, 2004 entry – his Complaint is barred by the "single publication" rule:

> 30.    Regardless of the number of people that Cutler explicitly informed (both known and unknown to her) about her X-rated blog, she made the blog available to the public at large by her putting it directly on the internet and not seeking any password protection or other security or using email instead.

> 34.    Cutler maintained no privacy of her blog. She freely let anyone read it and wanted to gain additional readers.

> 35.    The blog was available on the internet for anyone to read.

> 36.    People unknown to Cutler read her blog.

[proposed amended complaint]. This widespread publicity alleged by Plaintiff is sufficient to start the clock running on the statute of limitations. Such publicity – as a matter of law – vitiates reliance on the discovery rule, as it necessarily means that the Plaintiff, through due diligence,

---

[3]    Of course, "the Court need not accept factual inferences drawn by plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." Hunter, 384 F. Supp. 2d at 260. And, in considering whether subject matter jurisdiction exists, "[w]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. (quoting Herbert v. National Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992)).

should have learned of its existence.  Any other holding would eviscerate the "single publication

rule" applicable to claims for invasion of privacy.

> As was held in <u>Mullin v. Washington Free Weekly</u>, 785 A.2d 296, 298-299 (D.C. 2001):

>> In defamation cases, on the other hand, at least where mass media are involved, "the fact of ... injury can be readily determined," and thus any resulting defamation claims will "accrue . . . for purposes of the statute of limitations at the time the injury actually occurs," i.e., publication. <u>Colbert</u>, <u>supra</u>, 641 A.2d at 472. Injuries alleged to have resulted from the distribution of copies of a weekly periodical through the Washington, D.C. metropolitan area may reasonably be considered public in nature, and discoverable as such. As we said in <u>Wallace</u>, supra, 715 A.2d at 882, "the plaintiff's reputation is damaged immediately upon publication." **Such considerations have led every other court squarely faced with this issue to reject application of the discovery rule in mass media defamation claims**. See, e.g., <u>Schweihs v. Burdick</u>, 96 F.3d 917, 920-21 (7th Cir. 1996); <u>Bradford v. American Media Operations, Inc.</u>, 882 F. Supp. 1508, 1519 (E.D. Pa. 1995); <u>McGuiness v. Motor Trend Magazine</u>, 129 Cal. App. 3d 59, 180 Cal. Rptr. 784, 786 (Cal. Ct. App. 1982); <u>Flynn v. Associated Press</u>, 401 Mass. 776, 519 N.E.2d 1304, 1307 (Mass. 1988); <u>Holloway v. Butler</u>, 662 S.W.2d 688, 693 (Tex. App. 1983); <u>Russell v. The Standard Corp.</u>, 898 P.2d 263, 264-65 (Utah 1995); see generally Francis M. Dougherty, Annotation, Limitation of Actions: Time of Discovery of Defamation as Determining Accrual of Action, 35 A.L.R.4th 1002 (1985 and 2001 Supp.). **We follow these precedents and do likewise here.**  (emphasis added)

This decision was followed in <u>Oparaugo v. Watts</u>, 884 A.2d 63, 73-74 (D.C. 2005), in which the

court made it clear that the discovery rule has no application to mass media publication claims.

And, the Internet should be analyzed as a mass media publication.  <u>See</u> <u>Oja v. United States</u>

<u>Army Corps of Eng'rs</u>, 440 F.3d 1122, 1130-32 (9th Cir. 2006) (holding "single publication rule"

applies to claims for the posting of information on the web), and cases cited therein.

> The sole blog entry that falls within the one-year limitations period is the May 18, 2004

entry, as the present action was filed on May 16, 2005.  Plaintiff fails to allege either in his

original or in his proposed amended complaint any facts regarding damages caused by the May

18 blog posting.  Nor could such an allegation be averred in good faith.  The May 18 blog

posting states innocuously that "RS" and the anonymous blog author had sexual relations using

birth control.  Even if Plaintiff were identified in the blog, the fact that the parties were

romantically involved was already known within the respective Senate offices in which they

were employed, as Plaintiff was joking and gesturing about it at the workplace, as the Blog that

Plaintiff attached to his original complaint concedes.[4]  There is no good faith allegation in the

complaint or proposed amended complaint that anything in the May 18 blog entry caused any

damages to Plaintiff, much less that it caused damages exceeding $75,000, as it must to satisfy

requirements for diversity jurisdiction under 28 U.S.C. § 1332.  And, of course, Plaintiff has

admitted that his reputation remained "good" even after the publication of the blog.

           **1.**       **The Alleged Editing and "Re-Posting" of the Blog Does Not Save the**

                    **Claims**.

Plaintiff's attempts in the proposed amended complaint to circumvent the one-year

statute of limitations fail as a matter of law.  His new assertion that "Cutler routinely edited all

aspects of the blog, up and until May 18, 2004" (proposed amended complaint ¶ 24) – is both

contrary to the text of the blog attached as Exhibit A to the original complaint and irrelevant

under the "single publication" rule.  As shown in Plaintiff's own Exhibit A to the original

complaint, each blog entry shows the date and time of its posting.  Plaintiff cannot cure this

problem by omitting to attach the Blog as Exhibit A to his proposed amended complaint -- it is

already in the record as part of the original complaint, <u>see</u> Fed. R. Civ. P. 10(c); it would be

considered part of his proposed amended complaint because it is central to his claims, <u>see 188</u>

---

[4]      The Blog attached as exhibit A to the original complaint reveals that on 5/11/04 "RS"
informed the blog author that the rumor of their relationship had spread to other offices.  Blog
entry 5/11 5:54 pm.  That night at dinner "RS" told the blog author that "He's really not mad
about the gossip at all," that "he's actually joking around the office about it" and that "when he
walks out of a room, he'll slap himself on the [back side]"  5/12 blog posting 9:28 a.m.  None of
these facts was denied in the original complaint or proposed amended complaint but rather are
incorporated in the complaint by virtue of Fed.R.Civ.P. 10(c), which provides that a "copy of any
written instrument which is an exhibit to a pleading is part thereof for all purposes."

LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002) (referring to Rule 10(c) in a Rule

12(b)(6) motion to dismiss and noting that "'documents attached to a motion to dismiss are

considered part of the pleadings if they are referred to in the plaintiff's complaint and are central

to his claim'") (quoting Wright v. Assoc. Ins. Cos., 29 F.3d 1244, 1248 (7th Cir. 1994)); and, in

any event, under a Rule 12(b)(1) motion, this Court can consider matters outside the pleadings.

See Hunter, 384 F. Supp. 2d at 259-60.

Moreover, under the "single publication" rule, the essential facts – which Plaintiff does

not contend were altered after the initial posting – would apply to defeat Plaintiff's new

"reposting" claim:

> In the District of Columbia, the statute of limitations for defamation claims is one
> year from the date of first publication. D.C. Code § 12-301(4); Mullin v.
> Washington Free Weekly, Inc., 785 A.2d 296, 298 n. 2 (D.C. 2001). District of
> Columbia courts adhere strictly to the one-year limitation, Mullin, 785 A.2d at
> 298, and follow the "single publication" rule, under which publication of
> defamatory matter "gives rise to but one cause of action for libel, which accrues at
> the time of the original publication[.]" Ogden v. Ass'n of the United States Army,
> 177 F. Supp. 498, 502 (D.D.C. 1959). Because the statute of limitations runs from
> the date of the original publication, any subsequent sale or delivery of a copy of
> the publication does not create a new cause of action. Id.

Wilson v. Prudential Fin., Civil Action File No. 03-2313 (RMU), 2004 U.S. Dist. LEXIS 21786,

at *20, n.4 (D.D.C. Oct. 18, 2004).

"Invasion of privacy is essentially a defamation type action." Doe v. Southeastern Univ.,

732 F. Supp. 7, 8 (D.D.C. 1990), *appeal dismissed*, 927 F.2d 1257 (D.C. Cir. 1991).

Accordingly, the single publication rule applies to such claims, even if the publication occurs on

the Internet. See Oja, 440 F.3d at 1130-31.

The initial disclosure and publication of such facts on the Internet, which Plaintiff in his

complaint and proposed amended complaint concedes occurred before the one-year time limit for

filing his claims, started the limitations clock running. His failure to file within one-year of any

such posting (except the May 18 posting) cannot be saved by vague, unsupported claims of "editing" and "re-posting" by Defendant, especially where he does not claim that essential allegedly harmful facts were altered after the initial posting.

### 2.    The "Continuing Harm Doctrine" Cannot Salvage the Claims.

Plaintiff for the first time argues that the "continuing harm doctrine" should be applied to salvage his complaint in the face of the statute of limitations.  Motion to amend, p. 4.  Yet, Plaintiff fails to furnish any reason why the continuing harm doctrine has application to the facts alleged in this case, and it does not.  Plaintiff cites the D.C. Court of Appeals decision in <u>John McShain, Inc. v. L'Enfant Plaza Properties, Inc.</u>, 402 A.2d 1222, 1231 n.20 (D.C. 1979), which states in a footnote:  "If the continuing tort has a cumulative effect, such that the injury might not have come about but for the *entire* course of conduct (*e.g.*, a physical condition brought about by longterm medical treatment), then all damages caused by the tortious conduct are recoverable even though some of the conduct occurred outside the limitations period."

The continuing harm doctrine, like the discovery rule urged by Plaintiff, is inconsistent (as applied to claims to harm to reputation from publication) with the "single publication" rule. Mr. Steinbuch cannot claim a "continuing harm" in this context, even had he actually made such allegations.  Nowhere in the original or amended complaint has Plaintiff alleged or shown that any claimed injury came about only as a result of "the entire course of conduct," which must be shown before the continuing harm doctrine could be applicable.  The two cases Plaintiff cites do not support application of this doctrine to the facts alleged.  To the contrary, both the complaint and amended complaint cite numerous specific passages of the blog (amended complaint ¶ 46) that Plaintiff claims caused injuries to him.  The problem for Plaintiff is that all of these claims are time-barred claims.  Paragraph 46 of the amended complaint runs extensively from pages 5 to

11, quoting numerous separate passages from the blog that he believes are actionable.  Plaintiff

claims that each of these passages of the blog revealed "private facts."  E.g., amended complaint

¶ 64.  Thus, the proposed amended complaint itself shows that the "continuing harm doctrine"

has no application.

The insurmountable obstacle that Plaintiff faces on the record in this suit is that he

repeatedly states in his complaint and proposed amended complaint that the blog "was available

on the Internet for anyone to read."  Proposed amended complaint, ¶  35.  "People unknown to

Cutler read her blog."  Id., ¶  35.   Repeatedly, Plaintiff states that the blog was a "public blog."

Id., ¶¶ 22, 37, 40, 42, 46, 47, 48 and 49.   Likewise, in his original complaint, Plaintiff stated that

Defendant allegedly put private facts "on the Internet for the entire world to read."   Complaint,

¶36.  The "entire world," of course, includes the Plaintiff.  The Complaint states that Defendant

published her Blog beginning on May 5, 2004.   The first paragraph of the amended complaint

states that Jessica Cutler "disseminated" her blog on the World Wide Web.  Paragraph 18 of the

amended complaint states that defendant's blog "was accessible and open to the public."

Paragraph 19 of the amended complaint states that Ms. Cutler intended her blog to be accessible

and open to the public.  Paragraph 30 of the amended complaint states:  "[Ms. Cutler] made the

blog available to the public at large by her putting it directly on the Internet and not seeking any

password protection or other security or using email instead."  Likewise, her original complaint

paragraph 30 stated that she caused *widespread publication* of private intimate facts."  On such

amended complaint, Plaintiff is not entitled to invoke the continuing harm doctrine, as his

Complaint squarely admits that the Blog was a public blog on the Internet for the entire world to

read.  See Oja, 440 F.3d at 1130-31 (holding "single publication rule" applies to claims for the

posting of information on the web and statute of limitations begins on initial posting).

Defendant's alleged first posting on the Blog regarding "RS" of which Plaintiff complains was on May 7, 2004. See Blog attached as Exhibit A to original complaint. But Plaintiff waited to file his action until May 16, 2005 – one year and 9 days later.

Claims filed outside of the statute of limitations are time-barred. See Wallace v. Skadden, Arps, Slate, Meagher & Flom, 715 A.2d 873, 882 (D.C. 1998) (holding that statements published more than one year before filing of complaint were time-barred). "Defamation occurs on publication, and the statute of limitations runs from the date of publication." Foretich v. Glamour, 741 F.Supp. 247, 252 (D.D.C. 1990) (citations omitted); see also Ogden v. Association of U.S. Army, 177 F. Supp. 498, 502 (D.D.C. 1959). Where a statement is defamatory on its face, the plaintiff's reputation is damaged immediately upon publication. Cf., Howard Univ. v. Best, 484 A.2d 958, 988-89 (D.C. 1984). Just as defamation occurs on publication, so too does invasion of privacy occur at the moment publicity is given. The amended complaint states that the invasion of privacy occurred when defendant put her Blog on the Internet – which falls outside of the limitations period.

What this Blog attached to the original complaint as Exhibit A shows is that Plaintiff failed to file this lawsuit on time when he waited until May 16, 2005 to file suit. His time-barred claims cannot be used to bootstrap to achieving the jurisdictional basis for meeting the $75,000 amount in controversy requirement. It is a legal certainty that Plaintiff cannot satisfy the amount in controversy requirement, and amendment of the complaint should not be permitted under Rule 15(a), as it would be futile.

In view of the one-year limitations period, the allegations in the Complaint demonstrating that the limitations period passed for all but the last blog entry, and the applicable law, Plaintiff cannot possibly meet the $75,000 jurisdictional threshold for subject matter jurisdiction to exist.

Nor, in light of Mr. Steinbuch's testimony that his reputation remained "good" after publication of the blog, can the complaint be amended to cure this patent jurisdictional defect.

**B.      Even Considering The Blog Entries As a Whole, Plaintiff's Sworn Deposition Testimony Belies Any Claim of Harm and Demonstrates To a Legal Certainty That Subject Matter Jurisdiction Does Not Exist**

It is settled law that when a Rule 12(b)(1) motion has been filed, the plaintiff bears the burden of establishing with "competent proof" that the Court has subject matter jurisdiction. Rosenboro v. Kim, 994 F.2d 13, 19 (D.C. Cir. 1993); Hunter, 384 F. Supp. 2d at 260. The D.C. Circuit has held that where a complaint is "backed only by purely speculative or unsupported allegations of injury," the $75,000 amount in controversy requirement is not met, the district court lacks jurisdiction and the action should be dismissed. See Rosenboro, 994 F.2d at 19. Indeed, this court has found that when "it would be highly improbable that the amount in controversy could exceed the jurisdictional threshold, and when plaintiff submits no evidence to the contrary" a claim should be dismissed for lack of subject matter jurisdiction. Hunter, 384 F. Supp. 2d at 260.

Plaintiff has failed to meet the burden to support his claims with any proof whatsoever, either in his motion to amend or his earlier pleadings. Given Mr. Steinbuch's other claims in Kappel that harm to his reputation predated the issues set out in **this** case, coupled with his testimony (four months after the blog at issue in this case) that his reputation was good, something more than a mere allegation must be provided. In the instant case, Plaintiff has neither submitted proof nor a good faith allegation that shows compliance with the amount in controversy requirement. The claims in this case simply cannot stand on the thin reed of his vague allegations of harm.

Even considering the possibility of punitive damages, Plaintiff cannot meet the jurisdictional threshold.  Although plaintiff appears to assert a legal claim of "emotional distress," the complaint makes no factual allegations of emotional distress or any other non-pecuniary injury resulting from defendant's actions.  He admits his reputation was not harmed, so any compensatory damage, if any, would be small.  So, even assuming that punitive damages could be awarded, they would not equate to $75,000, due to constitutional guarantees of due process which require punitive damages to be proportionate to compensatory damages.  See Hunter, 384 F. Supp. 2d at 261-262.

This Court should find to a legal certainty that the damages alleged, even considering any constitutionally permissible punitive damages award, do not reach the jurisdictional threshold of $ 75,000 established by 28 U.S.C. § 1332(a), such that this Court has no subject matter jurisdiction over plaintiff's claims in the complaint or proposed amended complaint.  Accordingly, the Court must dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## IV.    PLAINTIFF'S PROPOSED AMENDMENT SHOULD BE DENIED AS FAILING TO STATE A CLAIM

Putting aside the jurisdictional problems, Plaintiff's proposed amended complaint does not state a claim for relief, and therefore should be denied.  The allegation made by Plaintiff which is within the one year statute of limitations is that she truthfully stated that she had sexual relations with him, while he was wearing a condom, and he had an orgasm.  This statement is neither alleged to be false nor otherwise sufficient to support a claim for injury to reputation by a public official such as Mr. Steinbuch.

A.      **Robert Steinbuch Was A Public Official**

Robert Steinbuch, based on his own allegations, was "an attorney employed on the staff of the United States Senate Judiciary Committee."  Complaint, ¶ 4.  He alternatively describes himself as "Committee Counsel to the Senate Committee on the Judiciary."  In this capacity, Mr. Steinbuch was a high ranking official in the committee staff of United States Senator Michael DeWine.  He was entitled to many of the same Constitutional protections – including protection under the Speech and Debate Clause of the United States Constitution – as was the Senator himself.  See Gravel v. United States, 408 U.S. 606, 616 (1972).  As such, he was at least as much a public official as many others accorded that title and as to whom First Amendment limitations apply.

In Rosenblatt v. Baer, 383 U.S. 75 (1966), the Supreme Court said, "the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."  Ibid., 383 U.S. at 85.  In the application of this "substantial responsibility" test, the law is clear that individuals involved in law enforcement are public officials and that the standard enunciated in New York Times Co. v. Sullivan applies to them.  See, e.g., Time, Inc. v. Pape, 401 U.S. 279 (1971) (deputy  chief of detectives of the Chicago Police Department); White v. Fraternal Order of Police, 909 F.2d 512, 517 (D.C. Cir. 1990) (captain in Washington, D.C. Metropolitan Police Department); Meiners v. Moriarity, 563 F.2d 343 (7th Cir. 1977) (federal agents); see also, Bruce W. Sanford, Libel and Privacy § 7.2.3.2 (2d. ed. 1991) [citing cases]; Rodney A. Smolla, Law of Defamation § 2.26[1] (Release #6, 1/93) [citing cases].

In <u>Meiners v. Moriarity</u>, federal agents asserted a defamation counterclaim against an individual who claimed his constitutional rights were violated when he was arrested during a drug raid.  In upholding the trial court's determination that the federal agents were "public officials" and had to prove "actual malice," the Seventh Circuit said, "the public is certainly interested in an important and special way in the qualifications and performance of federal agents . . . whose decisions to search and arrest directly and personally affect individual freedoms."  563 F.2d at 352.

Like the federal agents in <u>Meiners</u>, Mr. Steinbuch had or appeared to the public to have, substantial responsibility for or control over the conduct of governmental affairs.  He was charged not merely with attempting to enforce the law once it is written; he was involved with the very process of writing the laws themselves.   If a federal agent is a "public official," one must concede that Committee Counsel for the United States Senate Judiciary Committee is also a "public official."

**B.    The First Amendment Limits Tort Liability for Truthful Speech Regarding Public Officials**

Plaintiff has failed to allege that the statements about him which are now at issue in this case are in any way untrue, much less that they were made with reckless disregard as to their falsity.  As a result, he cannot maintain his claims under any set of facts.  Therefore, the Motion to Amend is futile.

In <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254 (1964), the Supreme Court held that under the First Amendment, public officials claiming defamation must allege that the published information was both false and published with actual malice, i.e., with knowing or reckless disregard for its falsity. See <u>ibid</u>. at 279-80. This standard applies to other claims – regardless of

how they are styled – alleging harm to the reputation of a public official as a result of statements made by others. As the D.C. Circuit has held:

> Both the Supreme Court and this court have made clear that the constitutional protections available to defendants charged with defaming public officials may extend to other civil actions alleging reputational or emotional harm from the publication of protected speech. In Hustler Magazine v. Falwell, 485 U.S. 46, 99 L. Ed. 2d 41, 108 S. Ct. 876 (1988), where a public figure plaintiff sought damages for intentional infliction of emotional distress against the publisher (also Larry Flynt) of a lewd cartoon parody of the plaintiff, the Supreme Court extended the New York Times standards to the intentional infliction claim, finding such safeguards "necessary to give adequate 'breathing space' to the freedoms protected by the First Amendment." Id. at 56; cf. Cohen v. Cowles Media Co., 501 U.S. 663, 671, 115 L. Ed. 2d 586, 111 S. Ct. 2513 (1991) (holding that New York Times does not apply to a promissory estoppel claim seeking damages for economic rather than emotional or reputational harm). We followed a similar path in Moldea v. New York Times Co., 306 U.S. App. D.C. 1, 22 F.3d 310 (D.C. Cir. 1994), where an author sued a newspaper for the publication of a negative book review, alleging defamation and false light invasion of privacy. We held that because the plaintiff had failed to meet the burdens of proof associated with his defamation claim, the "related claim for false light invasion of privacy must also fail." Id. at 319. As we explained, "a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim." Id. at 319-20.

Barr v. Clinton, 370 F.3d 1196, 1202-03 (D.C. Cir. 2004).  As a result, Mr. Steinbuch's claims for invasion of privacy and intentional infliction stand on the same footing.

Mr. Steinbuch does not allege that the speech at issue in this case is false, nor does he claim that he was a private citizen at the time the speech was made.  Instead, he trumpets in the Complaint his status as an important public official.  Having accepted the benefits of high public office, he must withstand the scrutiny as well:

> The guarantees for speech and press are not the preserve of political expression or comment upon public affairs, essential as those are to healthy government. One need only pick up any newspaper or magazine to comprehend the vast range of published matter which exposes persons to public view, both private citizens and public officials. Exposure of the self to others in varying degrees is a concomitant of life in a civilized community. The risk of this exposure is an essential incident of life in a society which places a primary value on freedom of speech and of press. "Freedom of discussion, if it would fulfill its historic function in this nation,

must embrace all issues about which information is needed or appropriate to
enable the members of society to cope with the exigencies of their period."
<u>Thornhill v. Alabama</u>, 310 U.S. 88, 102. "No suggestion can be found in the
Constitution that the freedom there guaranteed for speech and the press bears an
inverse ratio to the timeliness and importance of the ideas seeking expression."
<u>Bridges v. California</u>, 314 U.S. 252, 269. We have no doubt that the subject of the
Life article, the opening of a new play linked to an actual incident, is a matter of
public interest. "The line between the informing and the entertaining is too elusive
for the protection of . . . [freedom of the press]." <u>Winters v. New York</u>, 333 U.S.
507, 510. Erroneous statement is no less inevitable in such a case than in the case
of comment upon public affairs, and in both, if innocent or merely negligent, ". . .
it must be protected if the freedoms of expression are to have the 'breathing space'
that they 'need . . . to survive' . . . ." <u>New York Times Co. v. Sullivan</u>, supra, at
271-272.

<u>Time, Inc. v. Hill</u>, 385 U.S. 374, 388-389 (1967).

While Mr. Steinbuch quotes from various alleged quotes from interviews given by Ms.
Cutler to the effect that her interactions with Mr. Steinbuch were not newsworthy, it is self-
evident that she was wrong.  After all, these were (in many cases), *news* interviews and *news*
stories.  In an age when the winner of American Idol is the headline of most newspapers and
most news programs and stories are less dignified than perhaps they were (or we wish they were)
in a bygone era, the holding in <u>Time, Inc.</u>, must be seen as prescient.  "No suggestion can be
found in the Constitution that the freedom there guaranteed for speech and the press bears an
inverse ratio to the timeliness and importance of the ideas seeking expression." <u>Time, Inc.</u>, 385
U.S. at 388.  Ms. Cutlers' speech, about her own life and her own interactions with a public
official, shares those protections.  Mr. Steinbuch's complaint regarding those truthful accounts
fails to state a claim upon which relief can be granted, as he has neither alleged that the statement
were false and made with actual malice.

## CONCLUSION

This case should not be permitted to go forward.  Mr. Steinbuch has failed to demonstrate sufficient injury to support jurisdiction in this Court and the only matters of which he complains are protected by the First Amendment.  The Motion to Amend should be denied and his Complaint dismissed with prejudice.

Respectfully submitted this 10th day of August, 2006.

/s/ John R. Ates
John R. Ates, Esq., DC Bar No. 441084
ALBO & OBLON,, LLP
2200 Clarendon Blvd., Suite 1201
Arlington, VA 22201

/s/ Matthew C. Billips
Matthew C. Billips
Georgia Bar No. 057110, *pro hac vice* motion
pending
MILLER & BILLIPS, LLC
730 Peachtree Street, Suite 750
Atlanta, GA 30308
ph: (404) 969-4101
fax: (404) 969-4141
mbillips@mbalawfirm.com

**COUNSEL FOR DEFENDANT
JESSICA CUTLER**