UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT STEINBUCH,                       )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )     Case No. 1:05-CV-970 (PLF)
                                        )     Judge Paul L. Friedman
JESSICA CUTLER,                         )
                                        )
        Defendant                       )
_____ _____)

**DEFENDANT'S FIRST REQUEST FOR ADMISSIONS
FIRST INTERROGATORIES AND
FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant, by and

through the undersigned counsel of record, does hereby serve upon you the following

written Requests for Admission, Interrogatories and Requests for Production of

Documents for the purpose of discovery of certain matters which are relevant to the

above-styled pending action or which may lead to the discovery of relevant

information. You are required to answer each Request for Admission within 30 days

after service of the request by serving upon the undersigned counsel for Defendant a

written answer addressed to the matter which you are requested to admit, signed by

the you or by your attorney. If you state an objection in lieu of or in addition to your

response, the reasons therefor shall be stated.

1

Each answer must specifically deny the matter or set forth in detail the reasons why you cannot truthfully admit or deny the matter. Any denial must fairly meet the substance of the requested admission, and if good faith requires that you qualify you answer or deny only a part of the matter of which an admission is requested, you must specify so much of it as is true and qualify or deny the remainder. You may not give lack of information or knowledge as a reason for failure to admit or deny unless you states truthfully that you have made reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.

You are required to answer each Interrogatory separately and fully in writing and under oath and to answer each Request for Production separately, producing responsive documents with your response, by serving your responses and documents upon the undersigned counsel for Defendant within 30 days after service of the Interrogatories and Requests for Production.  If you object to any one or more of the Interrogatories or Requests for Production of Documents, then the precise reason(s) for your objection(s) shall be stated in lieu of and/or in addition to your answer. These Interrogatories and Requests for Production are continuing in nature; that is, if any additional or different information comes to your attention between the date of your answer and the time of trial, then your Answer and production of documents must be supplemented or amended to include such additional or different information.

You are requested to produce the documents at the offices of MILLER & BILLIPS, 730 Peachtree Street, Suite 730, Atlanta, Ga. 30308 on the thirty-third day following service of this Request.

## INSTRUCTIONS AND DEFINITIONS

1.    "Person" refers to any natural person, firm, corporation, partnership, joint venture, or any other form of business entity.

2.    "Documents" refer to all communications in whatever form and however and by whomever made, including but not limited to the following items, whether printed, recorded or filmed, or reproduced by hand, and whether in the form of an original or copy, namely, without limitation:   agreements; communications; correspondence; cablegrams; radiograms; telegrams; notes; memoranda; summaries of telephone conversations, meetings and conferences, including lists of persons attending such meetings or conferences; summaries and records of personal conversations or interviews; books; manuals; publications; diaries; charts; photographs; summaries; records of investigations; opinions and reports of consultants; brochures; pamphlets; financial statements; checks; invoices; ledger sheets; journal entries; punch lists; tapes, disks, or other electronic media; writing or physical thing, including all drafts of originals and preliminary notes on or marginal comments concerning each of the above-described documents.  When a document is

maintained in more than one of the preceding forms, please identify each and every form in which such document is maintained. "Documents" shall include electronically stored information, including metadata associated therewith.

3.    The term "thing" means anything tangible which constitutes or contains matters within the scope of Fed. R. Civ. P. 26.

4.    "Plaintiff" or "you" or "yours" refers to Plaintiff herein and/or any agent or representative of any of the Plaintiff, including, but not limited to, attorneys.

5.    When asked to identify an individual, state said individual's name, home and business address, home and business telephone number, occupation, title or position, and employer.

6.    When asked to identify a document or thing, describe the type of document or thing (i.e., whether a letter, memo, invoice, check, etc.), the date or approximate date of preparation of said document, the name and address of the current custodian of the document, the number of pages of such document, and a general description of the substance of such document. Whenever production is requested of a document which is no longer in your possession, custody or control, your response should identify the document by name, number, form or description, and by date made, and the date which the document was most recently in your possession, custody or control, the disposition made of the document, and the identity of the person or

persons now in the possession, custody or control of such document.  If the document has been destroyed, the response should state the reason for its destruction and the identity of the person or persons who destroyed the document and who directed that document be destroyed.

7.    If you object to part of a Request for Admission, an Interrogatory or Request for Production and refuse to answer that part, state your objections and answer the remaining portion of that request.  If you object to the scope or time period of the request and refuse to answer for that scope or time period, state your objection and answer the request for the scope or time period you believe is appropriate.

If any of the following requests cannot be responded to in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information you have concerning the unanswered portions.  If your response is qualified in any particular, please set forth the details of such qualifications.

8.    In the event you wish to assert attorney/client privilege or work-product exclusion, or both, or any other privilege which you claim in good faith to be applicable, as to any information or document requested by any of the following specific requests, then as to each response subject to such assertion, you are requested to provide Defendant with identification of such information or document in writing,

such identification to include the nature of the information and/or document, the author, the recipient(s), the recipient of each copy, the date, the name of each person to whom the information or such document was provided, the names appearing on any circulation list of the department associated with any such document, a summary statement of the subject matter of the information or document in question in sufficient detail to permit the Court to reach a determination in the event of a motion to compel, and an indication of the basis for assertion of the privilege in question.

9.    When asked to identify a meeting, conference, or discussion, state the date of such meeting, conference or discussion and identify all persons participating herein.  "Meeting, conference, or discussion" shall include, without limitation, any verbal communication from one individual to another, regardless of formality, length of communication, or whether there was any reply.

### REQUESTS FOR ADMISSION

Please admit or deny each of the following facts:

1.

On or before Tuesday, May 18, 2004, 2:10 p.m., EST, Defendant published the following entry in her web log:

 I just took a long lunch with F and made a quick $400. When I returned to the office, I heard that my boss was asking about my whereabouts. Loser.

6

2.

On or before Tuesday, May 18, 2004, 10:59 a.m., EST, Defendant published

the following entry in her web log:

> RS called last night. He had a visitor flying in from NYC who was stuck
> in a holding pattern over DC for an hour. (Who flies from NY to DC
> anymore? Take the train! Or the $10 Chinatown bus.)
>
> He was bored, so he picked me up and took me back to his house. His
> friend arrived around 11:30pm, and was exhausted from his hellish plan
> ride. So Rob and I went upstairs and got ready for bed.
>
> Warning: the following passage is extremely corny. Get ready to vom.
>
> So I get into bed and by then, it's midnight.
>
> "What time is it?" RS asks.
>
> "Midnight," I reply.
>
> "Do you know what that means?"
>
> "Uh...no."
>
> "That means it's your birthday." And he pulls out this pink and green
> package, and I just know it's a new Lilly dress.
>
> And it was. Then we fucked missionary. And he came. With a condom
> on.
>
> Then he was like, "Who the hell comes missionary anymore?!"
>
> Is that the quote of the day or what?

3.

You telephoned Jessica Cutler on the evening of May 17, 2004.

4.

On the evening of May 17, 2004, you told Jessica Cutler that you had a visitor flying in from NYC who was stuck in a holding pattern over DC

5.

On the evening of May 17, 2004, you picked Ms. Cutler up and took her back to your house.

6.

The visitor referenced in Paragraph 2, above, arrived around 11:30pm on the evening of May 17, 2004.

7.

On the evening of May 17, 2004, you and Ms. Cutler went upstairs and got ready for bed while your friend referenced in the preceding paragraph was in your house.

8.

On the evening of May 17, 2004, after you got into bed with Ms. Cutler, you and asked her what time it was.  She informed you that it was midnight. You asked

her if she knew what that meant. You told her that it meant that it was her birthday. You gave her a birthday present.

9.

On or about midnight, May 17, 2004 or in the early morning of May 18, 2004, you had sexual intercourse with Defendant, in the missionary position, while wearing a condom, and ejaculated.

10.

On or about midnight, May 17, 2004 or in the early morning of May 18, 2004, after you had sexual intercourse with Defendant, you stated "Who the hell comes missionary anymore?" or words having a substantially similar meaning.

11.

On or before Monday, May 17, 2004, 8:56 a.m., EST, Defendant published the following entry in her web log:

> First, I want to give a shout-out to my friend's blog, Clueless. It is much funnier than mine. I sent her an e-mail telling her this and she wrote back:
>
> "You're crazy--my blog is so boring compared to yours. I'm like, ooooh, I made eye contact with someone today! Yours actually has action occurring on a daily basis. Trust me, it's very entertaining."
>
> Not so today. I had a lovely weekend, but nothing awesome happened.
>
> Like, on Friday, I ate a really good quesadilla and went to a movie. (So what?)

9

On Saturday, I went to Eastern Market with RS and we walked around holding hands. (Who cares?)

On Sunday, I did errands. (Bring a book!)

Oh, I forgot: I learned that RS has a twin! (Unf, nobody finds this as fascinating as I do.)

Getting involved in a new relationship really just means ruining your nightlife. I resolve not to let this happen to me: I got bored and restless in my last relationship, and look what happened. Call it Madame Bovary Syndrome. Going out and getting trashed at least three times a week is the only cure.

12.

Prior to May 16, 2004, you disclosed to one or more person(s) other than Defendant that you were having a sexual relationship with Defendant.

13.

Prior to May 16, 2004, you discussed with one or more person(s) other than Defendant that you were having a sexual relationship with Defendant.

14.

Prior to May 16, 2004, you discussed with one or more person(s) other than Defendant that your sexual relationship with Defendant had included spanking.

15.

Prior to May 16, 2004, you discussed with one or more person(s) other than Defendant that your sexual relationship with Defendant had included oral sex.

16.

Prior to May 16, 2004, you discussed with one or more person(s) other than Defendant that your sexual relationship with Defendant had included sex in the missionary position.

17.

Prior to May 16, 2004, you were aware that your sexual relationship with Defendant was known to one or more persons other than Defendant who were employed in the office of United States Senator Michael Dewine.

18.

Prior to May 16, 2004, you discussed the fact of your sexual relationship with Defendant with one or more persons other than Defendant who were employed in the office of United States Senator Michael Dewine.

19.

Prior to May 16, 2004, you were aware that your sexual relationship with Defendant was known to one or more persons other than Defendant who were employed by the United States Senate Judiciary Committee

20.

Prior to May 16, 2004, you discussed the fact of your sexual relationship with Defendant with one or more persons other than Defendant who were employed in the office of United States Senate Judiciary Committee

21.

Prior to May 16, 2004, you were aware that your sexual relationship with Defendant was known to one or more persons other than Defendant who were employed by the United States Senate.

22.

Prior to May 16, 2004, you discussed the fact of your sexual relationship with Defendant with one or more persons other than Defendant who were employed in the office of United States Senate.

23.

On or before Friday, May 14, 2004, 4:34 p.m., EST, Defendant published the following entry in her web log:

I got a raise today! Now I make $25K.

(Wasn't that what I was making before??)

Most of my living expenses are thankfully subsidized by a few generous older gentlemen. I'm sure I am not the only one who makes money on the side this way: how can anybody live on $25K/year??

If you investigated every Staff Ass on the Hill, I am sure you would find out some freaky shit. No way can anybody live on such a low salary. I am convinced that the Congressional offices are full of dealers and hos.

24.

On or before Friday, May 14, 2004, 3:48 p.m., EST, Defendant published the

following entry in her web log:

Going to see the movie Troy tonight. RS told me to call him afterwards. Wants sex. We've only been dating a week, and we already have a routine.

25.

On or before Friday, May 14, 2004, 9:53 a.m., EST, Defendant published the

following entry in her web log:

MK found my half-empty bottle of K-Y last night. He will probably never speak to me again.

I feel bad about what I did to MK and I feel like our relationship deserves more than a short write-off, but we both need to move on. I never promised him a rose garden.

So I called RS after MK left in a huff. I ended up sleeping over in Bethesda for the third night in a row.

He wants us to get tested together so we can stop using condoms. Isn't that sweet? Hope I don't have anything!

So I don't know if it's getting serious or what. We're seeing each other every day now. I like him very much and he likes me. But can it go anywhere, i.e. marriage? I don't know. He's Jewish, I'm not. And we have nasty sex like animals, not man and wife. But we work together, so there is an incentive to stay together and avoid an awkward breakup. And after

a few months, people around the office will start "hearing wedding bells."

I really just want to be a Jewish housewife with a big rock on my finger.

26.

On or before Thursday, May 13, 2004, 1:11 p.m., EST, Defendant published the following entry in her web log:

Thursday, May 13, 2004

Item! "The Real World: D.C."

See today's Wonkette:

Like You Need Another Reason to Avoid Adams Morgan

Wonkette's Kalorama Citizens' Association operative writes to say that "The Real World: D.C." has found a location for its Ikea showroom/soundstage:

MTV has purchased the space above Maggie Moo's on 18th St in Adams Morgan. Real World DC here we come. . .

Wondering if the cast will work for MoveOn or Club for Growth. . .

Or they could work at The New Republic with all the other recent college graduates who aren't paying their own rent.

Or worse, they could work on the Hill!

27.

On or before Thursday, May 13, 2004, 9:10 a.m., EST, Defendant published the following entry in her web log:

I first learned about the SU logo/name change at last night's Chancellor's alumni reception. I bumped into a "contemporary" of mine from da 'Cuse who also works in da Senate--in da same office as that girl I saw MD with a few weeks ago.

So we had some drinks at the reception and I went to Red River to meet some people from his office. Unf, she wasn't there, but I learned that she thinks MD is as big of a chump as I do. My SU friend told me that MD was talking to her long before I came to the Hill. She recently broke up with her boyfriend, but SU Dude believes that she won't date MD, they're just friends.

(Not that I care anymore, but these things are good to know.)

So my friend AS met up with me at RR and I had two genius ideas:

1. We should go to Saki.

2. AS should meet RS.

So I called RS and told him to come over so AS could get a look at him. This morning she says (via IM), "He does look like George Clooney, but he's totally Woody Allen."

She also said, "He will do anything to make you happy."

Isn't that sweet? And it's true: he stood in line with us at Saki for 1 1/2 hours!

BTW, Saki has gotten really hard to get into. But I don't know of any other place that is more action-packed on a Wednesday night in Washington. However, AS and I have decided not to go back there for a few months: we actually recognized people from the last time we were there! Which is a v. bad sign.

Also, we will go home and change before we go to Saki. Next time, we will not wear our work clothes.

When Saki closed, we got some nasty Pizza Mart slices that tasted really good at the time. Then AS went home and RS took me back to his place for the second night in a row. I passed out as soon as I lay down, so we didn't do anything.

I woke up with an awful hangover and barfed up my Pizza Mart. (I'm losing weight!) Then RS drove me home and made me promise to call him again today. I need to take it easy tonight, which means I might not go out, and I am sitting out the taco contest for sure.

Sorry to disappoint any of my fans at Tortilla Coast.

posted by The Washingtonienne at 10:17 AM Back to top

28.

On or before Thursday, May 13, 2004, 9:10 a.m., EST, Defendant published the following entry in her web log:

From the D.O.:

"Syracuse changes nickname, logo"

http://www.dailyorange.com/news/680748.html?mkey=414705

I don't like.

29.

On or before Wednesday, May 12, 2004, 4:20 p.m., EST, Defendant published the following entry in her web log:

What is my position? I am a Staff Assistant, or "Staff Ass," as the men on the Hill like to say. It's the entry-level job in each office. (For those who don't know.)

16

30.

On or before Wednesday, May 12, 2004, 12:59 p.m., EST, Defendant published

the following entry in her web log:

R (Threesome Dude) e-mailed me while I was out at lunch:

> How are things on the Hill? I assume everyone's going nuts
> about the Iraq (and now Afghanistan) prisoner abuse stories
> and the execution of that young American.
>
> Warm here, beautiful out…people trying to forget the state
> of the world and just enjoy life a little.
>
> And thanks again for inviting me. Barring that final drink
> (and anything I said that might have made that a little
> awkward – for which I apologize), I really enjoyed it. And
> I hope to see you again.
>
> Best,
>
> R

Jesus, what a douche.

31.

On or before Wednesday, May 12, 2004, 9:28 a.m., EST, Defendant published

the following entry in her web log:

> So I went to dinner w/ RS at Lebanese Taverna. He's really not mad
> about the gossip at all: he's actually joking around the office about it.
> Like, when he walks out of a room, he'll slap himself on the ass! Me, I'm
> just hiding in my office until this blows over.

We went to his house after dinner, a four bedroom in Bethesda. Needs work, but v. cute.

So it turns out that RS cannot finish with a condom on. He can barely stay hard. So he ends up taking it off and humping away at me. Maybe I forgot to tell him that I'm on the Pill. Note to self...

I also learned that he was a cop, so he has scary police shit like handcuffs in his closet. He implied that we would be using them next time, which is intriguing, but I know I'm going to get scared and panicky. (Which would probably turn him on.)

So 9pm comes and goes, and I missed my date with MK. And I was missing ANTM! So I just watched it with RS. Meanwhile, MK is trying to call me on my cell (which is turned off inside my handbag.) MK left a very irate message on my voicemail. He basically hates me now.

But when you're crushing on somebody new, that stuff doesn't affect you as much as it should. I slept over at RS's and he drove me home this morning to change. I'm supposed to call him again today. I'm afraid I really like him. I like this crazy hair-pulling, ass-smacking dude who wants to use handcuffs on me. Shit.

32.

On or before Tuesday, May 11, 2004, 5:57 p.m., EST, Defendant published the

following entry in her web log:

RS just called again. Bad news: the rumor has spread to other offices. This is bad.

33.

On or before Tuesday, May 11, 2004, 4:44 p.m., EST, Defendant published the

following entry in her web log:

http://www.marthastewart.com

If you're like me and you're decorating a new apartment (because your boyfriend kicked you out), you need to stop hatin' on Martha: her stuff is the cutest! I'm getting the faux bois pattern throw pillows, and the seaweed and coral candles!

34.

On or before Tuesday, May 11, 2004, 3:39 p.m., EST, Defendant published the following entry in her web log:

Praise for Washingtonienne:

"This is pretty cool - she sounds like a 'fun' girl. I'd like to blog her."--James, San Diego, CA.

35.

On or before Tuesday, May 11, 2004, 2:42 p.m., EST, Defendant published the following entry in her web log:

Oooh, RS just called me. He asked me out again tonight, but I have plans w/ MK @ 9pm. (We're watching the ANTM special together.)

Two nights in a row. I like him, but WTF?

36.

On or before Tuesday, May 11, 2004, 2:21 p.m., EST, Defendant published the following entry in her web log:

By popular demand, I have finally created a key to keeping my sex life straight.

In alpha order:

AJ=The intern in my office whom I want to fuck.

F=Married man who pays me for sex. Chief of Staff at one of the gov agencies, appointed by Bush.

J=Lost my virginity to him and fell in love. Dude who has been driving me crazy since 1999. Lives in Springfield, IL. Flies halfway across the country to fuck me, then I don't hear from him for weeks.

MD=Dude from the Senate office I interned in Jan. thru Feb. Hired me as an intern. Broke up my relationship w/ MK (see below).

MK=Serious, long-term boyfriend whom I lived with since 2001. Disastrous break up in March, but still seeing each other.

R=AKA "Threesome Dude." Somebody I would rather forget about.

RS=My new office bf with whom I am embroiled in an office sex scandal. The current favorite.

W=A sugar daddy who wants nothing but anal. Keep trying to end it with him, but the money is too good.

Shit. I'm fucking six guys. Ewww.

37.

On or before Tuesday, May 11, 2004, 9:19 a.m., EST, Defendant published the following entry in her web log:

I am so busted.

Went out w/ RS after work yesterday. He took me out for drinks, took me back to my place, and we fucked every which way. THEN he tells me that he heard I've been spreading the spanking rumor around the office!

20

He's not mad, but I am so ashamed of my behavior: I have such a big mouth. It got around and now EVERYBODY knows. Even our LD (who is sleeping with somebody in our office, too, BTW.)

But last night was fun. He's very up-front about sex. He likes talking dirty and stuff, and he told me that he likes submissive women. Good, now I can take it easy in bed. Just lay back and watch him do freaky shit.

We went to Tune Inn and ate some shit there because it was the only place open at 1am. He walked me home and kissed me at my door. I was like, "Aww, this is so adorable!" He called me "jaded" and told me to call him tomorrow (i.e. today).

Jaded? Moi?

                                        38.

On or before Monday, May 10, 2004, 6:25 p.m., EST, Defendant published the

following entry in her web log:

Must watch!

America's Next Top Model: The Runway Ahead, Tuesday @ 9pm on UPN!

http://www.upn.com/shows/top_model2/runway_ahead/index.shtml

                                        39.

On or before Monday, May 10, 2004, 2:08 p.m., EST, Defendant published the

following entry in her web log:

Updates

Went to "lunch" (i.e. iced coffee) and on the way back, bumped into both MD and RS! (But not at the same time, TG.)

I told MD I had some news, so he sat down with me in the cafeteria and I told him about RS. (I left out the sex. Also, I tried to frame the story like, "Isn't this a totally fucked-up situation?", not like I'm trying to make him jealous.)

He could not get back to work fast enough. I really don't care if he hates me or what. He isn't into me anymore anyway. If he was, he would call me more often. Also, he said he's trying to get a job off the Hill asap, so I can stop worrying about bumping into him everywhere I go.

So I leave the cafeteria and start walking back to the office, and I see RS. We stopped and talked in the hall and he asked me out for a drink tonight. (Except he doesn't drink?) I look really good today, so I'm glad I hit two birds with one stone during my lunch hour.

40.

On or before Monday, May 10, 2004, 12:35 p.m., EST, Defendant published the following entry in her web log:

W just e-mailed me: How was your weekend? Thinking of you!

Ugh.

I wrote back: From now on, we should go out drinking before we go back to your place. I think that would improve everything.

I know I said it was "over," but it's not like it matters either way. What can I say, I like money.

41.

On or before Monday, May 10, 2004, 11:47 a.m., EST, Defendant published the following entry in her web log:

22

I am done with W, for real this time. A man who tries to fuck you in the ass when you are sober does not love you. He should at least take you out for a few drinks to spare you the pain. Now I know that W does not care about me, only my asshole.

The whole situation depressed me so much, I turned down a free dinner and asked him to take me home. He peeled off a few hundred from that roll of cash he carries around, and put the hundreds in my hand as I was getting out of the car. I acted indignant, like I don't need his help, but I kept it: why punish myself? I should get something for putting up with his tired old ass.

So that's the end of W.

The intern did not show at the party on Saturday. I was disappointed, but it's probably for the best. I don't need anymore sex scandals at work. But I'm bummed that he is not as interested as I had imagined.

Had a good time with AS and her friend G. We got wasted and I passed out on my floor Saturday night.

Sunday, I laid out and got some good sun. Unf, I chose a popular tourist picture-taking spot on the Mall, and all these assholes kept trying to snap shots of me in my bikini. I know I'm hot and everything, but please: no pictures!

So I went home to take a nap. I opened the door and started walking towards my bedroom, past the kitchen. I noticed a new blender sitting on the counter.

BUT I DON'T OWN A BLENDER!

I started to call the police, but stopped to think. Who has a key to this place? F! But why a blender? More importantly, why didn't he call first? What if I was in bed with my intern and F popped in with a surprise blender?

F e-mailed me this morning to ask if I liked his gift. I just told him that I don't like surprises. I can't afford to stop seeing him, so I didn't bitch him out as much as I should have. I mean, is he crazy or what? Maybe I told him I wanted a blender and don't remember. Even so, why not call?

MK came home from his Iceland trip last night and we had another totally redundant and pointless argument about our relationship. We made up before The Sopranos started so I could watch w/o his pissy little distractions. Such a bitch sometimes. But I love him.

Back to work now...

42.

On or before Friday, May 7, 2004, 6:38 p.m., EST, Defendant published the

following entry in her web log:

I take weekends off from this blog. So before I go, this is the plan:

Take cab over to W's place in Georgetown. Fuck. Get dinner someplace expensive.

W drives me home to Cap Hill.

Go to keg party at coworker's house. (RS will not be there. Maybe fuck somebody else?)

Get 8 hours sleep.

Get crabcake Bennifer at Eastern Market before they stop serving breakfast.

Run??

Call my friend AS. Will meet up w/ her before party.

Hope intern will show.

24

43.

On or before Friday, May 7, 2004, 5:24 p.m., EST, Defendant published the

following entry in her web log:

> Three weeks. That's how long it took for J for start it up again.

> He's getting better at this long-distance thing. One month was the standard wait. Now it's down to three weeks. We must be getting serious!

> I got an e-mail from him this afternoon, and we had some back-and-forth.

> Still with his crazy girlfriend in Springfield, IL. But I shouldn't talk.

> This is the last thing I need in my life right now: another distraction at work! I am so behind...

> If it wasn't for e-mail, J and I would have forgotten about each other long ago. So effortless to stay in touch this way. Must wonder about those people who never e-mail you: they TRULY do not care.

> But I like knowing that J still wants me. What makes him decide to send an e-mail after all this time? And not just today, but all those times before? Talk about crazy!

44.

On or before Friday, May 7, 2004, 2:25 p.m., EST, Defendant published the

following entry in her web log:

> RS just e-mailed me: Hey, had a nice time yesterday. going to NY tonight, but let's get some dinner or something next week. interested?

> I said yes.

What am I getting myself into?

Yes, I like him, but am I attracted to him or the impending drama??

I really don't get myself sometimes.

45.

On or before Friday, May 7, 2004, 2:02 p.m., EST, Defendant published the

following entry in her web log:

> The boss who pimped me out to RS just stopped by. She asked me what
> happened after she left us at the bar. I tried to be as vague as possible,
> but I implied that she should ask RS himself.

> Then she mentioned that RS is very discrete, so I am taking that as a hint
> to keep quiet.

> Finally, she asked me if I would say yes if he asked me out again. I told
> her that I would.

> So it looks like I might have another boyfriend. I hope this does not end
> badly.

46.

On or before Friday, May 7, 2004, 1:16 p.m., EST, Defendant published the

following entry in her web log:

> I told my coworkers about the spanking over lunch, but left out the nasty
> parts. (We were eating.)

> So they were shocked. Not sure I should have told them. But they blame
> him for what happened: he is senior and should know better, esp since
> he was the sober one.

26

One of them told me that RS wore a purple turtleneck with a bright blue fleece over it at a recent staff retreat. Now I wonder if he's crazy or what.

47.

On or before Friday, May 7, 2004, 11:03 a.m., EST, Defendant published the following entry in her web log:

OMG. RS just came in here to say hi.

But I got nervous and acted weird.

Shit!

48.

On or before Friday, May 7, 2004, 10:22 a.m., EST, Defendant published the following entry in her web log:

As per my IM discussion with my friend AS this morning, I resolve to:

Stop acting like I'm on Spring Break: I'm at work and I need to be more professional in my relations with coworkers.

But if that cute intern shows at the party tomorrow, I don't know if I can leave him alone.

Choices.

49.

On or before Friday, May 7, 2004, 9:35 a.m., EST, Defendant published the following entry in her web log:

27

To answer The Question, no, RS and I did not fuck. (It is my "week off," if you recall.)

BUT...

RS looks just like George Clooney when he takes off his glasses. I am serious.

Has a great ass.

Number of ejaculations: 2

He likes spanking. (Both giving and receiving.)

I put the moves on HIM. That is, I brought him back to MY place, I was the one who jumped on HIM.

I was drunk, but he was totally sober. (At least I have an excuse for my behavior!)

So I'm seeing ANOTHER person on the Hill. At least this one is counsel, and not an aide.

Going to lunch with coworkers today. Have a feeling I was invited as the new star of Hot Office Gossip, like a press conference.

50.

On or before Thursday, May 6, 2004, 2:02 p.m., EST, Defendant published the

following entry in her web log:

Item!

A new contender for my fair hand. He works in one of the Committee offices. We will call him RS.

RS had my boss ask me out for him! She actually came in here and said, "He thinks you're hot." How junior high! So all three of us are getting a drink at Union Station after work. Looking forward to an evening full of awkward moments.

## INTERROGATORIES AND
## REQUESTS FOR PRODUCTION OF DOCUMENTS

### 51.

Interrogatory

To the extent that you denied, in whole or in part, any request for admission set forth above, please give a full and complete explanation of the facts upon which you base your denial.

### 52.

Request for Production

To the extent that you denied, in whole or in part, any request for admission set forth above, please produce each and every document which supports, relates to, or contradicts your denial.

### 53.

Interrogatory

To the extent that you denied, in whole or in part, any request for admission set forth above, please give a full and complete explanation of the facts upon which you base your denial.

54.

Interrogatory

Describe all direct interaction you have had with this Defendant, whether in person, by telephone, via email, or otherwise, from January 1, 2004 to the present.

55.

Interrogatory

Identify all persons with whom you have discussed the interactions with Defendant which you were requested to identify in response to the preceding Interrogatory. In your answer, include the date and substance of the conversation you had with each individual.

56.

Interrogatory

Describe any action which this Defendant has taken which you contend caused you harm. For each act, provide (a) the date, (b) a description of the act or incident, (c) what you did in response to the act, and (d) the reason you believe Defendant is liable to you for damages.

57.

Interrogatory

Please identify, with respect to the web log entries which were the subject of the foregoing requests for admission, each statement which you contend is, in whole or in part, false and, with respect to each such statement, describe in full detail the portion of this statement which you contend is false and describe what you contend actually occurred on each such occasion.

58.

Interrogatory

Please describe in full detail your contention that you were harmed in your effort to find employment as a result of Defendant's conduct, including stating, for each position of employment you sought from May 18, 2004 to the present, the following information: (a) the identity of each such prospective employer; (b) state the title and job description for each position of employment which you sought; (c) state the name, address, and telephone number of each individual at each such prospective employer with whom you were contact regarding your application for employment; (d) the compensation and benefits which you were seeking from each such prospective position of employment; (e) describe in full detail each and every reason   you did not receive and/or accept such position of employment; and (f)

identify each and every person who communicated to you that you would not receive each such position of employment.

59.

Interrogatory

Please itemize, specifically and in detail, each and every monetary damage allegedly suffered by Plaintiff, including but not limited to any alleged loss of income and fringe benefits. For each such item of damage, please identify any documents which would support that item of damage and please identify any witnesses with knowledge of that item of damage. Additionally, please describe any calculations used to arrive at the particular dollar amount for such item of damage.

60.

Interrogatory

If you are seeking to recover damages for a physical, mental, psychological, or emotional injury, please identify any and all health care providers, including physicians, psychiatrists, psychologists, therapists, counselors, ministers, social workers, nurses, or the like with whom you have visited or consulted for physical injury or for any emotional or mental distress-related condition, illness, or treatment, allegedly caused by Defendant or for which you seek recovery from Defendant. Provide current addresses, business affiliation, if any, and phone numbers for each

person identified.  If you are not seeking to recover damages for a physical, mental, psychological, or emotional injury, please so state.

61.

Interrogatory

Specify in detail any damages other than those specified in response to the preceding Interrogatory you claim were caused by Defendant, including type, amount, and description of the damage suffered, including when the damage occurred, the basis for seeking recovery for such damage, and the identify of any documents which reflect the foregoing.

62.

Interrogatory

If you are seeking to recover damages for a physical, mental, psychological, or emotional injury, please identify any and all health care providers, including physicians, psychiatrists, psychologists, therapists, counselors, ministers, social workers, nurses, or the like, with whom you have visited or consulted in the last ten years for any physical injury, emotional or mental-distress-related condition, illness, or treatment.  Provide current addresses, business affiliation, if any, and phone numbers for each person identified.

63.

Interrogatory

Identify each and every one of your employers from May 18, 2004 to the present and, for each such employer, provide the name, address and telephone number of each individual responsible for supervising you; identify the beginning and ending dates of employment; describe your job duties; and state your annual compensation.

64.

Interrogatory

If you have ever been counseled, reprimanded or otherwise disciplined by an employer for any behavior or conduct which was directed toward any female employee(s), please identify the individual who counseled, reprimanded or imposed discipline upon you; the date of the counseling, reprimand or other discipline; the conduct which was the subject of the counseling, reprimand or other discipline; and describe in full detail the counseling, reprimand or discipline which occurred.

65.

Interrogatory

Please identify each and every member of the opposite sex with whom you have had and/or have sought a date and/or sought to enter into a romantic, dating, and/or sexual relationship at any time since January 1, 2004.  With respect to each such

34

individual, please state whether such person agreed to go on a date with you or otherwise have a romantic, dating, and/or sexual relationship with you; state the date(s) and number of times each such individual had a date and/or sexual relations with you; and identify each and every person with whom you discussed and/or to whom you disclosed each such date and/or relationship. "Sexual relations" is intended to include, without limitation, acts of oral, vaginal, or anal intercourse; masturbation; mutual masturbation; exhibitionism; voyeurism; or other such or similar acts, including physical contact between you and the breasts, buttocks, and/or genitalia of such employee, which had the purpose of providing sexual gratification, stimulation, or titillation to your and/or the other individual(s) in question.

66.

Interrogatory

Please identify each and every person who has refused to be your friend or to socialize with you or to have a person or professional relationship with you as a result of any conduct by Defendant.

67.

Interrogatory

Please identify, including name, address, and employment position, each and every individual who has provided to you information which served, either in whole

or in part, as the basis for your answer(s) to these Requests for Admissions, Interrogatories and Requests for Production of Documents, including identifying each and every custodian of documents requested herein.

68.

Interrogatory

Identify each person Plaintiff expects to call to give opinion testimony in this action under FRE Rules 701 or 702 and for each such witness provide a complete description of the opinion(s) in question and an identification of all facts, perceptions, data, and/or information of any sort upon which the opinion(s) in question are based, including, if applicable, all of the information required to be included in an expert witness' written report pursuant to Fed. R. Civ. P. 26(a)(2).

69.

Interrogatory

With respect to each witness you were requested to identify in your response or any supplemental response to the preceding Interrogatory, identify all documents or reports, including any working or preliminary drafts thereof, reviewed, relied upon, prepared or generated by or at the direction of such person in relation to the subject matter of this case.

70.

Interrogatory

Please identify each and every person known to you whom you believe may have discoverable information with respect to any of the Plaintiff's claims or defenses raised by the Defendant. For each such individual identified describe what knowledge you know or believe each such individual possesses. To the extent that any document or other recorded information supports or relates to said individual or said individual's particular knowledge, please identify said document/recorded information.

71.

Request for Production

Please produce any documents or other recorded information which you were requested to identify in response to the preceding Interrogatory.

72.

Interrogatory

Please provide the last known home and work addresses and home and work telephone numbers for each individual to whom you refer in your responses to these First Requests for Admissions, First Interrogatories and Requests for Production of Documents, not including those persons who are merely mentioned in documents produced in response thereto, unless such documents are submitted pursuant to Rule

33(d) or are intended to be incorporated within or relied upon as your response, in whole or in part, to an Interrogatory.

73.

Interrogatory

Please state whether you, your Attorneys, or any other individuals have obtained statements in any form from any person regarding any of the events, happenings, or allegations contained in Plaintiff's Complaint and Defendant's Answer. If the answer is in the affirmative, identify such persons giving statements, the dates upon which the statements were taken, the identity of the person taking the statements, and whether such statements were written, oral, or recorded.

74.

Request for Production

Please produce each and every document and/or statement which you were requested to identify in response to the preceding Interrogatory.

75.

Interrogatory

Please identify each and every document which you contend supports any of the claims asserted in your Complaint or the defenses and denials (including affirmative defenses) asserted by Defendant in the Answer to the Complaint.

76.

Request for Production

Please produce each and every document which you were requested to identify in response to the preceding Interrogatory.

77.

Interrogatory

Did you undertake to mitigate the damages you were allege were caused by Plaintiff?   If so, please describe each and every effort you expended in order to mitigate damages and the amount by which your damages were reduced in consequence of your efforts to mitigate damages; and identify each and every document supporting or otherwise relating to your response.

78.

Request for Production

Please produce each and every electronic "email" communication in your possession or control to, from, by, and/or regarding Defendant during the period January 1, 2004 through the present.

79.

Request for Production

Please produce any and all diaries, calendars, logs, memos, emails or other written materials kept or taken by your during your employment with the United States Senate and/or which concern or relate to your allegations against Defendant and/or your claims in this case.

80.

Interrogatory:

If you contend in defense of this action that any person having discoverable information in this case, including, without limitation, Defendant, has misrepresented, distorted, exaggerated, falsified or been untruthful in communicating any statement which you contend will be relevant and/or admissible in evidence, including for purposes of impeachment under FRE Rule 607 and/or 608, or has otherwise engaged in any conduct, statement, act, or omission which you contend is a specific instance of conduct upon which such individual may be cross-examined for the purpose of impeachment under Rule 608(b) or which is otherwise admissible for purposes of impeachment, please describe in full detail the alleged conduct, statement, misrepresentation, distortion, exaggeration, falsification or untruth, including a description of the subject matter; the date(s) of communication by the witness in

question; the identities of all persons who have personal knowledge of any such alleged misrepresentation, distortion, exaggeration, falsification or untruth by each such witness; and the identity, location and custodian of any and all documents which evidence any such alleged misrepresentation, distortion, exaggeration, falsification or untruth by each such witness.

81.

Request for Production:

Please produce each and every document which you were requested to identify in response to the preceding Interrogatory.

82.

Request for Production:

Please produce each and every document which you were requested to identify in response to the preceding Interrogatory.

Respectfully submitted,

/s Matthew C. Billips
Matthew C. Billips
Georgia Bar No. 057110

MILLER & BILLIPS
730 Peachtree Street
Suite 750
Atlanta, Georgia 30308
(404) 969-4101
(404) 969-4141 (fax)
mbillips@mbalawfirm.com