## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------------------------
Steinbuch                                    :        1:05-CV-970 (PLF) (JMF)
                                  Plaintiff,  :
                                             :
          -v-                                :
                                             :
                                             :
Cutler                                       :
                                  Defendant. :
-------------------------------------------------------------
```

### PLAINTIFF'S OPPOSITION AND
### RESPONSE TO DEFENDANT'S DISCOVERY MOTION

After having received Plaintiff's responses to Defendant's discovery, Defendant sought a telephone conference with me. I happily obliged. During that conversation I explained that it was apparent that much of Defendant's discovery was designed to harass (much like Defendant's served yet still not filed frivolous Rule 11 motion). During this conversation, Counsel for Defendant agreed to modify certain of his requests, and, as a consequence, I agreed to supplement Plaintiff's responses. Defendant's counsel and I agreed that I would do so in a week's time, particularly given that I was traveling when I spoke to Defendant's counsel. Instead of complying with this agreement, however, Defendant's counsel filed his motion to compel. Accordingly, we again find ourselves before this Court. Plaintiff has properly responded to Defendant's discovery responses. Defendant has sought discovery in excess of what is permitted, that is designed to harass, and that is overbroad. Defendant's motion should be denied in its entirety.

A.      "Sexual Relationship"

In Defendant's first grouping of Requests to Admit, Defendant seeks to have Plaintiff admit that he disclosed the he was having a "sexual relationship" with Defendant

Dockets.Justia.com

to variously listed parties. I explained to Defendant's counsel that by leading each of his questions with the term "sexual relationship," his questions transparently sought to trick Plaintiff into admitting that every time he discussed his relationship, that he was discussing a "sexual relationship." Plaintiff would not succumb to such an obvious ploy, and I so informed Defendant's counsel. Moreover, the very premise of Defendant's questions is without basis.

First, <u>Defendant</u> has always contended that a disclosure to a small number of people could not constitute an invasion of privacy. In fact, pursuant to this argument, Defendant has unsuccessfully tried to claim that by putting Plaintiff's private material <u>on the internet</u>, she was only communicating with a few people. Plaintiff has demonstrated that by putting material on the internet, Defendant has satisfied the publicity element of the tort of invasion of privacy. Indeed, in this Court's first denial of Defendant's series of motions to dismiss, the Court explicitly contrasted disclosures to one or two friends from disclosures that constitute publicity, such as distribution over an internet website. <u>See</u> Transcript of Court's Ruling Denying Defendant's First Motion to Dismiss. Thus, even if Defendant's assertions that Plaintiff had discussions with people in his office about his relationship (sexual or otherwise) with Defendant was true, this would have no bearing on Defendant's invasion of privacy caused by Defendant publicizing Plaintiff's private facts on the internet.

Second, Defendant continues its rejected argument that Plaintiff's reference to <u>Defendant's</u> previous disclosure of spanking to address the growing discussion <u>initiated by Defendant</u> somehow prejudices Plaintiff. Indeed, Defendant admitted that Plaintiff heard that "<u>I've [Defendant] been spreading the spanking rumor around the office!</u> . . . It

got around and now EVERYBODY knows." (Emphasis added.) If everyone in the office knows, how could Plaintiff's comments in the office be relevant?

Finally, Defendant says in its brief that "Plaintiff had commented on the fact that their relationship had become public knowledge within the office." Defendant's use of the passive voice is illuminating. As demonstrated above, "their relationship had become public knowledge" because of <u>Defendant's</u> actions. Is Defendant suggesting that had Plaintiff commented on their relationship after Defendant made it public knowledge that this could in any way prejudice Plaintiff?

Defendant's arguments on this subject are wholly frivolous and done, yet again, to obfuscate the true issue in this case – Defendant's internet invasion of privacy. Any office discussion of Plaintiff and Defendant's relationship simply has no bearing on Defendant's invasion of privacy by Defendant putting Plaintiff's private information (and name!) on the internet for all to read. As such, this whole line of inquiry should be rejected.

B.    Dates Defendant Wrote, Edited, and Modified the Blog

Defendant next asks a series of questions seeking to have Plaintiff admit that Defendant wrote certain portions of her blog at specific times, desperately hoping to revive its failed statute of limitations argument. As Plaintiff has previously stated, Defendant admitted to altering portions of her blog <u>after</u> initially drafting those portions. Additionally, Defendant continues its unsuccessful attempts to parse the whole blog into separate parts. The very caselaw that Defendant cited previously shows that additional entries on an internet cite alter the whole content of that webpage – creating a completely new webpage. <u>Oja v. Army Corps of Engineers</u>, 440 F.3d 1122, 1132 n.14 (2006) ("Of

course, substantive changes or updates to previously hosted content . . . is properly considered a new publication for purposes of the statute of limitations period").

Indeed, <u>Oja</u> makes clear Defendant's continued confusion of the single publication rule with the republication/new publication rule.  The single publication rule merely says that the statute of limitations begins when a whole document is published.  Thus, even though a website is continuously running, the date a static webpage is put up is the date to start counting for statute of limitations purpose if none of the numerous grounds for tolling apply.  However, as <u>Oja</u> also makes clear, once that webpage is altered in any meaningful way (such as, inter alia, adding Plaintiff's <u>name</u> to it – for example), the webpage is new and the counting starts over.  In any event, Defendant's misunderstanding of the law aside, Defendant admitted to altering the website's "postings" (as Defendant inaccurately characterizes them) after the date she now claims.  Accordingly, as I already explained to Defendant' counsel, Plaintiff cannot admit to what Defendant told him is not true.

    C.    Other Interrogatories

Requests 51 & 52:  Defendant does not like the fact that Plaintiff denied Defendant's false assertions and then explained that the assertions were untrue.  Plaintiff further explained its position in the telephone conversation with Defendant's counsel, and repeated those very explanations above.  Just because the answers don't comport with Defendant's desired facts is not a basis to object.

Request 54:  Defendant requests a description of all interaction that Plaintiff had with Defendant.  This request is silly in its overbreadth.  Indeed, this lawsuit concerns Defendant's lengthy recitation of only some of the details of their relationship, and

Defendant went on to write a book about these events. Does Defendant expect Plaintiff to write a book in response to this request? The request is simply overbroad for an interrogatory.

Request 55: Since the initial request was overbroad, this request cannot be answered. That notwithstanding, I told Defendant's counsel that I would provide him with a list of people that Plaintiff recalls speaking to about Defendant during their relationship as part of our agreement to correct Defendant's deficient discovery, but Defendant chose to breach that agreement.

Request 56: In response to this four-part question (constituting four separate interrogatories pursuant to Federal Rule of Civil Procedure 33), Plaintiff adequately described the harm caused by Defendant. Moreover, Defendant has the Complaint in this case. Therein, the case is set forth in pages of detail, and this response to the interrogatory summarizes those causes of actions. Defendant publicized private facts about the Plaintiff over the internet and placed him in false light. As Plaintiff discussed in great detail in its response to Defendant's second rejected motion to dismiss, Plaintiff suffered emotional distress and lost job opportunities. How many ways does Defendant need to hear this?

Request 57: Again, because Defendant doesn't like Plaintiff's response it believes that it is insufficient. If Defendant wanted to test each statement in her blog against Plaintiff, she could have posed interrogatories about each of them or used other discovery to address this. Having exceeded its limit of interrogatories, Defendant seeks to cram the whole blog into one question and then ask at least three questions about each statement (under the guise of one request). This request alone exceeds the scope of

proper discovery.  Defendant is limited to 25 interrogatories and may not use subterfuge to avoid the Federal Rules of Civil Procedure.

Request 58-59:  Again, Defendant asks at least eight questions in this interrogatory, which exceeds its permissible amount of interrogatories.  Moreover, Defendant's contention that Plaintiff has claimed that economic harm is the heart of the case is an obvious falsehood.  Plaintiff has suffered numerous harms, as detailed in his affidavit in opposition to Defendant's second failed motion to dismiss.  Among those harms were that he was turned down from jobs.  That Plaintiff does not currently have additional financial information on these lost jobs is not a basis to object.  Plaintiff was not in the process of developing this lawsuit when Defendant's tortious actions continued to cause him harm.  Plaintiff was trying to get on with his life, when Defendant continued to exploit him for her personal gain – ultimately writing a book to further cash in on Plaintiff's privacy.

Requests 60-62:  Defendant seems to be arguing its case before a jury in these objections.  Again, Defendant does not get to dictate what information Plaintiff has.  Defendant does not have to like the fact that Plaintiff does not recall the name of a doctor that he saw years ago as a consequence of Defendant's harm, but that does not give rise to an objection.  Moreover, Defendant tries to bring up alleged testimony from a previous case in which Plaintiff was a party to assert that if Plaintiff did not receive medical care as a consequence of those injuries, which occurred well prior to Defendant's actions here, that that somehow contradicts Plaintiff's testimony that he did receive medical testimony as a consequence of Defendant's actions here.  That's just silly.  (Moreover, Defendant appears to also suggest that because Plaintiff has been injured in the past, he can never be

injured again.  If Defendant is actually suggesting that, clearly such an argument is simply absurd.)

Defendant then complains that Plaintiff's description of his injuries are not enough.  Defendant, however, itself then repeats the very detailed explication of injuries that Plaintiff has already given in response to Defendant's second rejected motion to dismiss.  Plaintiff has more than sufficiently responded to this inquiry.

Finally, regarding other medical treatment, I told Defendant that his request was obviously overbroad – seeking every medical treatment that Plaintiff had for the last 10 years, but I would be willing to answer a more limited inquiry.  As discussed, Defendant's counsel decided to reject our agreement.

Request 64:  As I told Defendant's counsel, he misunderstands the response this four-part interrogatory.  (Again, Defendant seeks to exceed its permissible number of interrogatories by jamming many subparts into each question an asking overly broad questions and then objecting to the responses.).  Plaintiff has no information responsive to this inquiry.

Request 65:   Defendant's request is clearly designed to simply harass Plaintiff.  Judge Friedman explicitly stated that it was up to Plaintiff whether he would introduce prior relationships to prove his case.  See Transcript of Judge Friedman's Opinion rejecting Defendant's first motion to dismiss.  All of the false assertions by Defendant relate to Plaintiff's interaction with Defendant – not other people.  Federal Rule of Evidence 404(a) makes clear that Defendant may not attempt to prove facts that relate to Plaintiff's interaction with Defendant by attempting to show alleged conformity with prior actions.  Moreover, Defendant is intentionally misstating the facts.  For example, it

was Defendant that disclosed Plaintiff's difficulty with her condom but not with his – not Plaintiff. If Defendant really wants to contend that Plaintiff has difficulty with other condoms, then that just makes her invasion of privacy that more damaging. Moreover, it is truly ironic that Defendant has refused to identify any of the alleged people discussed in her blog that is the subject of this suit because of privacy concerns, but seeks to invade the privacy of wholly unrelated third parties. In the case of those discussed in the blog, their identity is necessary to determine the veracity of Defendant's repeated claim that the blog is completely truthful. That notwithstanding, Plaintiff limited his request in his motion to compel to those that hired Defendant for her prostitution services. How can Defendant assert that the criminal participants in the blog are entitled to the privacy that she denied the Plaintiff, and then turn around and seek to invade the privacy of wholly unrelated parties? Finally, Plaintiff has never made a claim for loss of consortium or loss of dating ability. Defendant is trying to create a claim by Plaintiff, so as to justify its harassing discovery. Plaintiff will not respond to this line of inquiry.

Request 71: Defendant has again asked a multi-part interrogatory, further demonstrating its failure to observe the limit imposed by the Federal Rules. That notwithstanding, in my conversation with Defendant's counsel, I told him that I could provide general descriptions of what these witnesses may know. Again, however, Defendant apparently rejected our agreement.

Request 72: I told Defendant's counsel on numerous occasions that we have no such documents. This is particularly telling given that Defendant's counsel has explicitly told me that he would provide me with documents in response to Plaintiff's document request, and to date Defendant has failed to produce even one document.

Request 75-76: I've also told Defendant's counsel that the only documents that I have are ones that I've downloaded from the internet. This is work-product and not subject to discovery nor for which a "privilege" log is required. Defendant is free to search the internet for her numerous current internet entries and her numerous interviews in her continuous efforts to maintain her infamy. Moreover, Defendant undoubtedly knows where she is published.

Request 77: In this multipart interrogatory, Defendant asks about Plaintiff's efforts to mitigate damages. As I explained to Defendant's counsel, I do not understand what Plaintiff could have done to mitigate damages as a consequence of Defendant's tortious behavior. Plaintiff did ask Defendant to stop further publicizing her blog to gain greater notoriety. Perhaps that is what Defendant intends with this question. It's not particularly clear.

Request 78: I told Defendant's counsel that we have no emails to or from Defendant. The request for emails "regarding" Defendant is overbroad as there is no electronic process to search the contents of all email to see if any mention Defendant.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion should be denied.


Dated: November 6, 2006                                Respectfully submitted,


                                                        /Jonathan Rosen/
                                                        Jonathan Rosen (NY0046)
                                                        Attorney for Plaintiff