UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT STEINBUCH,                          )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )   Case No. 1:05-CV-970 (PLF) (JMF)
                                           )   Judge Paul L. Friedman
JESSICA CUTLER,                            )   Magistrate Judge John M. Facciola
                                           )
        Defendant                          )
_____   )

### REPLY MEMORANDUM IN SUPPORT OF
### MOTION TO DEEM RULE 36 REQUESTS ADMITTED,
### MOTION TO COMPEL DISCOVERY,
### AND ALTERNATIVE MOTION TO PRECLUDE EVIDENCE
### AND INCORPORATED MEMORANDUM OF LAW

In response to Defendant's Motion to Deem Rule 36 Requests Admitted, Motion to Compel

Discovery, and Alternative Motion to Preclude Evidence,[1] Plaintiff makes numerous unsupported

statements about his claimed intention to supplement his **still unverified** discovery responses and

a purported agreement between counsel.  His response largely ignores the substance of the requests

and his discovery obligations, misstates the facts, and should be disregarded.  This Reply will

attempt to set the record straight.

### A.      Plaintiff Has Failed To Supplement Or Verify His Responses

Plaintiff claims that Defendant agreed to modify her discovery requests in exchange for

Plaintiff's supplementation of the responses.  No such agreement was ever reached.  Plaintiff's

counsel did not seek a modification of the requests and simply agreed to supplement some of his

obviously deficient responses by Monday, November 9, 2006, the deadline previously set by

Defendant.  He did not and has not done so to date.  Attached as Exhibit 1 are the type written notes

---

[1] Although denominated on the docket as a response to the motion for excess pages and
identified in the title as a response to "Defendant's Discovery Motion", Plaintiff's Response
makes no mention of that motion and, instead, responds on the merits of the Motion to Compel.
Therefore, it appears that Plaintiff has abandoned his opposition to the motion for excess pages
and has responded to the underlying Motion.  Therefore this Reply.

which the undersigned took during the conversation with counsel for Plaintiff which reflect those areas where Plaintiff agreed to provide supplementation.[2]  The only agreement was an implicit agreement that Defendant would not file a motion to compel discovery if the supplementation was adequate.

Plaintiff has also failed to inform the Court that the deadline for him to supplement his responses was Monday, October 9, 2006, ten days after the letter to Plaintiff's counsel.  See Exhibit A-3 to Docket No. 56.  Instead of supplementing his responses, Plaintiff filed a response opposing Defendant's Motion to Extend discovery.  Defendant waited until the close of business on the day after the supplementation was due and, not having received supplemental responses and in light of the impending close of discovery, filed the Motion in question.

Finally, Plaintiff has not even addressed the fact that his Interrogatory responses have never been verified under oath as required by the Federal Rules of Civil Procedure and the Local Rules of this Court.  Williams v. Johanns, 235 F.R.D. 116, 124 (D.D.C. 2006).  Defendant is "clearly entitled to have the complete answers to [her] interrogatories under oath."  Alexander v. FBI, 192 F.R.D. 50 (D.D.C. 2000).  The rule is clear; interrogatories are to be answered under oath. See United States v. 58.16 Acres of Land, 66 F.R.D. 570, 572 (E.D.Ill. 1975) ("Rule 33(a) clearly provides that the answers to interrogatories be under oath. Because these interrogatories were not answered under oath, it is necessary that these answers be refiled under oath."); Cabales v. United States, 51 F.R.D. 498, 499 (S.D.N.Y. 1970) (holding that interrogatories answers not signed under oath did not qualify as answers).  Plaintiff's failure to verify his responses – even in response to a motion to compel verified responses – is tantamount to a failure to respond at all and must be considered evidence of bad faith justifying sanctions.

---

[2] His contentions in this regard are of a piece with his claim that the Arkansas District Court granted his motion to quash a subpoena for emails.  Attached as Exhibit 2 is the last of the Orders in that matter, rejecting almost all of Plaintiff's claims of privilege.

### 1. Plaintiff may not rewrite Requests for Admission or refuse to respond on the basis that the responses will not necessarily be dispositive

In his response to Defendant's Requests to Admit, Plaintiff made several objections. He claimed that Requests were objectionable because they "assume[] facts not established." He appears to have abandoned that objection. He further objected that the Requests were vague or overbroad. He does not now seem to have any problem in responding to them or understanding their import. At this juncture, he only seems to take issue with the ultimate conclusion which these facts might permit the Court or a jury draw.

In his response to the Motion to Deem Requests Admitted, Plaintiff argues one version of the ultimate legal import of the facts which he was asked to admit in Requests to Admit Nos. 12 – 22. In his brief, he appears to **admit** the substance of the Requests and then argues that such admissions will not be fatal to his claims. However, in response to the Requests to Admit, he objected, equivocated, and **denied** the Requests. He did not comply with Rule 36, which states:

> The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

He did not provide any of the explanations, justifications, or elaborations to which he alludes (but does not unequivoally admit) in his Brief.

Defendant contends – as she stated in her web log at the time – that Plaintiff told her he was not upset by the disclosure of the details of their relationship, even going so far as to spank himself as he would leave an office. Obviously, Plaintiff continued to have a relationship with Defendant after these details became common knowledge. These facts strongly suggest a waiver of any privacy interest or at least that he was not (nor would be likely to be) upset by the disclosure. That Plaintiff himself contributed to the office gossip is clearly a fact which Defendant is entitled to have him either admit or deny.

It is not for Plaintiff at this juncture to make a determination as to the ultimate dispositive effect which an otherwise discoverable fact may have. That is for the Court on motion or for the trier of fact at trial. Plaintiff may not conceal or obfuscate his own discoverable conduct on the basis that his counsel believes that this conduct is not necessarily fatal to his claims. Defendant's Motion to Deem Requests Admitted should be granted.

        **2.**        **Requests for admission regarding the date on which entries were posted on the web log should be deemed admitted**

Plaintiff makes a similar error in respond to those Requests for Admission which seek to establish the initial date of each of the web log postings at issue. Plaintiff characterizes Defendant's statute of limitations defense as "failed," ignoring what the Court actually said on the subject:

> "I think we have a lot of questions as to when the statute began to run with respect to each of the statements or all of the statements or some of the statements. And that's going to be a matter for discovery, but at least you'll now know that you've got to operate on the notion that I believe there's a one-year statute of limitations."

April 5, 2006 Transcript, p. 60-61. Thus, the statute of limitations is an issue on which discovery in this case was expressly allowed.

Plaintiff's other contention – at least in response to the Motion to Compel – is that he claims he was told by Defendant that she altered the posts after they were made. However, while (if true) this might serve as a basis for denying a Request for Admission, it would not serve as a basis for objecting to and rewriting the Request. Moreover, it is the kind of fact as to which Defendant is entitled to a verified Interrogatory response.

Defendant is entitled to know what Plaintiff actually claims. Does he admit or deny that each of these postings were on the web log on or before the date in question? If he claims that a particular post was altered after the date referenced on the web log, as to which post does he make

such a claim?[3]  These are facts which are material to the discovery which the Court allowed and need to be the subject of a straightforward admission, a straightforward denial, or a response that he lacks information one way or the other.

**B.      Plaintiff Should Be Required To Adequately Respond to Defendant's Interrogatories and Requests for Production**

In response to Defendant's Interrogatories and Requests for Production, Plaintiff failed to provide any information regarding the facts at issue in this case and provided not a single document. Either he must be required to respond to discovery or Defendant's Motion to Preclude Evidence should be granted.

**1.      Interrogatory No. 51 and Request for Production No. 52**

Interrogatory No. 51 and Request for Production No. 52 seek information and documents respectively with regard to the factual basis on which Plaintiff denied, in whole or in part, any request for admission.  The entire response was "lack of complete truth and/or accuracy."

Plaintiff does not, in his response, contend that this discovery was objectionable.  Instead, he contends that "lack of complete truth and/or accuracy" is sufficient response.  Obviously, it is not a response at all.

Requests for Admissions under Rule 36 imposes certain obligations on the party responding to a Request:

> If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

---

[3] Given that Ms. Cutler deleted her entire web log on May 18, 2004, within seconds of learning that Wonkette had published it, these purported alterations would have had to occurred on or before that date.

Plaintiff's responses to Plaintiff's Requests to Admit Nos. 1, 2, 11, and 23-50 do not meet this obligation in any respect. Interrogatory No. 51 and Requests for Production No. 52 seeks merely a description of the facts underlying Plaintiff's denials (and documents relating to such denials) and are clearly permissible. Jobin v. Kloepfer (In re M & L Business Mach. Co.), 184 B.R. 366 (D.Colo. 1995); Transportes Aereos de Angola v. Ronair, Inc., 104 F.R.D. 482, 501 (D.De. 1985.).

Plaintiff apparently contends that there is no more information to be had. Well and good. Plaintiff, on this subject, should be taken at his word and he should not be permitted to introduce any evidence on the subject matters covered by the Requests to Admit.[4]

### 2.    Interrogatory No. 54

Interrogatory No. 54 asks simply for a description of Plaintiff's interaction with Ms. Cutler from the beginning of his relationship with her to the present. That encompasses less than two weeks of time prior to May 18, 2004 and a couple of telephone conversations during the next two weeks. That is hardly burdensome, particularly when Plaintiff is claiming that Ms. Cutler has painted him in a false light by virtue of her descriptions of that same relationship. Plaintiff has, moreover, failed to support his claim to burden.

As this Court has said:

> First, following many other courts, I have held that I will not consider "boilerplate" objections like this. Instead, the party opposing discovery must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome. Pro-Football, Inc. v. Harjo, 191 F. Supp.2d 77, 80 (D.D.C. 2002); Natural Resources Defense Council v. Curtis, 189 F.R.D. 4, 13 (D.D.C. 1999); Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181, 191 (D.D.C. 1998). The defendant's objection is therefore insufficient on its face.

---

[4] Defendant served her Requests for Admissions, Interrogatories, and Requests for Production in a single, sequentially numbered, set of discovery requests. Defendant's discovery identified which discovery requests constituted Requests for Admission, which an Interrogatories, and which Requests for Production. What is set out above as "No. 51" was, in fact, the first Interrogatory served by Defendant.

Pleasants v. Allbaugh, 208 F.R.D. 7, 12 (D.D.C. 2002).  No such affidavit has been provided and

Plaintiff's objection should be overruled.

> After all, Plaintiff is seeking damages from Ms. Cutler based on his claim that some of the statements in the web log regarding their relationship were false and that the web log placed him in a false light.  Defendant is entitled to his description of the course of their relationship and his interactions with her.  Since he has declined to do so, he should be stuck with the evidence as it exists, i.e., the Court should either compel further response or refuse to permit him to introduce evidence to rebut Defendant's description of their interactions.

### 3.    Interrogatory No. 55

> Plaintiff makes an unsupported claim that it would be overly burdensome for him to identify everyone with whom he discussed his interactions with Defendant.  Apparently, this number is so large he simply could not be bothered to identify them all or state when he discussed the various details of his relationship with Defendant.  So much for his claim to privacy.

> Plaintiff's claim to undue burden is unsupported by declaration testimony.  His claim that he was going to supplement the response is belied by the fact that he has never supplemented – or even verified – his responses to date.  Therefore, this objection should be overruled.

> Similarly, Plaintiff's claim to some unspecified privilege is unsupported.  Plaintiff has failed to provide any privilege log or other specification of the information withheld on this basis. Plaintiff's claim to privilege must be considered waived.

>> Failure to produce a privilege log may be deemed a waiver of the privilege. First American Corp. v. Al-Nahyan, 2 F. Supp. 2d at 63 n.5 (magistrate judge could permissibly base determination that privilege had been waived on failure to submit privilege log). Accord: Bregman v. District of Columbia, 182 F.R.D. 352, 363 (D.D.C. 1998) ("Plaintiff's failure to comply with Fed. R. Civ. P. 26(b)(5), requiring him to file a privilege log, bars in itself any claim of privilege, whatever its basis.").

Avery Dennison Corp. v. Four Pillars, 190 F.R.D. 1, (D.D.C. 1999).  Thus, this objection must also

be overruled.

### 4.      Interrogatory No. 56

Interrogatory No. 56 asks simply for the basic information underlying Plaintiff's claims: What did Defendant do, when did she do it, how did he respond, and why does it support liability for damages?  Plaintiff's response – after his boilerplate objections – is "regarding this lawsuit, Defendant's blog caused Plaintiff harm by invading his privacy and intentionally causing emotional distress from May 2004 until obtaining his current employment."

This response does not identify the specific acts for which Plaintiff seeks to recover or identify how each act caused him harm.  His Complaint and Amended Complaint – both prime examples of shotgun pleading in violation of Fed.R.Civ.Pro. Rule 10(b) – do not help in this regard, as they ramble on at length regarding numerous incidents which would not appear to be actions for which he seeks a recovery.  For example, he alleges in his Amended Complaint that Defendant posed for photographs in Playboy.  Amended Complaint, Par. 71.  Does he claim that these photographs invaded **his** privacy?  Does he claim a proprietary interest in **Defendant's** body? Perhaps so, in light of his overweening interest in who else Defendant was dating, but Defendant is at least entitled to know if that is what he claims.

Similarly, Plaintiff makes numerous other allegations about conduct post-dating Wonkette's act in posting a link to the web log at issue, but it does not appear – or is at least unclear – that he is seeking to recover based on these subsequent acts.[5]  Defendant is certainly entitled to know which of the acts which he alleges is an act for which he seeks a recovery; the date on which that act is alleged to have occurred; and the other facts underlying his claims.  Plaintiff's objection should be overruled.

---

[5] Plaintiff makes reference to what he claims is the number of subparts in this Interrogatory.  However, in his response to the Interrogatories – either this response or any other – he did not object on the basis that Defendant had exceeded the number of Interrogatories.

### 5.     Interrogatory No. 57

Interrogatory No. 57 asks for Plaintiff to **finally** identify what he claims Defendant said about him which is false, something he has never done to date.  Some falsity is required for his false light invasion of privacy claim, but he has never identified what was purportedly false.  His response to this Interrogatory – "Defendant's discussions re: handcuffs, Chief of Staff, events concerning W and other characters in the blog, statements made by Plaintiff, and sexual encounters and statements" – says nothing while leaving everything open.

Plaintiff's sole response to the Motion to Compel a response to this Interrogatory is to raise a new objection not raised in his response to the Interrogatory.  He now claims that Defendant served too many Interrogatories, although he also says that Defendant should have served a specific Interrogatory regarding each statement in the web log, a position which is at best somewhat inconsistent.

However, irrespective of these inconsistencies, the plain fact is that Plaintiff did not assert any objection regarding purported supernumerary Interrogatories.  As a result, this objection has been waived.  United States ex rel. Fago v. M & T Mortg. Corp., 235 F.R.D. 11, 15 (D.D.C. 2006).  Since Plaintiff fails to articulate any other basis for his failure to properly respond to this Interrogatory, the Court should either Order a complete response or refuse to permit him to contradict the statements in the web log at issue.

### 6.     Interrogatories No. 58 and 59

Plaintiff has claimed that he lost jobs as a result of Defendant's conduct, further claiming that every single prospective employer raised the web log when he applied.  Docket No. 44, Ex. 3, Par. 14.  Interrogatory No. 58 seeks information regarding the positions for which Plaintiff applied, including when he applied, why he was denied the position, and the compensation he would have received had he been hired.  Interrogatory No. 59 seeks a calculation of the claimed economic

damages.[6]  In response to these Interrogatories, he did not provide any information supporting his claim to monetary injury.  His claims to economic injury should be stricken and sanctions awarded. King v. E.F. Hutton & Co., 117 F.R.D. 2, 5-6 (D.D.C. 1987).

Plaintiff's response on this issue ignores the decision cited by Defendant in the Motion. Plaintiff contends his response is appropriate because "Plaintiff was not in the process of developing this lawsuit when Defendant's tortious actions continued to cause him harm."  However, even assuming that were true, Plaintiff had five months to decide whether to "develop this lawsuit" **after** he received his present job.  See Exhibit 3, hereto.  Plaintiff has had eighteen months since he filed this lawsuit to "develop this lawsuit," including his claims for economic harm.  Apparently, at no point during that combined total of twenty-three months has Plaintiff undertaken to investigate whether the claim to economic injury was actually meritorious.  As a result, he has violated Rule 11 of the Federal Rules of Civil Procedure.  King v. E.F. Hutton & Co., 117 F.R.D. 2, 5-6 (D.D.C. 1987).

> Indeed, it is the Magistrate's view, that while an expert on stockbroker operations and investments may be necessary to refine the evidence of their losses, the plaintiffs must have had some factual basis for concluding they had sustained losses at the time the complaint was filed. Rule 11, F. R. Civ. P., requires no less. Rule 11 is designed to insure that allegations in a complaint, drafted by a member of the Bar, are supported by sufficient factual information at the time the claims are initially asserted. City of Yonkers v. Otis Elevator Company, 106 F.R.D. 524 (S.D.N.Y. 1985).

Id, at p. 5.

Rule 37 authorizes the district court to "make such orders in regard to the failure as are just," including "prohibiting that party from introducing designated matters into evidence." FED. R. CIV. P. 37(b)(2)(B), (d). The Court has discretion to impose any discovery sanction unless "clearly unreasonable, arbitrary or fanciful.' " Hull v. Eaton, 263 U.S. App. D.C. 311, 825 F.2d 448, 452

---

[6] His objection on the basis of the number of Interrogatories were, as before, not raised until the response to this Motion and are therefore waived.

(D.C. Cir. 1987) (per curiam) (quoting Northrop Corp. v. McDonnell Douglas Corp., 243 U.S. App. D.C. 19, 751 F.2d 395, 399 (D.C. Cir. 1984)).  Given Plaintiff's complete failure to identify any economic injury or any information from which such an injury might be calculated, the Court should exclude any evidence of economic harm or lost job opportunities.  Because Plaintiff's failure is without any – much less substantial – justification, attorneys' fees should also be awarded.

### 7.    Interrogatories Nos. 60 through 62

Interrogatory No. 60 through 62 seek information regarding Plaintiff's alleged damages.  In response, Plaintiff reiterated his boilerplate objections and provided no responsive information.[7]

Interrogatory No. 60 seeks an identification of the individuals from whom Plaintiff claims to have sought treatment.  This information – even if not known to Plaintiff at the time of the Interrogatory – would be readily available to him from his insurance or payment records.  From those documents, he could identify the name of the treating physician and Defendant could then seek the records of his alleged treatment.  His claim to have sought medical treatment from an unspecified "Dr." answers nothing.  Was this "Dr." an M.D. treating him for an upset stomach?  Was he a Ph.D psychologist?  Was he a lawyer – the holder of a "Juris Doctor" – or a chiropractor or a dentist?  Did this "Dr." treat him for physical pain?  For nightmares or for nausea?  For lost sleep or for lost appetite? He (or she) could be any or none of these from Plaintiff's response.

More critically, Plaintiff does not claim to have made any effort to identify this "Dr." who he claims to have seen "years ago" – to be precise, some time in the past two and a half years – or to obtain records or other information from which the response may be derived.  Responding to discovery requires some more effort at diligence.

Similarly, Interrogatory No. 61 seeks an identification of the damages he has suffered, which (in light of the response to Interrogatory No. 60), should require even greater specificity than

---

[7] His objection on the basis of the number of Interrogatories were, as before, not raised until the response to this Motion and are therefore waived.

otherwise.  His response includes vague categories of damage – invasion of his privacy, emotional distress, lost job opportunities, and loss of a friend – without any of the specificity to which Defendant is entitled.

Plaintiff claims that his prior Declaration was sufficient.  However, that Declaration provides no specificity which would permit Defendant to determine whether Plaintiff can sufficiently demonstrate the basis for his claim to have been harmed by Defendant – as opposed to, for example, the Kappel's – and merely sets forth a litany of ills without any factual basis for his claim that they relate in any way to Defendant's alleged conduct.

Plaintiff's position in this case as to the harm for which he is seeking compensation has been a moving target which Defendant is seeking to pin down.  In the April 5, 2006 hearing, his counsel described the harm in this way:

> "The real harm in this case is the injury to his reputation and profession.  He's an attorney, counsel for the judiciary, and law professor and has **and continues to suffer harm as a result.**
>
> Your Honor, I submit to you the ubiquitous nature of the Internet, each of his students now Googles his name.  Google his name.  Google "Steinbuch."  Put it in there.  See the first thing that comes up.  The first thing that comes up – see the first five entries that come up, Your Honor.
>
> He teaches legal ethics and professional responsibility.  Comments, snickering. it's not funny.  It's not funny and it's damaging.  It's horrible, absolutely horrible."

(emphasis in original unknown).  [Transcript, p. 35].  Thus, he claimed at the time that Steinbuch was suffering continuing reputational and emotional distress injury up to and including the date of that hearing.

However, just a few months later, when Defendant sought documents from the University of Arkansas regarding Plaintiff's employment at that institution, Plaintiff moved to quash the subpoena, claiming:

> Defendant's subpoena of Plaintiff's current employer at the University of Arkansas School of Law is a blatant attempt to harass, embarrass, and interfere with Plaintiff's current employment as a Law Professor after the damages that Defendant already inflicted. Plaintiff has consistently maintained that his reputation was damaged at

potential employers that did not hire him because of Defendant's actions. There is no logical nexus between this case, which involves Defendant's tortious actions on Plaintiff before he ever became a Law Professor, and Defendant's third-party discovery of Plaintiff's employer. **Plaintiff has never claimed that his reputation was hurt at his current employment.** (emphasis added).

[Docket No. 45, p. 2].

These statements, both made by counsel for Plaintiff with the utmost vehemence and seeming conviction, are entirely inconsistent. Thus, it is obvious some more complete explanation of exactly what it is that Plaintiff is claiming is required than has as yet been provided.

Finally, Interrogatory No. 62 seeks information regarding Plaintiff's medical treatment to determine if there are other sources of his claimed emotional distress; other medical conditions which may explain his upset stomach or insomnia; and to serve to his impeach his claims regarding seeking medical treatment. Defendant clearly entitled to this information, yet Plaintiff has provided none, thus completing the trifecta of compensatory damages obfuscation.

In this case, Defendant has

"expressed its intent to do what any litigant will do when confronted with a claim of emotional distress. [She] intended to collect from all of plaintiff's medical providers the records pertaining to plaintiff's treatment and make them available to the government's expert, who could then make the best informed judgment after conducting her evaluation of plaintiff.

Lebron v. Powell, 217 F.R.D. 72, 76-77 (D.D.C. 2003). Plaintiff's refusal to provide any information regarding his medical treatment should result in the same sanction imposed in Lebron. This Court should enter an Order to "preclude plaintiff from seeking compensatory damages" for the harms from which he claims to have suffered.

### 8.    Interrogatory No. 64

In response to Interrogatory No. 64, Plaintiff provided no information. He has not supplemented this response or even verified the initial non-response. Although he claims his response was misunderstood, it actually was not capable of being misunderstood, as it simply does not contain any information. "Plaintiff responds" is not actually a response.

Moreover, Defendant questions the unverified assertion that there is no information to provide. Attached as Exhibit 4 are student evaluations for Plaintiff from his employment with the University of Arkansas Law School, which Defendant did not have at the time the Motion to Compel was filed. In these evaluations, students made disparaging remarks asserting that Plaintiff was flirting with female students in class. While these allegations may have been exaggerated or overstated by the students in question – and other students had a different view of his performance – it is hard to believe that no one even counseled him regarding his behavior. Defendant is entitled to a verified response, from Plaintiff (as opposed to his counsel) which answers this question.[8]

### 9.    Interrogatory No. 65

Interrogatory No. 65 seeks information directly responsive to the claims made by Plaintiff – via the affidavit of his counsel's wife – that he is less likely to be able to get a date after the blog was published. Ms. Rosen testified as follows, in support of Plaintiff's claim to have suffered damages in this case:

> 18.    Rob's personal and social reputation was severely damaged by the intimate private facts revealed in Cutler's blog. I have met and know women who have dated Rob prior to Cutler publicizing her X-rated blog. Women would be less inclined to date or become socially involved with Rob because of Cutler's X-rated blog.

[Alyssa Rosen Declaration, Par. 18, Docket No. 44, Exhibit 2]. Plaintiff relied on this testimony in opposing Defendant's Motion to Dismiss. [Docket No. 44, Exhibit 1, pp. 4-7]. Whatever privacy interests Steinbuch claims to have with regarding to his relationships with women who he dated before his relationship with Defendant or dated or tried to date afterwards, it is clear that his submission of this testimony in support of his damages claims works as a waiver.

Defendant disagrees with Plaintiff's contention that Judge Friedman gave Plaintiff the right to decide whether or not he would permit discovery on these issues. However, whether he had that

---

[8] His objection on the basis of the number of Interrogatories were, as before, not raised until the response to this Motion and are therefore waived.

right or not, he exercised it by offering testimony regarding his dating relationships and by contending that Defendant falsely characterized his sexual proclivities and performance in the web log at issue. He cannot both introduce evidence in support of a claim and deny Defendant the opportunity to discover evidence regarding that claim. He cannot both claim that a statement is false and deny discovery to the Defendant as to whether it is false. As a result he must answer the Interrogatory and his objections should be overruled.

### 10.   Interrogatory No. 71

Plaintiff does not apparently contend that the information sought by Defendant in response to this Interrogatory is not discoverable.[9] Instead, he claims he agreed to provide in supplementation of his response. However, he had provided no supplementation as of the date of the Motion to Compel discovery – which was filed one day after the deadline set by Defendant in the September 25th letter, Exhibit A-3 to Docket No. 56 – and he has not supplemented the response to date. He has provided no basis for his failure to provide this information and his objection should be overruled.

### 11.   Request for Production No. 72

Plaintiff claims, in response to the Motion to Compel, that he has no documents relating to the information possessed by the individuals he identifies as having discoverable information. This was not his response to the Request for Production and his contention that he supplemented his response is false. No supplementation of this response has ever been received by Defendant. If Plaintiff now claims that he has no such documents in his possession or control, then Defendants asks that he be barred from later producing or relying on the contents any such documents.

---

[9] His objection on the basis of the number of Interrogatories were, as before, not raised until the response to this Motion and are therefore waived.

**12.    Interrogatory No. 75 and Request for Production No. 76**

Interrogatory No. 75 and Request No. 76 seek identification and production of documents which Plaintiff may use to support his claims.  In response to these requests, Plaintiff merely objected and asserted "work product." In response to the motion to compel, Plaintiff inexplicably claims that no privilege log is required for such documents.

This Court has held to the contrary no numerous occasions.  See, e.g., Williams v. Johanns, 235 F.R.D. 116 (D.D.C. 2006):

> Plaintiffs objection to Request No. 1, which seeks all documents relied on in answering defendants' interrogatories, on the ground that the "documents used to answer interrogatories are work product and protected as privileged" is equally frivolous. See Request No. 1; Response No. 1. First, documents used to answer interrogatories are not in themselves privileged. Only documents prepared in anticipation of litigation by a party or a party's representative are protected by the work product privilege. Fed. R. Civ. P. 26(b)(3). A document that does not meet this qualification, although used to answer the interrogatories, is not ipso facto privileged. Furthermore, to the extent that plaintiffs are asserting privilege, they must produce a privilege log that meets the demanding requirements of Rule 26(b)(5) and identifies each document withheld from production under a claim of privilege. Plaintiffs, of course, have not done so.

Id, at p. 124.  The Court in that case emphatically rejected this claim.

As to the general objection on the grounds of undue burden, a party objecting to an interrogatory on this basis must provide an explanatory affidavit setting out in detail how the interrogatory is burdensome.  Id.  Pleasants v. Allbaugh, 208 F.R.D. 7, 12 (D.D.C. 2002).  See, e.g., Alexander v. FBI, 192 F.R.D. 50, 53 (D.D.C. 2000) (Lamberth, J.) (citing Lohrenz, 187 F.R.D. at 4). Plaintiff, of course, has not done so. A complete response should be ordered produced.

**13.    Interrogatory No. 77**

The first question asked by this Interrogatory is whether Plaintiff sought to mitigate his damages in any way.  He did not answer that question.  In fact, in response to this discovery request, he gave no information at all.

In response to the Motion to Compel, he asserts that he did know how he could have mitigated his damages and then contends that one way he did seek to mitigate his damages was to

ask Defendant not to seek publicity.  If this is the only way in which he sought to mitigate his damages, then Defendant suggests that he does not understand the defense.  See Ford Motor Co. v. EEOC, 458 U.S. 219, 231, n. 15, 73 L. Ed. 2d 721, 102 S. Ct. 3057 (1982) (quoting C. McCormick, Law of Damages 127 (1935).  However, he should at least be required to provide complete information regarding any such alleged efforts.  Defendant therefore asks that he be required to respond, in full and under oath, to this Interrogatory.

### 14.    Request for Production No. 78

Defendant has sought records of Plaintiff's email communications to, from, by and/or regarding Defendant.  Plaintiff claims he has nothing in the first three categories and that it is impossible to electronically search his emails for content.  On that basis, he claims the request to obtain such records is overly broad.

The claim that emails cannot be searched electronically is simply false.  See e.g. Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003) and Brophy v. United States DOD, 2006 U.S. Dist. LEXIS 11620 (D.D.C. 2006).  Moreover, Plaintiff has failed to offer any evidence that the quantity of his email communications is so extensive that a physical review of the substance of the communications would be unduly burdensome.  As a result, he has waived any objection on that basis.  Pleasants v. Allbaugh, 208 F.R.D. 7, 12 (D.D.C. 2002).  He should be ordered to produce all emails falling with the category of the request, without objection.

### C.    Plaintiff Did Not Respond To Defendant's Motion To Preclude Evidence

Defendant asked that the Court exclude the following evidence, based on Plaintiff's failure to respond to discovery:

1.    Evidence of economic injury;

2.    Evidence of emotional distress injury;

3.    Evidence of harm to his reputation;

4.    Evidence of any claimed falsity of the matters asserted in the web log at issue;

5.    Evidence in contradiction of Defendant's assertion that he expressly informed Defendant that he did not object to the public disclosure of the details of his relationship with her;

6.    Evidence in contradiction of Defendant's assertion as to the dates and times of the web log postings at issue in this case.

Plaintiff did not respond to this aspect of Defendant's Motion.

Based on Plaintiff's response to the substantive aspects of Defendant's Motion, it is clear that he is acting in bad faith. He has repeatedly taken positions which decisions from this Court have already rejected – objections on the basis of undue burden without factual support; claiming that no privilege log is required to support a claim of privilege; asserting objections for the first time in response to Defendant's Motion – even though many of those decisions were cited by Defendant in the Motion to which he responds. He has failed to verify his discovery responses, even in the face of the pending Motion. It is appropriate, under the circumstances, to impose the sanction sought by Defendant.

Respectfully submitted this 7th day of November, 2006.

/s/ Matthew C. Billips
Matthew C. Billips
Georgia Bar No. 057110
MILLER & BILLIPS, LLC
730 Peachtree Street, Suite 750
Atlanta, GA 30308
ph: (404) 969-4101
fax: (404) 969-4141
mbillips@mbalawfirm.com

**COUNSEL FOR DEFENDANT**
**JESSICA CUTLER**

/s/ John R. Ates
John R. Ates, Esq.,

ALBO & OBLON, LLP
2200 Clarendon Blvd. Suite 1201
Arlington, VA 22201
jra@albo-oblon.com

**LOCAL COUNSEL**

-18-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT STEINBUCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-970 (PLF) (JMF) |
| | ) | Judge Paul L. Friedman |
| JESSICA CUTLER, | ) | Magistrate Judge John M. Facciola |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served a copy of "**Plaintiff's Reply Memorandum In Support of Motion to Deem Rule 36 Requests Admitted, Motion to Compel Discovery, and Alternative Motion to Preclude Evidence and Memorandum of Law In Support**" on defense counsel identified below by electronically filing a copy of same with the Clerk of Court by using the CM/ECF System which will automatically send e-mail notification of such filing to the following attorneys of record:

Jonathan Rosen, Esq.          Jonathan Rosen, Esq.
1645 Lamington Road           1200 Gulf Blvd., 1506
Bedminster, New Jersey 07921  Clearwater, Florida 33767

This 7th day of November, 2006.

                              *S/ Matthew C. Billips*
                              Matthew C. Billips
                              Georgia Bar No. 057110

MILLER & BILLIPS, P.C.
730 Peachtree Street, Suite 750
Atlanta, Georgia 30308
(404) 969-4101
(404) 969-4141 (fax)
mbillips@mbalawfirm.com