UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT STEINBUCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-970 (PLF/JMF) |
| | ) | Judge Paul L. Friedman |
| JESSICA CUTLER, | ) | Magistrate Judge John M. Facciola |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION TO COMPEL OR DEEM ADMITTED
DEFENDANT CUTLER'S RESPONSES TO
PLAINTIFF'S REQUESTS FOR ADMISSIONS,
INTERROGATORIES, AND DOCUMENT REQUESTS
AND MOTION TO STRIKE AND FOR SANCTIONS**

Federal Rule of Civil Procedure Rule 37(a)(2) and Local Rule 7(m) requires that a party

engage in a good faith effort to resolve discovery disputes prior to filing a Motion to Compel. The

D.C. Bar Voluntary Standards for Civility in Professional Conduct, at Nos. 15 and 23, require the

same efforts. This Court has previously reiterated this requirement in chastising Plaintiff for failing

to follow it. Notwithstanding the Rule and this Court's clear directive, Plaintiff has once again filed

a discovery motion with this Court without attempting to resolve or narrow the issues presented by

the motion prior to filing it. Plaintiff apparently does not intend to comply with the Rule or the

Court's April 16, 2006 Order. Such willful disobedience should have consequences.

In the same motion, Plaintiff dodged the Court's December 8, 2006 Order not to file "a single

document of discovery" without leave of Court, through the simple expedient of quoting (but not

attaching) Defendant's discovery response in the Motion. Defendant recognizes that Local Rules

26.2(d) and 30.4 require a party who is filing a motion to compel discovery to "identify and quote

each interrogatory or request in full immediately preceding the answer, response or objection

Dockets.Justia.com

thereto." The Court – based on Plaintiff's objection to Defendant filing a document with the Court – had required prior permission before filing discovery materials. Plaintiff did not seek permission to put the discovery requests and responses at issue into the public record.[1]

On the substance, Plaintiff's Motion is without basis. He relies on Rules 608(b) and 609 of the Federal Rules of Evidence to argue that alleged conduct which is neither probative of truthfulness nor the subject of a criminal conviction is relevant to impeach Ms. Cutler with respect to the accuracy of statements about her relationship with Plaintiff. Among the problems with this contention is that he has never actually identified any statements which he claims she has made which are false.

He asks the Court to deem admitted Requests for Admissions regarding vague accusations of illegal conduct, often entirely unspecified and not bounded by time, circumstance, or otherwise. He asks the Court to compel the Defendant to identify persons who are not parties to this case merely because they are mentioned on her web log. He asks the Court to compel the production of documents from Defendant in contravention of a Protective Order staying discovery in yet another lawsuit he has filed against Defendant and numerous other persons in Arkansas. In short, the discovery he seeks is abusive and irrelevant, unduly burdens rights protected under the United States Constitution, seeks government compelled disclosure of private sexual relationships, and is an effort to evade limitations imposed by a federal court whose jurisdiction has been invoked by Plaintiff.

---

[1] This issue is an example of how a true effort to "meet and confer" can resolve disputes. After a lengthy discussion between counsel the day the motion was filed, Plaintiff agreed to move (with Defendant's permission) to place the motion under seal. That motion has been granted.

## I.     PLAINTIFF DID NOT ATTEMPT TO RESOLVE OR NARROW THE DISPUTE

Notwithstanding the requirements of the Federal Rules of Civil Procedure, the Local Rules of this Court, and an Order directed specifically at Plaintiff's failure to undertake good faith efforts prior to filing discovery motions, Plaintiff once again filed a discovery motion without engaging in good faith efforts to resolve the dispute in question. The pro forma actions by Plaintiff set out herein simply do not meet the obligation to meet and confer in an effort to either resolve or to narrow the issues in dispute. Defendant requests that the Court strike Plaintiff's Motion, consistent with the Court's April 14, 2006 Order, and impose further sanctions, including stay of Defendant's obligation to further respond to Plaintiff's discovery until Plaintiff complies with the December 8, 2006 Order compelling discovery.

### A.     Facts Showing Plaintiff's Lack of Good Faith Effort

On September 18, 2006, counsel for Plaintiff emailed the undersigned regarding production of documents, but without identifying any particular discovery request or response as to which he claimed more should have been produced or where the response was improper. In response, the undersigned sent him an email stating, in relevant part:

> Second, which documents do you contend she should have and with respect to which discovery requests are you asserting an intention to move to compel? I agree that there are a great many requests that seem to have nothing do with this lawsuit and which seek documents solely relating to the claims in Arkansas, which you are now barred from seeking. I also believe that, in making your requests, you were either under the belief (or at least testing the theory) that, prior to May 18, 2004, Ms. Cutler was negotiating or had entered into one or more contracts to write a novel or publicize her life or otherwise make money from the publicity that her life has received. If that is your theory, please understand that it is based on an entirely false premise. Nothing of the kind had occurred. If you want to send an interrogatory on that subject, you will get the same answer. If you want her deposition, let's talk about a time. However, moving to compel documents which do not exist and have never existed would be silly and waste everyone's time.

* * *

> Please give me a call and let's talk over whatever discovery disputes you believe we have and see if we can resolve them.

Although there was a subsequent telephone discussion, the only issue which Plaintiff was interested in addressing regarding Defendant's discovery responses was the identity of the other men in the web log. Plaintiff made no further effort to identify which documents he claimed should be produced.

On December 8, 2006, shortly before the Court entered its Order compelling discovery from Plaintiff, Plaintiff emailed the undersigned as follows:

> Matt:
>
> We are going to move the Court to deem admitted the following responses to Plaintiff's First Request for Admissions because defendant Cutler has declined to respond under the Fifth Amendment of the United States Constitution: 8, 34, 35, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99 100, and 101.
>
> We are going to move the court to deem admitted all other responses to Plaintiff's First Request for Admissions for failure to comply with the Fed.R.Civ.P. regarding your lack of responsiveness to the request for admissions, except for the following: 1, 2, 3, 4, 5, 6, 11, 13, 16, 18, 20, 21, 22, 28, 31, 44, 47, 48, 50, 52, 56, 57, 83, 84, and 85.
>
> Let me know if you consent.
>
> Jonathan Rosen
> 908.759.1116

Within the hour, the undersigned responded, in relevant part:

> As regards your email, please tell me how you believe that the Requests for Admission you have identified in the first set are proper discovery or that our objections in addition to and including the Fifth Amendment privilege are improper.
>
> With regard to the second "everything except" set, please identify for me the particular bases upon which you claim that these responses were nonresponsive or were otherwise improper.

-4-

> After I receive this additional information, I would be available to discuss the issues with you further.

Three days later, on December 11, 2006, Plaintiff responded as follows, in relevant part:

> Regarding you (sic) responses to the requests to admit, you have failed to admit or deny requests regarding the contents of the blog. You may not respond it the fashion on which you did. Regarding the Fifth Amendment claims, you are entitled to raise that protection. But, as you know, for the purposes of a civil trial, they will be deemed admitted.

Forty minutes later, the undersigned again asked Plaintiff for the basis upon which he claimed that the discovery responses were improper:

> 3.     You still have not answered my question as to how you believe that the Requests for Admission you have identified where the Fifth Amendment was asserted are proper discovery or that our objections in addition to and including the Fifth Amendment privilege are improper. I believe that the Court will find them to be overly broad and unrelated to any proper discovery in this case.
>
> With regard to the Requests you identified earlier as everything "except for the following: 1, 2, 3, 4, 5, 6, 11, 13, 16, 18, 20, 21, 22, 28, 31, 44, 47, 48, 50, 52, 56, 57, 83, 84, and 85", please identify for me the particular bases upon which you claim that these responses were nonresponsive or were otherwise improper. For example, Request No. 7 has nothing to do with the contents of the blog, yet it is included in the set you said you intend to move to have deemed admitted. Please, therefore, would you be more specific about what you claim is improper about our responses?

Plaintiff did not respond at all regarding Defendant's discovery responses.

Instead of attempting to address this dispute, Plaintiff sought a conference call with the Court to attempt to block Plaintiff's deposition, which had been set for January 22, 2006. That conference call occurred on December 13, 2006 and Plaintiff's request was denied. During that call, the Court reiterated that it was available to assist in resolving discovery disputes via such informal means. Plaintiff did avail himself of this opportunity regarding the present dispute.

Having heard nothing further from Plaintiff regarding any dispute over the Requests for Admissions, on December 14, 2006, Defendant's local counsel also sought to engage Plaintiff in a dialogue about the discovery requests at issue.  He first telephoned Mr. Rosen, leaving a message, and then emailed him as follows:

> Mr. Rosen,
>
> If you have any concerns or questions regarding Defendant's responses to discovery, in addition to calling Matt, you may call me to discuss them by phone.  After reading your and Matt's most recent exchanges, I still am at a loss as to what Plaintiff's contentions are as to how or why Defendant's responses are deficient.  Please call me to enlighten me.
>
> Best,
>
> John R. Ates

He did not receive a response to his email.

On December 15, 2006, Mr. Ates telephoned Mr. Rosen to attempt to resolve a dispute concerning a subpoena served by Defendant which seeking documents relating to the <u>Kappel</u> litigation.  After unsuccessfully attempting resolution of those issues, Mr. Ates asked Mr. Rosen if he would prefer to speak with him – as opposed to the undersigned – regarding the specific discovery requests where Plaintiff believed Defendant's response were inadequate.  He informed Mr. Rosen that he did not have the specific discovery responses in front of him and would need an opportunity to review them again before having a substantive discussion about resolving or narrowing the disputes, but that he would do so and get back to him.  That same afternoon, Mr. Rosen telephoned Mr. Ates (who was on a conference call) and left a brief voice mail message stating merely that the motion was being filed.  Ten to fifteen minutes later, Plaintiff filed the motion now at issue, without engaging in a good faith effort to resolve or narrow the dispute over these discovery requests and

without having discussed or even identified the particular requests for admissions or document requests at issue in the present motion.

**B.      Plaintiff Has Failed To Comply With Local Rule 7(m)**

Plaintiff has failed to comply with either the letter or spirit of Local Civil Rule 7(m).  He has failed to engage in a good faith effort to resolve the dispute at issue in this Motion.  Naturally, having failed to engage in such efforts, he has failed to certify that he did so.  His actions require that the Motion be denied.  Defendant further requests that he be sanctioned for his noncompliance and his subsequent failure to withdraw the motion in question.

**1.      The obligation to meet and confer requires real, good faith effort**

Local Civil Rule 7(m) provides:

(m) DUTY TO CONFER ON NONDISPOSITIVE MOTIONS.

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement. The duty to confer also applies to non-incarcerated parties appearing pro se. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

The Court has previously cautioned Plaintiff regarding his refusal to follow the dictates of Local Rule 7(m), in the Order of April 14, 2006.  As the Court stated at that time:

> Plaintiff's counsel, however, while arguing that defendant's counsel has violated various Federal Rules of Civil Procedure and Local Civil Rules, has himself failed to follow these rules. Specifically, plaintiff's consent motion for an extension of time is single-spaced, in violation of Local Civil Rule 5.1(f), and he does not appear to have consulted opposing counsel prior to filing either the motion to quash or the motion for a protective order, in violation of Local Civil Rule 7(m).

As a result, the Court struck the motions in question – at Docket Nos. 20 and 21 – from the record.

-7-

The obligation to meet and confer in good faith to resolve or narrow disputes is not met by such pro forma efforts. It requires an actual good faith effort either to resolve disputes in their entirety or to narrow them to the extent possible. This process must, at the very least, require counsel to set out the arguments in support of his position and give the opposing party an opportunity to agree, disagree, or offer a compromise position. Plaintiff's approach demonstrates a fundamental misapprehension of the purpose of the rule.

> The court notes that plaintiffs' counsel have apparently misread (or never read) Local Rule 108(m). That rule unambiguously states that the movant "shall discuss the anticipated motion with opposing counsel . . . in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement." Local Rule 108(m). The rule does not provide any exception that turns on whether opposing counsel was temporarily out of the office when it so happens that plaintiffs wish to file their motion. Moreover, Local Rule 108(m) would be meaningless if a party could, as plaintiffs' counsel argue, file any nondispositive motion they chose without meeting and conferring, and later argue that a Local Rule 108(m) argument is moot simply because the motion is later opposed. The entire purpose of the meet-and-confer rule is to force litigants to attempt to resolve, or a least narrow, the disputed issues to prevent the unnecessary waste of time and effort on any given motion. The purpose of the rule is not to simply determine whether the motion will be opposed.

> In short, the court notes that leaving a vague message late on a Friday afternoon with opposing counsel and filing the motion less than two hours later--without ever meeting and conferring, and without any legitimate reason for expediency--does not meet the requirements of Local Rule 108(m). The court has been forced to remind plaintiffs counsel about Local Rule 108(m) compliance at least three times before in this lawsuit. <u>Alexander v. FBI</u>, 186 F.R.D. 99, Memorandum and Order (D.D.C. July 27, 1998) (Plaintiffs' Motion to Further Modify February 13, 1998 Protective Order); <u>Alexander v. FBI</u>, 186 F.R.D. 185, Civ. No. 96-2123, Memorandum and Order (D.D.C. Mar. 31, 1999) (Plaintiffs' Motion to Compel Further Testimony of Larry Potts and to Impose Sanctions); <u>Alexander v. FBI</u>, Civ. No. 96-2123, Memorandum Order (D.D.C. Apr. 16, 1999) (Plaintiffs' Motion to Stay Upcoming Deposition of Steven Waudby and Notice). Plaintiffs counsel should take great care to ensure that Local Rule 108(m) does not become an issue again. There can be no substantial justification for filing a nondispositive motion in the manner described in this opinion or in any other way that clearly violates the local rules of this court. Nonetheless, because plaintiffs have withdrawn their motion before the court could

rule upon it, the court has no occasion to address the appropriate consequences for filing such a motion.

See Alexander v. FBI, 186 F.R.D. 197 (D.D.C. 1999). The failure to comply with Local Civil Rule 7(m) requires denial of the motion and may result in sanctions. Alexander v. FBI, 186 F.R.D. 185 (D.D.C. 1999).

Plaintiff's certification of compliance with Local Civil Rule 7(m) is also inadequate, as it must be given the lack of good faith efforts to resolve or narrow the dispute. In his memorandum, Plaintiff merely states that:

> Counsel for Defendant Cutler has been consulted and has not consented to this motion.

This is merely an inadequate certification of an inadequate effort to resolve the dispute. He fails to indicate that he engaged in either an in person or telephone discussion regarding the motion in an effort to actually seek to resolve or at least narrow the disputes before filing the motion. Moreover, the record affirmatively demonstrates that no such efforts occurred.

This same issue was addressed in Ellipso, Inc. v. Mann, 2006 U.S. Dist. LEXIS 79827 (D.D.C. 2006), in which the Court addressed a similarly inadequate certification:

> As an initial matter, the Court has before it several outstanding discovery motions: Ellipso's Motion [73] to Compel Discovery Against Defendant Robert Patterson, Ellipso's Emergency Motion [74] for Protective Order and to Compel Discovery, and Mann and Mann Tech's Motion [79] to Compel Discovery Responses to the Second Request for Production of Documents Against Plaintiff Ellipso. Each motion contains a short "Certificate of Good Faith," which in each case amounts to a statement by the filing party that "I attempted to secure the discovery responses." See Motion [73] to Compel Discovery ("I attempted to secure the discovery responses from Defendant Patterson"); Emergency Motion [74] for Protective Order and to Compel Discovery ("I attempted to secure the discovery responses from Defendants, who do not consent"); Motion [79] to Compel Discovery ("I attempted to secure the discovery Responses").

> This appears to be an attempt to comply with Local Civil Rule 7(m), which requires that "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement." LCvR 7(m). The purpose of the Local Rule is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court. United States ex rel. Pogue v. Diabetes Treatment Centers of America, 235 F.R.D. 521, 529 (D.D.C. June 2, 2006). The Local Rule requires that the parties "try[] in good faith to achieve its objectives," which means they must take "real steps to confer." United States ex rel. K&R Limited Partnership v. Massachusetts Housing Fin. Agency, 2006 U.S. Dist. LEXIS 73536, 99-cv-1343 (RCL) (D.D.C. Oct. 11, 2006) at *13-14. If a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied. Alexander v. FBI, 186 F.R.D. 185, 187 (D.D.C. 1999).
>
> Each of the discovery motions in this case is denied for failure to comply with Local Rule 7(m). The "Certificate of Good Faith" executed by counsel on each side merely certifies that there is a discovery dispute and that both sides know about it. The Rule requires, however, at the absolute minimum, that counsel "discuss the anticipated motion" and that they do so "in person or by telephone."

As a result, the Court denied the Motion. The same result should follow here.

Such efforts would not have been a vain exercise. There are numerous ways that the issues presented by Plaintiff could, at the very least, have been narrowed. For example, he has asked the Court to deem admitted Requests Nos. 37, 39-41, 43, 45-56. Plaintiff claims that these requests asked Defendant to admit or deny the contents of the web log, but they are actually either argumentative characterizations of the web log or improper combinations of various excerpts from the web log, written as if they were a single statement. Defendant properly objected to these requests on the basis that they were argumentative paraphrases and excerpts which did not fairly or accurately present Defendant's statements or sufficiently capture their context. Defendant offered in the response to stipulate to the authenticity of a true and accurate copy of the web log.

Had Plaintiff followed up on this offer, any legitimate purpose of these Requests for Admission would have been served and, thus, the issues would have (at least) been narrowed. He did not. He refused to discuss how this response was inappropriate or why he is entitled to force Defendant to admit to his improper characterization and excerpting, instead of asking Defendant to agree to actual web log itself. This is merely one example, as a practical matter, of how his failure to meet and confer with respect to this motion has wasted the resources of the parties and the Court.

### 2. The failure to comply with Local Civil Rule 7(m) requires that the motion be denied

Under Local Civil Rule 7(m), a failure to engage in a good faith effort to resolve or narrow issues prior to filing a nondispositive motion requires that the motion be denied. Id., citing Alexander v. FBI, 186 F.R.D. 185, 187 (D.D.C. 1999). The failure to engage in such efforts before filing the motion is not excused by the opposing party's subsequent opposition to the motion. Alexander v. FBI, 186 F.R.D. 197 (D.D.C. 1999).

This is not a case where the non-movant has avoided engaging in the discussion required by Local Civil Rule 7(m). As the Court can see from the above, it is actually Defendant who undertook efforts to try and have such a discussion with Plaintiff. It was Plaintiff, as movant, upon whom the obligation rests, yet it was Plaintiff who rebuffed Defendant's efforts to persuade him to discuss this dispute before a motion was filed.

### 3. Sanctions should be imposed

As soon as the Motion at issue was filed, counsel for Defendant contacted Mr. Rosen by telephone regarding his act in filing the Motion in violation of Local Civil Rule 7(m) and his evasion of the Court's directive regarding filing discovery materials. Counsel engaged in a lengthy telephone

discussion with Mr. Rosen regarding the purpose of the obligation to meet and confer and his failure to comply with that obligation. Counsel for Defendant pointed out that he had not, prior to filing the motion, indicated any intent to file a motion to compel a response to the requests for production of documents. Counsel for Defendant discussed with him the purpose of the Rule – either to persuade an opposing party that its position was incorrect in whole or in part or to attempt to reach a compromise as to all or portions of the dispute – and asked him to withdraw the Motion in question until such a discussion could occur. He refused.

As the basis for refusing to withdraw the Motion, Mr. Rosen claimed that Defendant was aware of the nature of the discovery dispute and Plaintiff's arguments because they were set out in a reply brief in support of Plaintiff's Motion to Compel filed at Docket No. 47. Counsel for Defendant pointed out that no such Reply was ever filed nor served on Defendant and that counsel for Defendant had never seen the brief to which he referred. Mr. Rosen, upon reflection and some after further discussion, acknowledged that this was true. Counsel for Defendant asked him again to withdraw the Motion pending an effort to resolve or narrow the dispute and he again refused. [Ates Declaration, Exhibit 2]. He could offer no justification for his failure to do so other than those rejected in Alexander v. FBI, 186 F.R.D. 197 (D.D.C. 1999).

Plaintiff's failure to comply with Local Civil Rule 7(m) is not an innocent or one time occurrence. He has been sanctioned previously in this case for the failure to comply with the Rule, when his Motions at Docket Nos. 21 and 22 were stricken. Docket No. 23, p. 2. He was specifically directed in that same Order to comply with the Rule in the future. He was reminded of this obligation when Defendant filed her response to his request that the Court revoke Defendant's

counsel's pro hac admission on December 4, 2006. Docket No. 63, p. 1-2. He has chosen to ignore the Rule but, thus far, has suffered no consequence for his decision.

Defendant asks the Court to impose some consequence on Plaintiff for his deliberate refusal to comply with this obligation. Defendant requests, first, that the Motion to Compel be stricken. Although the denial of a motion to compel on this basis would ordinarily be without prejudice, Defendant asks that Plaintiff's Motion be denied with prejudice. Defendant asks that he be further barred from seeking discovery from Defendant until he fully and completely complies with his own discovery obligations as set out in the Court's December 8, 2006 Order.

A stay is appropriate here because it appears that Plaintiff's refusal to engage in a good faith effort to resolve this dispute is part of a plan to engage in expedited and one-sided discovery, to require Defendant to respond to discovery while he ignores his own obligation to produce information and documents which this Court has Ordered him to produce. Defendant does not lightly make this claim, but believes it to be supported by the following facts.

In opposing Defendant's motion to extend discovery and during the November 28, 2006 status conference, Plaintiff informed the Court that no additional discovery would be sought from Defendant other than what the Court might Order in the his pending Motion to Compel and, possibly, the Defendant's deposition. However, on November 28, 2006, he served twenty-seven additional document requests on Defendant. Between the week the Order was entered and the filing of the present Motion, Plaintiff appears to have focused his time and efforts on the present Motion to Compel – which is largely unrelated to the discovery at issue in his prior unsuccessful motion – and on his efforts to avoid being deposed. On December 28, he emailed Defendant 45 additional

Request for Admission.  However, Plaintiff has failed to comply with the Court's Order compelling discovery and has failed to supplement his discovery requests at all.

Plaintiff has also claimed that the Amended Complaint – and the need for a "coordinated" deposition of Mr. Steinbuch – should delay his deposition.  However, he has yet to serve Defendant Cox and his claims about his efforts to do so are contrary to the record.  He claimed on November 28, 2006 that he was "in the process" of serving Ms. Cox with the Amended Complaint.  He informed the Court in the conference call on December 13, 2006 (in which he asked to delay Mr. Steinbuch's deposition until after Ms. Cox's entry in the case) that Ms. Cox could not be located and was evading service.  On December 15, 2006, he informed Mr. Ates that the Amended Complaint was in the hands of the process server.  However, as the docket demonstrates, the summons for Ms. Cox had not even been issued until December 20, 2006.  See December 20, 2006 Docket entry.  On information and belief, Ms. Cox has still not been served with the Amended Complaint.

The Court has the power to stay Defendant's discovery obligations pending Plaintiff's compliance with the Court's prior Order:

> Under Federal Rule of Civil Procedure 37, a court may sanction a party that fails to comply with a discovery order. Fed. R. Civ. P. 37(b)(2). The Federal Rules authorize a wide array of sanctions, including staying the proceedings pending compliance with a court order . . . . See id. The court also has the authority to award reasonable expenses, including attorney's fees, caused by the failure to obey a court order "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Id.

Caldwell v. Ctr. for Correctional Health and Policy Studies, Inc., 228 F.R.D. 40, 42 (D.D.C. 2005) (citing Peterson v. Hantman, 227 F.R.D. 13, 16 (D.D.C. 2005)).  Because it appears that Plaintiff is making a conscious and deliberate effort to avoid responding to his own discovery obligations –

while at the same time attempting to impose additional burdens on Defendant – such a stay is appropriate.

## II.    PLAINTIFF'S MOTION IS WITHOUT MERIT

Plaintiff's Motion is substantively without merit.  He seeks to compel admissions to "facts" which could not conceivably be relevant or admissible.  He asks the Court to compel Defendant to agree to his argumentative characterizations of the web log, instead of simply stipulating to the authenticity of a true and accurate copy.  He asks for a Court Ordered identification of the other men with whom Ms. Cutler had relationships, while inconsistently claiming that Ms. Cutler was legally obliged to conceal her relationship with him. He asks the Court to give him an end run around a Court Ordered stay of discovery in a separate case – which he also filed and in which he opposed the stay – now pending in Arkansas.  Finally, he seeks income and tax information from Ms. Cutler which has no bearing on his claims or his alleged (and as yet unidentified) damages and which is confidential under federal law.  His Motion should be denied.

### A.    Requests for Admission Nos. 8, 35, and 87 through 96

Plaintiff argues that his Requests for Admission 8, 35, and 87 through 96 – which relate to Plaintiff's claim that Defendant is promiscuous, uses drugs, and engaged in acts of prostitution – on the sole basis that the responses would be proper impeachment under Rules 608(b) and Rule 609 of the Federal Rules of Evidence.  Plaintiff ignores the requirements of both Rules and Defendant's constitutional right to avoid self-incrimination.

1.      **The Requests do not seek the admission of facts which would constitute proper impeachment**

Plaintiff claims that the discovery requests in question constitute proper impeachment evidence under Rule 608(b) and Rule 609.  An initial problem with this argument is that he has – as of yet – failed to identify anything which Ms. Cutler has said or claims in this case which he claims is false.  Obviously, he cannot seek to impeach Ms. Cutler unless she has made a false statement regarding a fact material to this case.  <u>Fountaine v. Washington R. & E. Co.</u>, 42 App. D.C. 295 (D.C. Cir. 1914).  Even assuming that he will eventually identify something material to his claims which he does claim is false, his Requests do not constitute proper impeachment.

a.      **Rule 608(b) limits inquiry into specific instances of conduct**

Plaintiff's basis for relying on Rule 608(b) is his broad statement that "most criminal activity bears on credibility, and is therefore admissible."  The Advisory Committee Notes to Rule 608(b) state that this is exactly the type of argument that Rule 608(b) forbids:

> (2) Particular instances of conduct, though not the subject of criminal conviction, may be inquired into on cross-examination of the principal witness himself or of a witness who testifies concerning his character for truthfulness. Effective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial. **Consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time. Also, the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury, and that of Rule 611 bars harassment and undue embarrassment. (emphasis added).**

Plaintiff's claimed "facts" would not be admissible for purposes of impeachment in that they are not probative or truthfulness or untruthfulness and are remote in time, covering the Defendant's entire

-16-

life.  The facts Plaintiff asks to be admitted – drug use, prostitution, unspecified "illegal activity" and "crimes" – do not come close to meeting these requirements.

The case law interpreting Rule 608(b) demonstrates that the facts he seeks to admit are not proper impeachment evidence. See United States v. Sellers, 906 F.2d 597, 602 (11th Cir. 1990) (victim's admission of use of cocaine and marijuana in past not admissible because prior instances of drug use are not relevant to truthfulness); United States v. Williams, 822 F.2d 512, 516-517 (5th Cir. 1987) (cross-examination concerning whether government witness ever sold drugs to anyone was not probative of his truthfulness); United States v. Smith, 831 F.2d 657, 661 (6th Cir. 1987) (whether witness dressed as prostitute or engaged in prostitution during period when she was associating with defendants has little relevance to credibility as witness); United States v. McNeill, 887 F.2d 448, 453 (3d Cir. 1989) (prior solicitations not probative of truthfulness or untruthfulness); United States v. Whitworth, 856 F.2d 1268, 1284 (9th Cir. 1988) (prostitution not relevant to untruthfulness); United States v. Bynum, 566 F.2d 914, 923 (5th Cir. 1978) (holding his foster children against their will to work at his racetrack not probative of witness's truthfulness); United States v. Devery, 935 F. Supp. 393, 407-408 (S.D.N.Y. 1996) , aff'd on other grounds, 128 F.3d 38 (2d Cir. 1997) (cross-examination concerning immoral acts and acts of sexual perversion may be properly excluded by trial judge who determines they are not probative of witness's veracity; loathsomeness of prior misconduct does not necessarily bear on perpetrator's capacity for truth-telling); United States v. Rabinowitz, 578 F.2d 910, 912 (2d Cir. 1978) (evidence of witness's prior acts of sodomy on young children and consequent psychiatric treatment had too tenuous a bearing on credibility).

Plaintiff cites United States v. Jensen, 41 F.3d 946 (5th Cir. 1994) for the proposition that "most criminal activity bears on credibility, and is therefore admissible." However, the Jensen Court affirmatively rejected the claim that Rule 608(b) permits such evidence. Id, 41 F.3d at 957-958.

Plaintiff cites Varhol v. Nat'l R. Pass. Corp., 909 F.2d 1557, 1566-67 (7th Cir. 1990) (cross-examination regarding theft a close question under Rule 608); United States v. Studley, 892 F.2d 518, 529-530 (7th Cir. 1989) (cross-examination regarding defendant's renunciation of the laws of the United States, even if error, was harmless); and United States v. Smith, 80 F.3d 1188, 1193 (7th Cir. 1996) (Prior acts of theft or receipt of stolen property are, like acts of fraud or deceit, probative of a witness's truthfulness or untruthfulness under Rule 608(b), citing Varhol). He does not, however, mention United States v. DeGeratto, 876 F.2d 576 (7th Cir. 1989), which rejected involvement in prostitution as a basis for impeachment under Rule 608(b).

He cites United States v. Girdner, 773 F.2d 257, 260-61 (10th Cir. 1985) (ballot fraud and false testimony about ballot fraud admissible under Rule 608(b)), but ignores United States v. McHorse, 179 F.3d 889, 901 (10th Cir. 1999) (barring evidence that a witness had molested his daughter and half-sister).

Plaintiff relies on Navarro v. Pavia, 922 F.2d 926, 932-33 (1st Cir. 1991), but ignores the fact that Navarro was a prosecution for drug possession; the defendant took the stand and denied knowledge of how cocaine got into his suitcase; the defendant then denied even using drugs; and the defendant was impeached by cross-examination regarding additional drugs found in his suitcase the day of his arrest. In this case, Plaintiff has not even identified any statement by Ms. Cutler which he claims is false nor has he shown how his claims in any way relate to allegations of drug use, prostitution, or any illegal acts or crimes. Navarro itself cautions that, under Rule 608(b), "'the

possibilities of abuse are substantial.' Advisory Committee Notes to Fed. R. Evid. 608(b), Subdivision (b)(2)." and that the "specific instances of conduct inquired into must be clearly probative of truthfulness or its opposite and must not be remote in time. Id."

Plaintiff also cites United States v. O'Malley, 707 F.2d 1240, 1249 (11th Cir. 1983), ignoring the Court's very limited holding and much more analogous authority from the Eleventh Circuit contrary to his position.  In O'Malley, the defendant was on trial for mail fraud and Hobbs Act violations.  With regard to the Rule 608(b) issue, the Court gave this description:

> On direct examination, O'Malley was asked about his knowledge of laws regarding contributions made to public officials and, specifically, whether he reported all contributions made to his trust fund pursuant to those laws. Direct examination was limited to whether O'Malley reported these contributions to his trust fund. Normally, cross-examination as to whether O'Malley reported cash contributions not made to the trust fund would be beyond the subject matter of direct examination.

The Court upheld the cross-examination solely because:

> During direct testimony, O'Malley acknowledged his familiarity with the reporting laws. O'Malley's direct testimony was intended to establish his knowledge of the reporting laws of Florida and his compliance with those laws. Cross-examination, therefore, as to O'Malley's failure to report cash contributions was related to the matter of O'Malley's credibility as a witness and was proper impeachment pursuant to rule 611(b).

Within the Eleventh Circuit, it is clear that the "facts" which Plaintiff seeks to have admitted are irrelevant to any matter at issue in this case.  As the Court held in United States v. Sellers, 906 F.2d 597, 602 (11th Cir. 1990):

> Because of the extreme potential for unfair prejudice flowing from evidence of drug use, this Court has held that such evidence may properly be limited to "specific instances of drug use [during] relevant periods of trial and the transaction charged in the indictment." United States v. Holman, 680 F.2d 1340, 1353 (11th Cir. 1982); accord Jarrett v. United States, 822 F.2d 1438, 1446 (7th Cir. 1987) ("A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial.").

-19-

> Furthermore, prior instances of drug use are not relevant to truthfulness for purposes of Fed.R.Evid. 608(b). See <u>United States v. Rubin</u>, 733 F.2d 837, 841-42 (11th Cir. 1984).

Thus, <u>O'Malley</u> does not support his motion nor stand for the proposition for which it is cited.

Defendant cites <u>Barnard v. Wabash</u>, 208 F.2d 489, 497 (8th Cir. 1953), which predates the 1975 enactment of the Federal Rules of Evidence by more than twenty years, but fail to mention <u>United States v. Dennis</u>, 625 F.2d 782, 798 (8th Cir. Mo. 1980), in which the Eighth Circuit held:

> Rule 608(b) would permit inquiry into the specific acts that may have led to the arrest if those acts related to crimen falsi, e.g., perjury, subornation of perjury, false statement, embezzlement, false pretenses. <u>United States v. Kirk</u>, 496 F.2d 947 (8th Cir. 1974). The trial court did not err in precluding evidence of the arrest for tax problems, because civil tax problems cannot be regarded as indicating a lack of truthfulness under this standard.

Thus, <u>Barnard</u> fails to provide any support for his motion.

Finally, Plaintiff fails to even mention the controlling authority in this Circuit. Under Rule 608(b), at a minimum, the conduct must be probative of the witness's character for truthfulness. <u>United States v. Whitmore</u>, 360 U.S. App. D.C. 257, 359 F.3d 609, 618 (D. C. Cir. 2004). Neither the alleged acts of promiscuity, drug use, or prostitution nor any of the other "illegal acts" or "crimes" upon which he relies implicate Defendant's character for truthfulness or untruthfulness and, therefore, Rule 608(b) provides no basis for their admission.

### b.    Rule 609 does not even apply

Plaintiff's reliance on Rule 609 is a complete mystery.  Rule 609 relates to impeachment by virtue of conviction of a crime and provides limitations and restrictions on impeachment by use of such evidence.  However, none of the Requests for Admission at issue even ask Plaintiff to admit that she has been convicted of any crime.  None of them ask her even to admit that she has been

**charged** with a crime.  Rule 609 does not permit impeachment based on commission of acts constituting a crime which have not been the subject of a conviction.  <u>United States v. Simpson</u>, 337 F.3d 905, 908 (7th Cir. Ill. 2003) ("The short answer to this argument is that Rule 609(a) applies only to prior *convictions*, and Wise was never convicted on the charges in[[question.]]") (emphasis in original.

Plaintiff argues that the Court should deem the requests admitted because the effect of a compelled admission to conduct constituting a crime is likely to lead to discovery of a conviction for a crime.  This argument is, to put it mildly, absurd.  Plaintiff offers no suggestion that Defendant has ever been convicted of any crime.  He does not explain how either a freely offered or judicially determined admission that – at some unspecified date, time, or place – some bad act was done would help him in discovering the existence of a conviction for that unspecified act.  His argument simply does not pass the straight face test.

2. **The absence of probative value of the Requests must be weighed against the burden on Constitutional rights**

Defendant does not contend that it would be burdensome to respond to Plaintiff's Request in the sense that stating "Admit" or "Denied" would take up an undue amount of time or effort.  The burden in this case is more fundamental, in implicating the Defendant's right to avoid self-incrimination under the Fifth Amendment.

This Circuit, in <u>Black Panther Party v. Smith</u>, 661 F.2d 1243, 1266, 1271-1272 (D.C. Cir. 1981), adopted a balancing test in considering these interests, weighing the plaintiff's Fifth Amendment privilege against the defendant's right to the information. Factors to be considered included the importance of the information and whether alternative, non privileged sources had been

exhausted. Id. at 1268. Although Black Panther was ultimately vacated by the Supreme Court on

mootness grounds, Moore v. Black Panther Party, 458 U.S. 1118, 73 L. Ed. 2d 1381, 102 S. Ct. 3505

(1982), it is still persuasive authority on these issues.  Wainwright v. Washington Metro. Area

Transit Auth., 903 F. Supp. 133, 163 F.R.D. 391 (D.D.C. 1995). Under this balancing test,

> "The interest in disclosure will be relatively weak unless the information goes to "the
> heart of the matter," that is, unless it is crucial to the party's case. See Zerilli v. Smith,
> supra, 656 F.2d at 713; National Right to Work, supra, 590 F.2d at 1153; Carey v.
> Hume, supra, 492 F.2d at 636. Mere speculation that information might be useful will
> not suffice; litigants seeking to compel discovery must describe the information they
> hope to obtain and its importance to their case with a reasonable degree of specificity.
> See Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972). Second, courts must
> determine whether the litigants seeking disclosure have pursued alternative sources.
> Even when the information sought is crucial to a litigant's case, disclosure should be
> compelled only after the litigant has shown that he has exhausted every reasonable
> alternative source of information. National Right to Work, supra, 590 F.2d at 1153.

Applying the Black Panther factors to this dispute, the balance of the burden on the Fifth

Amendment rights in question versus the utility of the information sought strongly favors Defendant.

Plaintiff has sought admissions regarding alleged conduct which, as shown above, are simply not

admissible for any purpose, including impeachment.  Even were the Court to deem the Requests

admitted, Plaintiff would have gained nothing, as the responses would not constitute admissible

evidence.  Thus, the "the importance of the information" cuts strongly against the Plaintiff.

Balanced against this is the fact that Plaintiff's sole effort at discovery of this information has

been to directly seek admissions of conduct which he claims is relevant solely because it constitutes

criminal misconduct.  As can be seen from the Requests for Admission and Plaintiff's Motion, the

requests are claimed to seek relevant information only because and to the extent they seek to elicit

admissions or denials of criminal conduct.  Obviously, if Defendant denied having engaged in the

acts in question, Plaintiff would argue that her failure to assert her rights under the Fifth Amendment

constitutes a waiver of her right to do so.  Brown v. Walker, 161 U.S. 591, 597, 40 L. Ed. 819, 16 S. Ct. 644 (1896); Maness v. Meyers, 419 U.S. 449, 466, 42 L. Ed. 2d 574, 95 S. Ct. 584 (1975). "If the witness himself elects to waive his privilege ... and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure." Brown v. Walker, 161 U.S. at 597; see Rogers v. U.S., 340 U.S. 367, 372-73, 95 L. Ed. 344, 71 S. Ct. 438 (1951).  Thus, by either admitting or denying these broadly worded Requests, Defendant runs the risk of waiving the privilege regarding any matter within their ambit.  As the Court can readily see from Plaintiff's Requests, that would be a waiver without limit.

Moreover, if Defendant responded and Plaintiff believed that she had answered falsely, he would argue that her responses – whether inculpatory or exculpatory – would subject her to impeachment, as the Fifth Amendment privilege would not "confer[] a privilege to lie." Brogan v. United States, 522 U.S. 398, 404-405, 118 S. Ct. 805, 810 (1997).  Thus, when confronted with questions intended to elicit incriminating information or exculpatory denials, Defendant was required to either stand mute and assert the privilege or respond and, by responding, waive it.

He has done nothing to exhaust – or, for that matter, even explore – whether there are other sources of information from which he may obtain evidence regarding these matters.  Although he has been ordered by this Court to identify statements in the web log which he claims are false, he has failed to do so as of the date of this Response.  In short, he has made none of the efforts which this Circuit has said are required prior to attempting to impose a burden on the right to avoid self-incrimination.

As a result, the Court is left balancing the right to avoid self-incrimination against what is virtually nothing at all.  In such a case, the scales must tip in favor of the Constitutional right.

-23-

**B.     Requests for Admission Nos. 97 through 102, First Interrogatories No. 3, and First Requests for Documents No. 5**

Requests for Admission Nos. 97 through 102, First Interrogatories No. 3, and First Requests for Production No. 5 are said to relate to discovery regarding compliance with income tax obligations.[2] For the reasons stated above, neither Rules 608(b) nor 609 provide any basis for admission of such information.

As was stated in United States v. Dennis, 625 F.2d 782, 798 (8th Cir. Mo. 1980):

> Rule 608(b) would permit inquiry into the specific acts that may have led to the arrest if those acts related to crimen falsi, e.g., perjury, subornation of perjury, false statement, embezzlement, false pretenses. United States v. Kirk, 496 F.2d 947 (8th Cir. 1974). The trial court did not err in precluding evidence of the arrest for tax problems, because civil tax problems cannot be regarded as indicating a lack of truthfulness under this standard.

See United States v. Escobar, 50 F.3d 1414, 1423-24 (8th Cir. 1995) (Civil tax problems cannot be regarded as indicating a lack of truthfulness under" Federal Rule of Evidence 608(b) and, accordingly, may not be inquired into on cross-examination to impeach a witness's credibility.)

In addition, for the same reasons as discussed above, the Court must balance Plaintiff's need for this "evidence" against Defendant's right to assert the Fifth Amendment privilege against self-incrimination. In striking this balance, the Court should consider that Plaintiff has undertaken no efforts – other than to ask Defendant to waive her Fifth Amendment rights – to seek such information. As with the Requests identified above, he has given the Court nothing to balance against Defendant's right to decline to give testimony against herself.

---

[2] Obviously, Request Nos. 99 and 100 can hardly be said to have any bearing on this issue. These will be addressed below regarding Plaintiff's continued efforts to "out" other men referenced in the blog who have never been identified.

As regards Plaintiff's remaining discovery, it is utterly irrelevant and patently overbroad and has never been the subject of any effort at resolution.[3]  The only discussion regarding the identities of people who have helped her pay rent was prior to the Plaintiff's original Motion to Compel.  He stated then that this information was sought solely to determine the identities of other men referenced in the web log.  He has never so much as mentioned Defendant's objection to producing her tax returns – or any reason why she should have to do so – prior to filing this Motion.

Plaintiff's Motion to Compel further response to this discovery has already been denied, in the Court's December 8, 2006 Order.  The Court did not give him leave to refile the motion and make new arguments which were available to him but which he did not make at that time.  The Motion should be denied on that basis alone.

In addition, Plaintiff's claim that the identities of persons who paid rent on apartments where Defendant lived is so attenuated that it simply does not support the use of the powers of the United States' government to pry into matters into which neither the government – nor the Plaintiff – have been invited.  While Defendant could, no doubt, freely share this information **if she chose**, this does not equate to granting Plaintiff the right to use the powers of the federal government to force her to produce this information to him.  His claim to the contrary demonstrates the inconsistency between his discovery efforts and his underlying claim.

The irony here cannot escape the Court.  Plaintiff has filed this suit because his identity was disclosed by persons other than Ms. Cutler.  Where his own privacy is at stake, Plaintiff contends

---

[3] In the only prior discussion regarding rent payments on Ms. Cutler's behalf , Mr. Rosen acknowledged that the only reason for this information was to ascertain the identity of other men whose initials appear in the web log.  This issue was therefore tabled pending resolution of his effort to directly determine their identities.  This will be addressed below.

that the right to privacy in sexual relationships is so overriding of all other interests that Ms. Cutler, a participant in the relationship, may not disclose the relationship absent his express permission, even though he bragged about the relationship (including explicit details) with their respective co-workers. Plaintiff's position is extreme, in affording him with a "privacy veto" on speech by Ms. Cutler regarding her **own** life, while he feels free to discuss the same details. However, Plaintiff's extreme position in protection of his own privacy apparently does not extend to the privacy of others, whose identities **neither** Ms. Cutler **nor** these gentlemen wish to have revealed.

In essence, Plaintiff contends that he is entitled to enlist the power of the federal judiciary to peer into sexual relationships to which he was not a party. He does not state in his Motion precisely **why** his "privacy veto" is of greater import than the acknowledged right to privacy in avoiding forced governmental intervention or interference in sexual relationships which the parties thereto do not wish to disclose. However, there should be no doubt that his claim is wrong.

As it relates to Defendant's income tax returns, he fairs no better. 26 U.S.C. § 6103 protects the confidentiality of taxpayer return information. As a general rule, "returns and return information shall be confidential, [] except as authorized by this title ...." 26 U.S.C. § 6103 (a). It is widely recognized that "income tax returns are confidential communications between a taxpayer and the government." Federal Savings & Loan Insurance Company v. Krueger, 55 F.R.D. 512, 514 (N.D. Ill. 1972). Case law addressing the issue reflects that courts have "broadly construed the statutory provisions to embody a general federal policy against indiscriminate disclosure of tax returns." Payne v. Howard, 75 F.R.D. 465, 469 (D.D.C. 1977). "While the courts vary in their interpretations of the breadth of the statutory protection . . . most courts do not recognize the existence of a 'privilege' against disclosure . . . rather [the courts] recognize a general federal policy limiting disclosure to

appropriate circumstances." Eglin Federal Credit Union v. Cantor, 91 F.R.D. 414, 416 (N.D. Ga.

1981). Courts in the past have concluded that the production of tax returns should not be ordered

unless it appears they are relevant to the subject matter of the action, and that there is a compelling

need therefor because the information contained therein is not otherwise readily obtainable. Cooper

v. Hallgarten & Co., 34 F.R.D. 482, 484 (S.D.N.Y.1964). Some courts have also considered whether

the taxpayer himself has made an issue of his income. See Payne v. Howard, supra. "Unless clearly

required in the interests of justice, litigants ought not to be required to submit such returns as the

price for bringing or defending a lawsuit." Wiesenberaer v. W.E. Hutton & Co., 35 F.R.D. 556, 557

(S.D.N.Y. 1964).

Plaintiff – who was formerly Deputy Senior Counsel to the Commissioner of the IRS – has

made no argument for an exception to this general grant of confidentiality other than the attenuated

Rule 608(b) and Rule 609 arguments foreclosed by United States v. Dennis, 625 F.2d 782, 798 (8th

Cir. Mo. 1980) and United States v. Escobar, 50 F.3d 1414, 1423-24 (8th Cir. 1995).  His Motion

regarding production of such documents should be denied.

### C.    Plaintiff's First Requests for Admissions Nos. 37, 39-43, 45-46

This set of Requests for Admissions demonstrate Plaintiff's lack of efforts to resolve this

claimed dispute.  Each Request asks Defendant to admit not to the entries actually contained in the

web log or even a paraphrase of these entries, but instead to Plaintiff's argumentative

characterizations of the web log. Defendant objected on these bases, but offered to stipulate to the

authenticity of a true and accurate copy of the web log.  Plaintiff did not respond regarding that offer

and refused to discuss it before filing this Motion.

Other than making an ex cathedra pronouncement that Defendant is not entitled to dictate how discovery is pursued, Plaintiff has never indicated why such an offer is an inappropriate resolution of any legitimate interest he may have in serving these Requests for Admission. While it may be inappropriate for a party to object to a mere paraphrase of a document, objections to legal conclusions or mere argument are not improper. Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth., 234 F.R.D. 1, 3 (D.D.C. 2006). As the Court can see, these Request for Admissions are entirely argumentative and improper. Defendant's offer to stipulate to the authenticity of an accurate copy of the web log would resolve the only issue upon which Plaintiff has based his Motion. As a result, Plaintiff's Motion should be denied.

**D.     Plaintiff's First Requests for Admissions Nos. 53-55 and 58 – 61**

Plaintiff claims that details of her interactions with Ana Marie Cox **following** May 18, 2004 – the day Ms. Cox, aka "Wonkette" made her now infamous post – are relevant to a plan to "create a market the Washingtonienne project, which included, inter alia, the Washingtonienne blog and the Washingtonienne book." He does not actually **ask** questions about such a nefarious scheme nor has he either sought or produced any information in discovery – nor identified any witnesses, facts, or, for that matter, supposition – which supports his claim to such a far reaching conspiracy. Instead, he asks questions having no apparent relationship to this case or these issues at all.

Whether or not Ms. Cox or Ms. Cutler had drinks following the events of May 18, 2004, whether late at night or not and whether characterized as a spree or an evening on the town, has no bearing on anything at issue in this lawsuit. The same is true regarding whether they posed for photographs – sexually suggestive or otherwise – and irrespective of what Ms. Cox did nor did not do with them afterwards. Plaintiff has made no argument how these events – or whether Defendant

-28-

spent the night at Ms. Cox's house, appeared on television, or talked about posing for Playboy – have any bearing even on the conspiracy theory he has hatched to support this Motion (yet has failed to mention in his own discovery responses). Had Plaintiff sought to resolve this dispute by limiting these requests to the time period prior to May 18, 2004 – or even asked if Defendant had met or spoken with Ms. Cox prior to that date – Defendant would have cheerfully given him his answer: Denied.

Regarding inquiries into how and under what circumstances Ms. Cutler obtained an agent or signed a book deal – again, all of which was well after May 18, 2004 – these are issues which are not relevant to **this** case, but which Plaintiff has made an issue in the lawsuit presently pending in Arkansas. The Court has stayed all discovery in that case pending the resolution of a Motion to Dismiss. Plaintiff's effort to avoid that stay and seek information having no bearing on this case, but instead relating to another matter – Steinbuch v. Cutler, et al., USDC, EDAR, Index No.: 4-06-CV0000620-WRW – in which discovery was stayed, is entirely improper.

Plaintiff's argument that this stay is of no matter because Ms. Cox is not a party to the Arkansas proceeding is nonsensical. Plaintiff is not seeking this discovery from Ms. Cox, who he has not yet even served with the Amended Complaint. He is seeking it from Defendant Cutler, who is a party to the Arkansas proceeding and therefore entitle to the benefit of the discovery stay in that case. Moreover, and more importantly, **Plaintiff** is a party to the Arkansas proceeding and **Plaintiff** is under an obligation to obey the Court's Orders in that case.

Regarding whether Ms. Cox paid Ms. Cutler to write for her website, Defendant actually answered the question which she believed Plaintiff was asking. Defendant was not paid by Ms. Cox; the website is not hers, as it belongs to Gawker Media; and Defendant was paid by Gawker to write

an article several months after the events at issue in this lawsuit. This is another example of an issue which could have been resolved had Plaintiff made any effort to do so at all.

    **E.**    **Plaintiff's Requests for Admission No. 72, 99 and 100 and Plaintiff's First Interrogatories No. 1**

Plaintiff claims that he is entitled to the identity of the persons identified in the Washingtonienne web log. His argument for forcing the disclosure of this information has now apparently been limited to disclosing what he calls "prostitution clients."

Defendant has previously addressed Plaintiff's arguments in this regard. Plaintiff makes a new argument, however, which is of considerable interest. Plaintiff argues that the identities of men who he characterizes as "prostitution clients" may be disclosed on the basis that such illegal sex acts necessarily destroy the right to privacy. In this regard, Plaintiff cites Anonsen v. Donahue, 857 S.W.2d 700 (Tex. App. 1993), a case which involved public disclosure by a woman that her father had engaged in an incestuous relationship with her which led to the birth of a child. Plaintiff argues that this case stands for the proposition that sexual conduct which constitutes criminal conduct carries with it no right of privacy.

Anonsen does not actually stand for such a proposition or even anything close to it. The holding in Anonsen was as follows:

> In the context of their personal stories, which were undoubtedly theirs to tell, both Campbell's and Dresbach's revelations of private facts about others involved in their lives were protected by the first amendment. We find that Booher's rights are similarly protected. As appellees suggest, to hold otherwise would be to imply that one's autobiography must be written anonymously.

> Like the court in Dresbach, we are not without compassion for appellants, who certainly have been victimized by the tragic events revealed on the Donahue program. We are further mindful that the protection of Booher's right to reveal her story and

> her identity imposes additional emotional suffering upon appellants. Sensitive information which appellants have to some extent attempted to keep secret, has been given unwelcome publicity, causing them pain. Yet, we conclude that to allow a cause of action based upon Booher's truthful and undisguised account of her own and her family's experience is inconsistent with the first amendment. Freedom of speech would be severely compromised if discussions of matters of public interest were circumscribed in the manner advocated by appellants.

Id, at 706.  Indeed.  Defendant could not agree more.

However, if Aronsen actually did stand for the proposition argued by Plaintiff and this Court were to adopt its holding, this lawsuit would be subject to dismissal on that basis alone.  The District of Columbia criminal code prohibits fornication.  D.C. Code § 22-1002.  Under Mr. Steinbuch's theory, his criminal sexual misconduct with the Defendant would not, under the law of the District of Columbia, be entitled to any privacy protection whatsoever.

Defendant generally agrees that a party to such a relationship – as discussed in Aronsen – is entitled to discuss it with whomsoever she pleases.  The distinction which appears to be lost on Plaintiff is that he was not, merely by virtue of having been invited into Defendant's bed, entitled to claim squatter's rights.  He was NOT a party to these relationship and is not entitled to use the Court's powers to invade them.

**F.    Plaintiff's Requests for Admission No. 24 and 30 and Plaintiff's First Requests for Production of Documents No. 6, 9, 16, and 20**

Plaintiff's First Requests for Admissions No. 24 and 30 seek admissions from Defendant regarding discussions and time periods which are not relevant to this case, i.,e., after the Washingtonienne blog was outed by Wonkette and she was fired from Senator DeWine's office. Plaintiff offered no justification for seeking such admissions either before he filed his motion or in the motion itself.

-31-

Requests for Production of Documents Nos. 6, 9, 16, and 30 have never been so much as mentioned by Plaintiff prior to the Motion to Compel.  Requests for Production Nos. 9, 16, and 20 seek documents which, as to the period of time at issue in this case, do not exist and, as to the period of time at issue in the Arkansas case, are governed by the Order staying discovery in that case.  The Requests are facially overbroad, seek documents outside any conceivably relevant period – even after this Court, in its December 8, 2006 Order limited Defendant's discovery even regarding her interactions with Plaintiff to a six week period from May 1, 2004 to June 15, 2004 – and which do not pretend to relate to discovery which relates in any way to this case.  Defendant did not try to resolve, narrow, or otherwise address these requests prior to filing this Motion nor especially following the Courts' December 8, 2006 Order.

### G.      Plaintiffs First Document Requests Nos. 1, 2, 7-8, 11-12, 14, 17-18, 21, 23

None of these various Requests for Production were ever the subject of an effort to meet and confer pursuant to Local Civil Rule 7(m).  Many of them might have been resolved had they been discussed.

With respect to Request No. 1, the request is so broad, under the circumstances, that it is difficult to determine what would be "related" to the blog.  Does this include a copy of Ms. Cutler's book?  If so, Defendant will provide him a copy.  This is the type of overly broad discovery request which is inherently impossible to definitively answer – as Plaintiff's understanding of relationships between documents and the web log and Defendant's understanding of those relationships are apparently worlds apart – but at least with some effort at resolution the issues could be substantially narrowed and the scope of the request better understood.  At present – even after this Motion –

-32-

Defendant is left in the dark as to what Plaintiff believes may relate to the web log or what he is or is not requesting.

Plaintiffs First Document Request No. 2 seeks documents relating to compensation received by Ms. Cutler for writing the Washingtonienne blog.  Defendant responded by stating that she did not receive compensation for writing the blog, but objected because the "direct or indirect" language made it unclear what he was seeking.  His Motion, for the first time, has revealed that he is seeking discovery of compensation for writing her book or writing articles, which are both unrelated to this lawsuit and which are governed by the Order staying discovery in the Arkansas case.  This aspect of his Motion should be denied both for his failure to attempt to resolve this dispute and for his contemptuous disregard of the Arkansas District Court's Order.

Plaintiffs First Document Request, Request No. 7 asks for documents from, to, or concerning anyone referenced, however fleetingly, in the web log.  His Motion, for the first time, indicates that he is seeking documents "from her paramours from the blog."  He had never, prior to his Motion, discussed or referenced this Request with Defendant.

Obviously, Defendant objects to production of documents which are sought solely to identify the other men referenced in the web log.  This issue has been discussed previously.  Since this is all that he has requested – and has articulated no basis for the overly broad request, his failure to confer with the undersigned regarding this Request, or how such documents would bear on any issue in this case – his Motion should be denied regarding this Request.

Plaintiffs First Document Request, Request No. 8 is, at best, confusing.  Moreover, other than stating that no documents have been produced in response to this Request, he makes argument at all as to what the Request was intended to mean or why it is proper discovery.  Since he did not engage

in any efforts to discuss these issues with Defendant before filing the Motion – and has failed to articulate them in the Motion itself – Defendant remains at a loss to understand what is being requested.

If the request was intended to seek documents which reflect communications in which Defendant permitted others to access the web log, no such documents were available at the time of the response. Based on a recent production of documents – at Defendant's request – from the United States Senate it is possible that there may be documents responsive to this Request which can now be produced. If Plaintiff had spent made any effort to contact the undersigned regarding this issue before filing this Motion, it would have been resolved by now. While Plaintiff's Motion should be denied based his failure to meet and confer regarding this issue, absent contrary direction from the Court Defendant will not withhold such documents as may be responsive to this Request on that basis.

Plaintiffs First Document Request, Request No. 11, seeks anything that Defendant has ever published or, apparently, thought about publishing, no matter how unrelated to this case it may be. Plaintiff did not discuss this Request prior to filing the Motion.

To the extent it seeks drafts (galleys? proofs? whatever the term may be) of the Washingtonienne book, it runs afoul of the Order staying discovery in the case pending in Arkansas. That case is expressly related to publication of the Washingtonienne book. This case is not. This case is about the web log. There are no documents responsive to this Request which predate the period prior to May 18, 2004 which have anything whatsoever to do with any issue in this case.

Plaintiff's argument that such documents relating to Defendant's efforts to gain notoriety through publishing implies that gaining notoriety through publishing is, in general, improper. On

the contrary, is protected by the United States Constitution.  Drafts of works as yet unpublished

having nothing to do with the issues in the case are simply not proper discovery nor does Plaintiff

offer any reason why they would be, other than to sneer at her "efforts to gain notoriety through

publishing."

      Plaintiffs First Document Request, Request No. 12 seeks documents relating to interviews

with Defendant.  There is no limitation as to time, subject matter, or otherwise.  Other than to state

that "her comments are Admissions", there is no argument as to why this is proper discovery.

Moreover, any documents responsive to this Request to which Defendant would have access are

simply the publications in which the interviews appear.  These publications are just as available to

Plaintiff as to Defendant.  Plaintiff has made no argument why he should be permitted to enlist

Defendant to track down, copy, and produce such publications instead of simply performing the

exact same task himself.  Naturally, there was no discussion of this Request prior to the Motion.

      Plaintiffs First Document Requests Nos. 14 , 18, 21, and 23 seek documents regarding

contracts with media, sale of media rights, or consulting agreements. To the extent that this Request

seeks documents relating to the period following May 18, 200 4 and/or which relate to the

publication of the Washingtonienne book, such discovery is both irrelevant and is barred by the

Order staying discovery in the case pending in Arkansas.  As noted above, to the extent Plaintiff was

seeking documents regarding such matters which predated or were contemporaneous with May 18,

2004, no such documents either exist or have ever existed.  The Motion should be denied.

      Plaintiff's Requests No. 14 is, once again, an effort to discover the identities of other men

with whom Defendant had a relationship.  For the reasons set out above, this Request should be

denied.

## III.    CONCLUSION

Plaintiff's view of discovery apparently includes a belief that he is entitled to ask whatever invasive or irrelevant question he may choose, ask for any information or documents he can imagine, and then simply refuse when asked for (and Ordered to) produce documents or information which may actually relate to the claims which he has chosen to bring.  He appears to consider himself not subject to the Orders of the Court nor obligated to comply with the Rules of this District nor required to explain his reasons for asking for patently improper discovery.

The discovery set out above should never have been the subject of a Motion to Compel.  It should, in most respects, never have been the subject of a discovery request.  It is based on a complete and utter misapprehension of what is permissible discovery or admissible evidence.  The Motion was filed without any good faith effort to resolve or narrow disputes.  The Motion to Compel should as a result, be denied with prejudice and sanctions, as requested above, imposed.

Respectfully submitted this 29th day of December, 2006.


/s/ Matthew C. Billips
Matthew C. Billips
Georgia Bar No. 057110
MILLER & BILLIPS, LLC
730 Peachtree Street, Suite 750
Atlanta, GA 30308
ph: (404) 969-4101
fax: (404) 969-4141
 mbillips@mbalawfirm.com

**COUNSEL FOR DEFENDANT
JESSICA CUTLER**

/s/ John R. Ates
John R. Ates, Esq.,

ALBO & OBLON, LLP
2200 Clarendon Blvd. Suite 1201
Arlington, VA 22201
**jra@albo-oblon.com**

**LOCAL COUNSEL**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT STEINBUCH,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )    Case No. 1:05-CV-970 (PLF) (JMF)
                                     )    Judge Paul L. Friedman
JESSICA CUTLER,                      )    Magistrate Judge John M. Facciola
                                     )
        Defendant                    )
_____    )

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served a copy of "**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL OR DEEM ADMITTED DEFENDANT CUTLER'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS, INTERROGATORIES, AND DOCUMENT REQUESTS AND MOTION TO STRIKE AND FOR SANCTIONS**" on defense counsel identified below by electronically filing a copy of same with the Clerk of Court by using the CM/ECF System which will automatically send e-mail notification of such filing to the following attorneys of record:

Jonathan Rosen, Esq.              Jonathan Rosen, Esq.
1645 Lamington Road               1200 Gulf Blvd., 1506
Bedminster, New Jersey 07921      Clearwater, Florida 33767

This 29th day of December, 2006.


                                  _S/ Matthew C. Billips___
                                  Matthew C. Billips
                                  Georgia Bar No. 057110

MILLER & BILLIPS, P.C.
730 Peachtree Street, Suite 750
Atlanta, Georgia 30308
(404) 969-4101
(404) 969-4141 (fax)
**mbillips@mbalawfirm.com**