### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------------------
Steinbuch                                    :    1:05-CV-970 (PLF) (JMF)
                              Plaintiff,      :    Judge Paul L. Friedman
                                             :    Magistrate Judge John M.
           -v-                               :    Facciola
                                             :
                                             :
                                             :
Cutler and Cox                               :
                              Defendants.     :
-----------------------------------------------------------
```

### PLAINTIFF'S REPLY TO DEFENDANT CUTLER'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

In response to Plaintiff's Motion to compel, Defendant Cutler makes a series of baseless claims. Defendant falsely asserts that there are no facts in dispute that call into issue Defendant's character for truthfulness; Defendant feigns ignorance of the information that Plaintiff seeks; and Defendant misstates the substantive law regarding discovery and evidence. In addition, Defendant's frivolous and repeated motions for sanctions are attempts to harass Plaintiff and subvert the legal process

I.    Defendant Admits that the Blog Invades Privacy

Defendant yet again contends that it cannot turn over the identities of the alleged characters in the blog because this would invade their privacy, but refuses to admit the same regarding Plaintiff. Defendant cannot have it both ways. If disclosing the identity of the alleged individuals in the blog invades their identities, Defendant should concede that it also violates Plaintiff's. Why is Plaintiff different than the other characters in the blog? Contrary to Defendant's contentions, the Plaintiff did not first publicly identify himself as a character in the blog by filing this action. The Plaintiff was specifically

Dockets.Justia.com

identified, suffering damage as a result, and the blog was widely publicized prior to the filing of this action.

Moreover, Defendant foolishly tries to assert that Plaintiff is similarly situated to Defendant's prostitution clients who are not entitled to keep private their criminal activity. Defendant, however, cites DC Code 22-1002, alleging that it is an anti-fornication statute. This statue has, in fact, been repealed. It is both alarming and troublesome that Defendant's counsel intentional cites and relies on a repealed statute. The statute is now an anti-cruelty to animals provision. Id. Defendant's argument is completely meritless and patently frivolous.

II.     Defendant Cannot Legitimately Claim that There Are No Facts in Dispute

Defendant's first "defense" is that Plaintiff does not need FRE 608 material, because Defendant's credibility is not in issue. This is wholly false. Defendant has denied numerous factual assertions of Plaintiff. As such, Defendant's testimony is disputed. Accordingly, Defendant's character for truthfulness under Rule 608 is automatically implicated, and Plaintiff is entitled to inquire as to "specific instances of the conduct of the witness, for the purpose of attacking . . . the witness' character for truthfulness . . . [may] be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness." FRE 608(b).

Defendant's denial that her credibility is in issue is meritless. Defendant claims that it does not know which facts are disputed as false. This assertion is particularly troubling given that it is Defendant that put these facts in dispute in its Answer to the Amended Complaint. Specifically, Defendant has put her credibility is issue when she disputed the facts as set forth in the Amended Complaint, some of which follow:

"In her blog, Cutler identified herself as the 'Washingtonienne.'"

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler chose this name due to its similarity to the 'Wonkette' blog's name, which belonged to Defendant Ana Marie Cox."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Blogs and other internet sites may be 'password protected,' permitting only authorized users to have access. Butler, however, declined the option of password protection, instead intentionally making her blog publicly available to anyone who hit upon the site on the Internet."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler's Washingtonienne blog was accessible and open to the public."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler intended her Washingtonienne blog to be accessible and open to the public."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler's Washingtonienne blog was searchable and discoverable on the internet."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler intended her Washingtonienne blog to be searchable and discoverable on the Internet."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"In the public blog, Cutler maintains ongoing conversations with strangers, explicitly recognizing the pubic nature of her blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Any part of a blog can be altered at any time."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler routinely edited all aspects of her blog, up and until May 18, 2004."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler explicitly informed others of her public X-rated blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler discussed with friend(s) commercializing her blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler's friends told other people about Cutler's X-rated blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler approved of her friends informing others about her X-rated blog."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler readily granted permission for her friend(s) to direct other person(s) completely unknown to Cutler to read Cutler's public X-rated blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler wanted as many people as possible to read her blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler wanted to make money from her blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler maintained no privacy of her blog. She freely let anyone read it and wanted to gain additional readers."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

Cutler's public blog described in graphic detail her ongoing sexual relationships with six men, including Plaintiff. At the time of his relationship with Cutler, Plaintiff did not know that Cutler was simultaneously engaged in sexual relationships with another man, let alone with five other men, and let alone that she was prostituting herself to some of them; and Plaintiff did not know that Cutler was

recording the details of her relationship with Plaintiff on a public blog, making those details available to the public.

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"At the time of Plaintiff's relationship with Cutler, Cutler was simultaneously engaged in sexual relationships with five other men, and prostituting herself to some of them."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"At the time of Plaintiff's relationship with Cutler, Cutler never disclosed that she was recording the details of her relationship with Plaintiff on a public blog, making those details available to the public. Indeed, Cutler claimed that she would never do such a thing."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler's public blog provides cumulatively identifying characteristics of Plaintiff, culminating with the disclosure of Plaintiff's name <u>at the very end of the blog.</u>"

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler referred to Plaintiff by his first name in her publicly available blog."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler referred to Plaintiff by his initials, "R.S." in her publicly available blog."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

Cutler identified Plaintiff in her public blog through his religion, Jewish; his job, Committee Counsel to the Senate Committee on the Judiciary; his place of residence, Bethesda; the fact that he has a twin; his general appearance; and details of Cutler's intimate relationship with Plaintiff that Cutler had previously disclosed to colleagues and co-workers.

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Plaintiff's identity became clear upon the reading of the complete blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler's public blog contained, *inter alia*, the following passages of and concerning Plaintiff . . . .[repeating the contents of he blog]"

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"At the same time that Cutler was posting her public blog, she was also writing on her Senate computer a journal on how to exploit men for financial and materialistic gain."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"In her public blog Cutler admiringly referenced Ana Marie Cox's 'Wonkette' blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"In her public blog Cutler hyper-linked to Ana Marie Cox's 'Wonkette' blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler wanted to have Cox spread the word regarding Cutler's blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler and Cox saw the X-rated Washingtonienne blog as their route to riches."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler always wanted to have her blog gain notoriety."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Within three days of Cox's linking back to Cutler's blog, Cutler called Cox and granted Cox permission to post on her website (Wonkette) that Cutler was the source of the Washingtonienne public blog."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cox published Cutler's identity with Cutler's express permission—giving her the notoriety she coveted."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler went out on a late-night drinking spree with Cox."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler posed for sexually suggestive photos with Cox that Cox put on—and later removed from—her website."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler and Cox used the private facts of Plaintiff for their personal profit and exploitation."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler got an agent, with Cox's help."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cox paid Cutler to write for her website."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cox and Cutler went on television together."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler and Cox discussed posing jointly for *Playboy Magazine*."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler sought widespread public attention and publicity for herself; she further disseminated the contents of the pubic blog through the channels of mass media; she granted print, broadcast, and Internet interviews, capitalizing on her newfound fame and attention."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"On June 2, 2004, Cutler authored an article in the Guardian Newspaper online, in which she linked to and republished the full contents of Washingtonienne blog again."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler signed a deal with *Playboy Magazine* which included a nude photo spread of Cutler posted on Playboy's Internet site, capitalizing on the publicity generated by her public blog and her relationship with Plaintiff."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler signed a book contract, receiving a $300,000 advance, with Hyperion Press, a division of the Disney Corporation, to write a book, of the roman a clef genre, based on her blog."

**Defendant's Response:** Defendant denied in part. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler commented in the press that she feels sorry for those people that write public blogs for years and never obtain a book deal."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler said: 'With a blog, you can't expect your private life to be private anymore.'"

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Cutler said: 'Some people with blogs are never going to get famous, and they've been doing it for, like, over a year. I feel bad for them.'"

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

> The private facts revealed include such facts as the number of times he ejaculated, his difficulty in maintaining an erection while wearing a particular condom provided by Cutler, spanking and hair pulling during their sexual activity (but conveniently leaving out Cutler's request of both), his intimate personal conversations with Cutler during sexual activity and during the course of their relationship, physical descriptions of his naked body, the physical details of the sexual positions assumed by Cutler and Plaintiff during sexual activity, Plaintiff's suggestion that he and Cutler be tested for sexually transmitted diseases so that they would not have to make use of a condom, statements made by Plaintiff regarding sexual positions. Illustrative of these statements are passages in the Cutler public blog, *inter alia*, such as [quoting the blog].

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to deny that there are facts in dispute that will implicate Defendant's character for truthfulness.

"Other private and personal facts were scandalized in Cutler's public blog, the

Washingtonienne, to attract more attention; For example, Plaintiff's response to

Cutler's question 'am I too lazy in bed?' of 'I don't mind passive' was presented as

'*he told me that he likes submissive women.*'"

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to

deny that there are facts in dispute that will implicate Defendant's character for

truthfulness.

"Cutler's X-rated blog contained wholly apocryphal (false) statements about

Plaintiff."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to

deny that there are facts in dispute that will implicate Defendant's character for

truthfulness.

 "Defendants intended to cause Plaintiff to suffer damages."

**Defendant's Response:** Defendant denied. Yet Defendant's counsel continues to

deny that there are facts in dispute that will implicate Defendant's character for

truthfulness.

Given that Defendant now asserts that there are no factual disputes that Defendant

will testify contrary to Plaintiff's assertions, this Court should deem the above paragraphs

from the Amended Complaint admitted.

Moreover, not only does Defendant Cutler falsely allege that there is no dispute

between Plaintiff and Defendant, she also continues to deny that the False Light claim in

this case is legitimate, even though this Court has specifically recognized Plaintiff's

cause of action for False Light at least twice already in explicitly denying Defendant's repeated motions to dismiss.  By definition, Plaintiff has repeatedly plead that statements in Defendant's blog were untrue in his original Complaint (Doc. 1-1), again at the Motions Hearing held on April 05, 2006 (Doc. 63-2), and then again in his Amended Complaint (Doc. 37-2). As a consequence,  Defendant has denied making <u>any</u> false statements, first in her Reply Memorandum in Further Support of Defendant's Motion to Dismiss (Doc. 8), again at the Motions Hearing held on April 05, 2006 (Doc. 63-2), and then again in her Answer to Plaintiff's Amended Complaint (Doc. 61).  Based on the pleadings alone, the Court repeatedly ruled that the False Light claim is indeed valid.  See Transcript of Hearing on Defendant's First Motion to Dismiss on pg. 48 of Doc. 63-2 and Order Denying Defendant's Second Motion to Dismiss. Still, Defendant persists that Plaintiff has never asserted that any statements are false. This contention is frivolous.


III.    Defendant's Specific Objections are Frivolous

Defendant's "responses" to Plaintiff's Motion to Compel are completely evasive, obstructionist and designed to thwart the discovery process.  First, tax evasion, such as collecting income from prostitution clients and rent and other goodies, without reporting it as income, is probative of character for truthfulness.  *Baxter Health Care Corp.v. Spectramed, Inc.,* 1992 U.S. Dist. LEXIS 19769 at *9-10  ("Inquiry into the specific instances of conduct for securities fraud and tax evasion may bear directly on the credibility of an expert witness and his character for truthfulness. . . .  Any perceived prejudice or inference of use other than to attack the credibility of the expert can be

mitigated by a limiting instruction from the court."). And, tax returns are discoverable. *Carnegie Hill Fin. V. Krieger*, 2001 USDist. LEXIS 10916 at *5-6 (2001).

Second, Defendant Cutler's specific acts of prostitution relative to the individuals in her Washingtonienne blog are relevant because they confirm Defendant Cutler's plan of creating a blog in which she set up and exploited men through prostitution and deception. Defendant Cutler's intention was to prostitute herself for the purposes of creating her Washingtonienne blog, gain notoriety and publish a book by the same name. Indeed, Cutler was writing a document entitled Washingtonienne the year prior to her Washingtonienne blog – in 2003. The Washingtonienne project had been underway well before Defendant Cutler's blog hit the internet and her plan of prostitution bears directly on that endeavor.

Third, Defendant admits that drug use is discoverable and admissible to attack a witness's ability to perceive events and testify lucidly at trial, citing Jarrett v. United States, 822 F2d 1438, 1446 (7th Cir. 1987). Defendant's drug use during the time that she wrote the blog directly bears on her ability to verify the contents therein. This case bears directly on the falsity and truthfulness of the contents of Defendant's blog. If Defendant was high on drugs during the period in which she wrote her blog, then her ability to accurately recount now the events that she described can be attacked. Moreover, if Defendant was high on drugs when she wrote the blog, then the accuracy of the blog itself can be attacked.

Fourth, Defendant continues to try to dictate that Plaintiff cannot take any discovery from after the date of blog, as if there couldn't be any evidence (admissible or likely to lead to admissible) that was created after May 18, 2004. Again, Defendant

actions are obstructionist and designed to thwart the discovery process.  Similarly,

Defendant is wholly disingenuous when it says that it will (at some unspecified time in

the future) verify a true copy of the blog rather than responding to direct quotes from the

blog.  Plaintiff may inquire as to whether Defendant authored any part of the blog.

Moreover, if Defendant truly wanted to verify a copy of the blog, it could have done so.

Indeed, Defendant has never provided a copy of the blog in response to the numerous

document requests specifically requesting all documents entitled "Washingtonienne."

Simply, if Defendant believes that it cannot admit direct quotes from the blog, it

shouldn't claim that it will verify a copy, but rather provide a copy in response to the

discovery.

Fifth, Defendant's ongoing relationship with Cox after May 18, 2004 is probative

as to her relationship before May 18th.  While Defendant intends to argue that she only

came into contact with Cox after the 18th, Plaintiff is not, however, bound to just take

Defendant at her word and may seek discovery from after May 18th that could lead to

other evidence showing previous contacts.

Finally, while FRE 609 requires evidence of criminal convictions, during

discovery a party may inquire as to criminal activity so as to investigate criminal

convictions.  And that party need not take the word of the criminal that she has not been

convicted.

IV.    Plaintiff 's Counsel Conferred with Defendant's Counsel At Length Prior To
       Filing Plaintiff's Motion To Compel

       A.    Plaintiff's Significant Consultation

Defendant's counsel <u>admits</u> that we, Plaintiff's counsel and Defendant's counsels,

exchanged numerous emails regarding the motion to compel in which Plaintiff's counsel

18

identified the specific requests on which Plaintiff's counsel would be seeking to compel. Defendant's counsel <u>admits</u> that Plaintiff's counsel spoke to them in <u>two</u> separate telephone conversations regarding this motion to compel.  Defendant's Counsel <u>admits</u> that he wrote to Plaintiff's counsel "After reading your and Matt's most recent exchanges . . . .  If you have any concerns or questions regarding Defendant's responses to discovery, in addition to calling Matt, you may call me to discuss them by phone."

Defendant's counsel <u>admits</u> that on December 15, 2006, Defendant's counsel spoke with Plaintiff's counsel for the <u>second</u> time regarding this motion.  This second call alone lasted nearly half an hour, and, while Defendant's counsel attempts to shave minutes off of the length of the call, Defendant's counsel <u>admits</u> to this <u>second</u> call on this motion, as well.

In an attempt to bolster his fabricated claim, Defendant's counsel misstates who initiated the call.  Plaintiff's Counsel initiated the call to Defendant's counsel – not the other way around.  Plaintiff's counsel first called, and Defendant's counsel returned Plaintiff's counsel's phone call.  Moreover, the sole purpose of the call was to discuss confer regarding this motion, and that is what we specifically discussed.  Indeed, Plaintiff's Counsel had the motion in hand as Plaintiff's Counsel spoke with Defendant's counsel, and Plaintiff's Counsel reiterated yet again the specific discovery requests and why Plaintiff's Counsel am entitled to them.

Defendant's counsel repeated its efforts of delay and its mantra that Plaintiff has no valid cause of action against his client – notwithstanding this Court's explicit and repeated rulings to the contrary.  Defendant's counsel refused to agree to answer any of the discovery requests.  He said that he would contact Plaintiff's Counsel if he changed

his mind. After all of that interaction, Plaintiff's Counsel filed the motion. However,
even before doing so, Defendant's counsel <u>admits</u> that Plaintiff's Counsel yet again
called Defendant's counsel as a courtesy to so inform him. Indeed the very cases that
Defendant cite <u>supports</u> Plaintiff's position. *Alexander v. FBI*, 186 F.R.D. 197 (D.D.C.
1999). The multiple exchanges and lengthy, specific discussions between Plaintiff's
counsel and Defendant's counsel regarding this motion clearly meet the requirements
with Local Civil Rule 7(m).

In addition, Defendant's counsel takes issue with Plaintiff's certification of
compliance with Local Civil Rule 7(m): "Counsel for Defendant Cutler has been
consulted and has not consented to this motion." Curiously, Defendant's counsel
compares this rule-satisfying certification, with the wholly dissimilar certification found
in cases such as *Ellipso, Inc. v. Mann*, 2006 U.S. Dist. LEXIS 79827 (D.D.C. 2006). In
that case, the party's certification was: "I attempted to secure the discovery responses."
These certifications are not even close to similar. The <u>Ellipo</u> certification does not even
mention consultation – the very heart of the local rule. Moreover, as discussed above,
Defendant's Counsel admits that it engaged in two phone conversations and numerous
emails on this motion alone. Defendant's counsels' claims that these two certifications
are similar is intentionally disingenuous, in an attempt to bolster Defendant's frivolous
arguments.

Defendant goes so far to mischaracterize the District Court's orders in this action
regarding Local Rule 7(m). The district court did not sanction Plaintiff's counsel for
failing to comply with Local Rule 7(m) in this action. Defendant's counsel's actions are
deserving of further admonition.

B.     Plaintiff's First Request for Production of Documents

Plaintiff initially filed its Motion to Compel regarding Defendant's complete

failure to respond to Plaintiff's First Request for Production of Documents on September

22 (Doc. 47-1), Defendant Cutler filed a Response on September 26 (Doc. 48-1), and

Plaintiff believed he successfully submitted his Reply shortly thereafter.  Plaintiff did not

realize, however, that his attempt to file his Reply apparently did not make it through the

filing system until after the Court denied the motion.  Without Plaintiff's Reply, the Court

understandably denied this initial Motion to Compel.

Defendant now argues that Plaintiff failed to meet and confer with Defendant

regarding Plaintiff's First Request for Production of Documents.  Plaintiff, however,

dually met and conferred with Defendant's counsel—both the first time that Plaintiff's

Counsel filed the First Motion to Compel and then again when Plaintiff's Counsel filed

the instant Motion to Compel.  Now, for the fist time, Defendant asserts that it did not

confer with Plaintiff regarding Plaintiff's First Motion to Compel.  Defendant, however,

<u>never</u> asserted a failure to consult in its response to Plaintiff's First Motion to Compel.

Because Defendant never made an issue of Plaintiff's (new-found) failure to meet and

confer with Defendant the first time Plaintiff filed his Motion to Compel, Defendant's

opportunity to raise the issue has been waived.  Moreover, in an email to Plaintiff's

counsel after Plaintiff's counsel filed the instant Motion to Compel, Defendant's Counsel

<u>admits</u> that we discussed Plaintiff's First Document Request when we conferred pursuant

to Local Rule 7(m) on the instant Motion to Compel.  Specifically, John Ates wrote on

December 15, 2006:  "<u>We will be updating our responses to Plaintiff's First Request for</u>

Production of Documents to specify which documents are in existence.  I anticipate the revised responses coming to you by Monday [December 18, 2006.]"  While acknowledging that documents exist does not satisfy Defendant's discovery obligations, Defendant has not even done that and now incredibly contends that we never discussed Plaintiff's First Request for Production of Documents before filing the instant Motion to Compel.  The email evidence is directly contrary to his new found assertions.

Defendant also mischaracterizes the discussion regarding the mis-filed Reply brief.  Plaintiff's counsel explained that Plaintiff's counlsel needed to include in the instant motion the material from the first motion because of the mis-filing.  Plaintiff's counsel informed Defendant's counsel that Plaintiff's counsel filed the brief, but the system seemed to have not accept the document.  And yet Defendant's counsel seemed intent on having me admit that the Reply was not filed.  Plaintiff's counsel said that to the extent that the Reply never made it on the system, Plaintiff's counsel agreed that it was not filed with the Court.  Interestingly, Defendant's counsel now admits that the instant motion may include the material from the first motion.

C.    Defendant's Counsel Violated the Very Rule that He Invokes, After He Invoked It

On January 3, 2007, Defendant's counsel M. Billips violated the "good faith" requirement to confer when he filed his motion for sanctions.  At the end of the week just before Christmas, on December 20oth, while Plaintiff's counsel was traveling, Defendant's counsel, M. Billips, e-mailed Plaintiff's counsel regarding his motion for sanctions.  Plaintiff's counsel emailed him back and told him that I would call him after the holiday.

And, as promised, Plaintiff's counsel called him during the week between Christmas and New Years to confer.  Defendant's counsel M. Billips was not available. So, Plaintiff's counsel left him a voice mail message. Defendant's counsel did not return the call me back.  Then, on January 3rd, Defendant's counsel sent Plaintiff's counsel an e-mail and left a voice mail message, both exactly at 11:18 am. He then filed a motion at 2:39 pm on the same day, without stating any reason or excuse for the immediate filing.

Plaintiff's counsel was unavailable between 11am and 3pm.  I returned Defendant's counsel's telephone call immediately upon receiving his voice mail message, and we spoke on the phone at 3:28 p.m.  At that time, Plaintiff's counsel did not have access to e-mail and was unaware of the fact that Defendant's counsel filed such motion. During the telephone conversation, Plaintiff's counsel found out that Defendant filed its motion without conferring with Plaintiff's counsel.  Accordingly, Plaintiff's counsel informed Defendant's counsel to withdraw the motion.  He has not done so.  There was no urgency for Defendant to file his motion for sanctions without conferring with me. Defendant has violated the very Rule that he has invoked.  *Alexander v. FBI*, 186 F.R.D. 197 (D.D.C. 1999).  As Defendant stated:  "He fails to indicate that he engaged in either an in person or telephone discussion regarding the motion in an effort to actually seek to resolve or at least narrow the disputes before filing the motion. Moreover, the record affirmatively demonstrates that no such efforts occurred."

Defendant's filed this motion on the 3rd because this was when Defendant's responses to discovery were due, and Defendant is using its most current frivolous sanctions motion to delay responding to Plaintiff's discovery requests.  Specifically, Defendant filed her response to Plaintiff's discovery thirty days after receiving it, and in

her response to these requests, Plaintiff's counsel not only fails to answer the discovery but also declares on his own, without the Court's Order, that he will only respond to the discovery after the Court rules on his Motion for Sanctions.

This Motion for Sanctions is a subterfuge to avoid responding to the discovery Plaintiff served on her a month ago. Moreover, this discovery seeks to obtain a copy of Defendant's 2003 sex-diary document entitled "Washingtonienne"—written one year prior to Defendant's posting of her Internet blog by the same name on the same topic. Obviously, Defendant does not want to turn over the 2003 Washingtonienne project because it demonstrates her ongoing efforts to initiate the Washingtonienne project for her financial gain.

V.      Sanctions

Defendant counsel has in virtually <u>every</u> briefing sought sanctions, for a simple purpose: to subvert the legal process. This Court has rejected every sanctions application filed by Defendant. In addition, Defendant has just filed, on January 3rd, another separate motion for sanctions, and Defendant has previously served an unrelated Rule 11 motion on Plaintiff's counsel, repeating its failed arguments made in its repeatedly rejected motions to dismiss. Rather than withdrawing its frivolous motion, to date Defendant continues to assert that its motion is both proper and can be filed at any point. Plaintiff requests that this Court take appropriate action regarding Defendant's Counsels' frivolous and repeated motions for sanctions, filed to harass and subvert the legal process by delaying and blocking required responses to discovery, and wasting this Court's time and

resources with increasingly bold, defiant, and incredulous sanction requests.  Defendant's counsel's actions are deserving of further admonition.


Dated:  January 7, 2007

 _/s/_ Jonathan Rosen
Jonathan Rosen, Esq.
1645 Lamington Rd.
Bedminster, NJ 07921
(908) 759-1116
Attorney for Plaintiff