## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ROBERT STEINBUCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:05cv970 (PLF)** |
| | ) | |
| **JESSICA CUTLER** | ) | **ORAL ARGUMENT REQUESTED** |
| **and** | ) | |
| **ANA MARIE COX,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANT ANA MARIE COX'S MOTION TO DISMISS

Defendant Ana Marie Cox ("Cox") hereby moves to dismiss Plaintiff Robert Steinbuch's

First Amended Complaint against her pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted.  This Motion is accompanied by a

Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss.  Grounds

for dismissal are as follows:

1.      The claims in the First Amended Complaint are time-barred against Cox;

2.      The claims in the First Amended Complaint must be dismissed because Cox is

immune under Section 230 of the Communications Decency Act;

3.      The allegations against Cox do not support a claim for public disclosure of private

facts, because plaintiff concedes that the allegedly "private" facts were already public at

the time Cox "disclosed" them;

4.      The allegations against Cox do not support a claim of false light invasion of

privacy, because plaintiff has failed to allege that Cox knew or acted in reckless disregard

of the falsity of the posts she republished;

5.      The allegations against Cox do not support a claim for intentional infliction of

1

Dockets.Justia.com

emotional distress because, as a matter of law, Cox's conduct was not sufficiently extreme or outrageous to support that claim, nor has plaintiff made sufficient allegations of intent.

Therefore, Cox respectfully requests that the court grant her motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and dismiss the First Amended Complaint in its entirety with prejudice against Defendant Cox.

Pursuant to Local Rule 7(f), Cox requests an oral hearing on her Motion to Dismiss.


Dated this 26th day of January, 2007.

Respectfully submitted,


　　/s/　Laura R. Handman

Laura R. Handman (D.C. Bar No. 444386)
Amber L. Husbands (D.C. Bar No. 481565)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600
(202) 508 6699 fax

James Rosenfeld (*pro hac vice* application
    pending)
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, N.Y. 10019
(212) 489-8230
(212) 489-8340 fax

Charles R. Both (D.C. Bar No. 42424)
Law Offices of Charles R. Both
1666 Connecticut Avenue
Suite 500
Washington, D.C. 20009
(202) 833-9060
(202) 463-6686 (fax)

*Attorneys for Defendant Ana Marie Cox*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT STEINBUCH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05cv970 (PLF) |
| | ) | |
| JESSICA CUTLER | ) | |
| and | ) | |
| ANA MARIE COX, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANT ANA MARIE COX'S MOTION TO DISMISS**

Laura R. Handman (D.C. Bar No. 444386)
Amber L. Husbands (D.C. Bar No. 481565)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600
(202) 508 6699 fax

James Rosenfeld (*pro hac vice* application
     pending)
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, N.Y. 10019
(212) 489-8230
(212) 489-8340 fax

Charles R. Both (D.C. Bar No. 42424)
Law Offices of Charles R. Both
1666 Connecticut Avenue
Suite 500
Washington, D.C. 20009
(202) 833-9060
(202) 463-6686 (fax)

*Attorneys for Defendant Ana Marie Cox*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

ARGUMENT .................................................................................................................. 5

    I.      MOTION TO DISMISS STANDARD ................................................... 5

    II.     THE CLAIMS AGAINST COX ARE TIME-BARRED ...................................... 6

    III.    SECTION 230 OF THE COMMUNICATIONS DECENCY ACT BARS
           PLAINTIFF'S CLAIMS AGAINST COX .......................................... 11

    IV.    THE PRIVATE FACTS CLAIM MUST BE DISMISSED BECAUSE THE
           ALLEGEDLY "PRIVATE" FACTS WERE ALREADY PUBLIC .................... 16

    V.     THE FALSE LIGHT CLAIM MUST BE DISMISSED BECAUSE
           PLAINTIFF DID NOT ALLEGE THAT COX HAD KNOWLEDGE OR
           RECKLESS DISREGARD AS TO THE FALSITY OF THE
           WASHINGTONIENNE POSTS .......................................................... 18

    VI.    THE EMOTIONAL DISTRESS CLAIM MUST BE DISMISSED
           BECAUSE PLAINTIFF HAS NOT ALLEGED EITHER OUTRAGEOUS
           CONDUCT OR THE REQUISITE LEVEL OF INTENT ................................. 21

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alicke v. MCI Communications Corp.*, 111 F.3d 909 (D.C. Cir. 1997) .......................................... 6

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ................................................................................... 25

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2000) ............................................................................ 13

*Blackmon-Malloy v. United States Capitol Police Board*, 338 F. Supp. 2d 97 (D.D.C. 2004) ............................................................................................................................................ 6

*\*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998) ........................................................ *passim*

*Brown v. Sim*, 2005 U.S. Dist. LEXIS 35415 (D.D.C. Sept. 30, 2005) ........................................ 21

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) ...................................... 14, 15

*Chicago Lawyer's Committee for Civ. Rights Under the Law v. Craigslist*, 2006 U.S. Dist. LEXIS 82973 (N.D. Ill. Nov. 14, 2006) .................................................................... 14

*Coles v. Washington Free Weekly*, 881 F. Supp. 26 (D.D.C. 1995), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996) ..................................................................................................................... 6

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................................... 6

*Cornwell v. Robinson,* 23 F.3d 694 (2d Cir. 1994) ........................................................................ 9

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) .............................................................. 25

*Doe v. Southeastern University*, 732 F. Supp. 7 (D.D.C. 1990) .................................................... 7

*Does I through III v. District of Columbia*, 238 F. Supp. 2d 212 (D.D.C. 2002) ........................ 12

*EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621 (D.C. Cir. 1997) ............................ 4

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989) ................................................................................ 25

*Foretich v. Advance Magazine Publishers, Inc.*, 765 F. Supp. 1099 (D.D.C. 1991) ................... 25

*Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................... 18

*Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116 (D.D.C. 2005) ............................................ 8, 9

*Grigsby v. Johnson*, 1996 U.S. Dist. LEXIS 7034 (D.D.C. May 13, 1996) ............................ 9, 10

*Grunseth v. Marriott*, 872 F. Supp. 1069 (D.D.C. 1995), *aff'd*, 79 F.3d 169 (D.C. Cir. 1996) ............................................................................................................. 7

*Havoco of America, Ltd. v. Hilco, Inc.*, 750 F. Supp. 946 (D. Ill. 1990), *aff'd sub nom.*, *Havoco of America, Ltd. v. Sumitomo Corp.*, 971 F.2d 1332 (7th Cir. 1992) ............ 10-11

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) ................................................. 24-25

*Jankovic v. International Crisis Group*, 429 F. Supp. 2d 165 (D.D.C. 2006) ............................... 6

*Jin v. Ministry of State Security*, 254 F. Supp. 2d 61 (D.D.C. 2003) .............................. 6

*Kaempe v. Meyers*, 367 F.3d 958 (D.C. Cir. 2004) ......................................................... 4

*Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002) ................................................. 20

*Messina v. Fontana*, 260 F. Supp. 2d 173 (D.D.C. 2003) ............................................. 19

*Neitzke v. Williams*, 490 U.S. 319 (1989) ..................................................................... 5

*Parker v. Google, Inc.*, 442 F. Supp. 2d 492 (E.D. Pa. 2006) ................................... 12, 14

*Polsby v. Spruill*, 1997 U.S. Dist. LEXIS 11621, 25 Media L. Rep. 2259 (D.D.C. 1997), *cert. denied*, 525 U.S. 1018 (1998) ...................................... 24

*Prickett v. Infousa, Inc.*, 2006 U.S. Dist. LEXIS 21867 (E.D. Tex. Mar. 30, 2006) ................... 24

*Ramey v. Darkside Products, Inc.*, 2004 U.S. Dist. LEXIS 10107 (D.D.C. May 17, 2004) .................................................................. 14, 15, 16

*\*Rendall-Speranza v. Nassim*, 107 F.3d 913 (D.C. Cir. 1997) .......................................... 8, 9, 11

*Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998) .......................................... 6

*\*Sparshott v. Feld Entertainment, Inc.*, 89 F. Supp. 2d 1 (D.D.C. 2000) ...................................... 8

*Stevenson v. Bluhm*, 2006 U.S. Dist. LEXIS 79148 (D.D.C. Oct. 31, 2006) ............................... 21

*Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1 (D.D.C. 2001) ...................................... 9-10

*Thomas v. News World Communications*, 681 F. Supp. 55 (D.D.C. 1988) ................................... 7

*Washington Post Co. v. Keogh,* 365 F.2d 965 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967) ............................................................................................... 6

*West v. City of New York*, 1995 U.S. Dist. LEXIS 2057 (S.D.N.Y. Feb. 17, 1995) ...................... 9

*Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) .................................................... 20

*\*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) ............................. 19, 20, 21

*\*Witherspoon v. Philip Morris, Inc.*, 964 F. Supp. 455 (D.D.C. 1997) .......................... 21, 23, 24

*Winter v. Bassett*, 2003 U.S. Dist. LEXIS 26904 (M.D.N.C. Aug. 22, 2003),
    *aff'd*, 2005 U.S. App. LEXIS 27119 (4th Cir. 2005) .......................................................... 14

*\*Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir. 1997), *cert. denied,*
    524 U.S. 937 (1998) ..................................................................................................... 12, 13

## STATE CASES

*Barrett v. Fonorow*, 799 N.E.2d 916 (Ill. Ct. App. 2003) ............................................................ 14

*\*Barrett v. Rosenthal*, 146 P.3d 510 (Cal. 2006) ................................................................. *passim*

*Brink v. First Credit Resources*, 57 F. Supp. 2d 848 (D. Ariz. 1999) ...................................... 9, 11

*\*Donato v. Moldow*, 865 A.2d 711 (N.J. Super. Ct. App. Div. 2005) .................................... 13, 16

*Drejza v. Vaccaro*, 650 A.2d 1308 (D.C. 1994) ......................................................................... 13

*Duncan v. Children's National Medical Center*, 702 A.2d 207 (D.C. 1997) .............................. 23

*Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816 (Cal. Ct. App. 2002) ............................................... 12

*Howell v. New York Post Co.*, 612 N.E.2d 699 (N.Y. 1993) ...................................................... 25

*Hurvitz v. Hoefflin*, 84 Cal. App. 4th 1232 (Cal. Ct. App. 2000) ............................................... 18

*Jane Doe One v. Oliver*, 755 A.2d 1000 (Conn. Super. Ct. 2000), *aff'd*, 792 A.2d 911
    (Conn. App. Ct. 2002), *cert. denied*, 796 A.2d 556 (Conn. 2002) .................................... 14

*Jung v. Jung*, 791 A.2d 46 (D.C. 2002) ...................................................................................... 21

*King v. Kidd*, 640 A.2d 656 (D.C. 1993) ................................................................................... 23

*Kitt v. Capital Concerts, Inc.*, 742 A.2d 856 (D.C. 1999) ........................................................... 20

*Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993) ............................................. 24

*Schneider v. Amazon.com, Inc.*, 31 P.3d 37 (Wash. Ct. App. 2001) ............................................. 12

*Waldon v. Covington*, 415 A.2d 1070 (D.C. 1980) ................................................................. 21, 23

*\*Wolf v. Regardie*, 553 A.2d 1213 (D.C. 1989) ........................................................................ 18

*Vassiliades v. Garfinckel's*, 492 A.2d 580 (D.C. 1985) ........................................................... 18

## STATUTES

Communications Decency Act, 47 U.S.C. § 230 .................................................................*passim*

## RULES OF PROCEDURE

Fed. R. Civ. P. 12(b)(6) ........................................................................................................*passim*

Fed. R. Civ. P. 12(c) ................................................................................................................... 12

Fed. R. Civ. P. 15(c) ................................................................................................................. 7, 8

## MISCELLANEOUS

*Restatement (Second) of Torts* § 652D .............................................................................. 14, 17, 20

*Restatement (Second) of Torts* § 652E .............................................................................. 14, 17, 19

Ken S. Myers, *Wikimmunity:  Fitting the Communications Decency Act to Wikipedia*,
    Harv. J.L. & Tech. 170 (Fall 2006) ................................................................................... 13

Robert D. Sack, Sack on Defamation § 12.4.4 (3d ed. 2005) ....................................................... 17

Authorities upon which we chiefly rely are marked with asterisks.

Defendant Ana Marie Cox ("Cox") hereby submits this Memorandum of Points and Authorities in support of her Motion to Dismiss Plaintiff Robert Steinbuch's ("Steinbuch" or "Plaintiff") First Amended Complaint as to her for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Robert Steinbuch amended the complaint in this action to add Ana Marie Cox as a defendant – more than a year after instituting this action and two years after the acts complained of – on the ground that the initial sole defendant, Jessica Cutler ("Cutler"), had held Cox responsible for "publicizing her publicly-available blog" about her various sexual relationships. Plaintiff's Motion for Leave to File A First Amended Complaint and Motion for Leave to Add An Additional Party at 1, 2. The Court expressed its "reservations" about permitting the claims to go forward against Cox in no uncertain terms, taking note of Plaintiff's numerous allegations that the facts at issue had been widely publicized by Cutler *before* Cox wrote about them. Oct. 30, 2006 Mem. Opinion and Order at 3 ("Oct. 30 Op."). Although the Court stated that it was "troubled by plaintiff's approach to this case, and his desire to add as defendants persons connected to Ms. Cutler's blog simply because she has mentioned them in her pleading," it permitted amendment in light of the policy favoring liberal amendment. *Id*. at 5. The majority of the arguments set forth in this memorandum had not been raised at the time of the Court's ruling, and none of them were before the Court except to the extent that they were touched upon in the submissions of Steinbuch and Cutler – both of whom were seeking to shift liability to Cox.

The Court's misgivings in permitting Steinbuch to add Cox were well-placed: Steinbuch's claims are time-barred, independently barred by Section 230 and deficient as a matter of law for a number of other reasons. The Complaint fails to state a claim against Cox and should be dismissed in its entirety as to her.

As a threshold matter, there is simply no question that Steinbuch's claims against Cox are barred by the relevant statute of limitations. The Court has already correctly held that a one-year limitations period applies to all claims, and Plaintiff did not file the Amended Complaint adding Cox as a defendant (or even seek leave to do so) until more than two years after the blog posts on which he relies. While Plaintiff has attempted to salvage his claims against Cox by suggesting that they "relate back" to the filing of the original complaint in this action, Federal Rule 15 and the applicable case law make clear that "relation back" is only permitted when the omission of the party in the original pleading was a matter of misnomer or "mistake of identity," not a misjudgment or regretted strategic decision, and Steinbuch has not alleged and cannot allege any such mistake here. This issue, standing alone, warrants dismissal (Point II).

Steinbuch's claims are also barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which, as this Court previously recognized, grants a broad immunity to interactive computer services like Cox's blog from liability "for their failure to edit, withhold or restrict access to offensive material disseminated through their medium." *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998) (Friedman, J.). This provision reflects a clear Congressional choice "not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations," all of which may be held liable for publishing or distributing offensive material prepared by others. *Id.* "Interactive computer service" providers and users, like Cox, may not be held liable for the publication of such third-party content. Plaintiff would have the Court undo this distinction and eviscerate the important protection provided by Section 230. Aside from being flat wrong as a matter of law, this would have a vast chilling effect on the countless communications that pass from, to and through interactive websites every day. Section 230 bars Plaintiff's claims as to Cox. (Point III).

Steinbuch also fails to state a claim for a number of additional reasons.  As the Court itself has pointed out, his publication of private facts claim requires him to demonstrate that the defendant has given publicity to private, now public facts, but Steinbuch's own repeated allegations that Cutler had already made the matter public and published the news of her affairs on the Internet completely undermine his belated effort to point the finger at Cox.[1]  (Point IV).  Further, Steinbuch has utterly failed to state a claim for false light invasion of privacy because he has not pled that Cox had knowledge or acted in knowing disregard as to the falsity of the Washingtonienne posts.  (Point V).  His emotional distress claim likewise fails because the Court may and should rule as a matter of law that Cox's alleged conduct – blogging about a matter which he concedes was already public – does not come close to constituting the sort of "extreme and outrageous" conduct required to support such a claim, nor has Steinbuch made the requisite allegations that Cox knew of the alleged danger her blog entries could cause Steinbuch and specifically directed her behavior toward him.  (Point VI).  Here again, Steinbuch's view of the law would have dangerous and chilling repercussions:  if bloggers or any other type of broadcaster or publisher could be held liable on any of the asserted grounds for merely republishing information or commentary about a concededly public matter, the harm to the media and the public would be immense and far-reaching.  His claims fail as a matter of law for all of these reasons.

## STATEMENT OF FACTS[2]

In May 2004, Defendant Cutler was working as a staff assistant to Senator Mike DeWine of Ohio.  First Amended Complaint ("Amended Complaint" or "Am. Compl.") ¶ 4.  On May 5,

---

[1] Indeed, it was Cutler who initially hyper-linked her public blog to Cox's Wonkette blog (*see* Amended Complaint ¶¶ 48, 49).

[2] Plaintiff's allegations are taken as true solely for purposes of this motion.  *See* Point I, *infra*.

2004, Cutler created a blog entitled "Washingtonienne".  Oct. 30 Op. at 1.  As Plaintiff has emphatically and repeatedly alleged, Cutler's blog was "accessible and open to the public" via the Internet; anyone in the world could visit and read it.  Am. Compl. ¶ 18; *see also* ¶¶ 17, 19-22, 26-28, 30.  Over the next twelve days, Cutler wrote in Washingtonienne about her social and sexual activities with various men, including Steinbuch.  Oct. 30 Op. at 1.

On May 18, 2004, the website written by Cox and known as "Wonkette" (available at www.wonkette.com) "described [Washingtonienne's] contents, republished excerpts on the Wonkette web site, and linked back to Cutler's public blog."  *Id.*; Am. Compl. ¶ 51.  The Wonkette posts on that date did not identify Plaintiff by name or even – unlike Washingtonienne – by using Steinbuch's initials.[3]  Although Plaintiff also alleges that after May 18th, Cox went out drinking with Cutler (Am. Compl. ¶ 61), posed for pictures with Cutler (Am. Compl. ¶ 62), paid Cutler to write for Wonkette (Am. Compl. ¶ 66) and went on television with Cutler (Am. Compl. ¶ 67), none of these activities even remotely give rise to any claim by Plaintiff against Cox.  The May 18, 2004 blog entry or entries are the *only* conceivable basis for Wonkette's purported liability for invasion of privacy and intentional infliction of emotional distress.  This is the sum total of Plaintiff's allegations against Cox.

---

[3] It is not necessary on this motion to dismiss to consider the Wonkette posts; Steinbuch's claims against Cox should be dismissed for the many legal reasons set forth herein based just on the Amended Complaint.  However, the Court may in its discretion choose to consider the posts, even for purposes of a Rule 12(b)(6) motion, because they are documents expressly referenced and relied upon in the Amended Complaint (¶ 51) and are thus integral to the complaint.  *See Kaempe v. Meyers,* 367 F.3d 958, 965 (D.C. Cir. 2004) (documents which are referred to in complaint and integral to plaintiff's claim may be considered on motion to dismiss); *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997) (in deciding a 12(b)(6) motion to dismiss, court will consider facts alleged in the pleadings and documents attached as exhibits or incorporated by reference in the pleadings).  If the Court does read the Wonkette posts, it will see that when Cox republished the Washingtonienne posts, she carefully "sub[stituted] in other initials, on the off chance that [Cutler] used real initials and the whole thing    isn't    some    elaborate    prank."    (http://wonkette.com/politics/media/the-lost-washingtonienne-wonkette-exclusive-etc-etc-4162.php).

On May 16, 2005, Plaintiff filed his Complaint, naming Cutler as the sole defendant, and asserting invasion of privacy and intentional infliction of emotional distress claims. On July 9, 2006 – more than two full years after the Wonkette posts at issue – Plaintiff filed a motion for leave to amend his Complaint in order to add Cox as a defendant. On October 30, 2006, the court granted Plaintiff's motion and Plaintiff's First Amended Complaint (the "Amended Complaint") was filed, adding Cox as a defendant.[4]

In the Amended Complaint, Plaintiff brings three claims against both Cutler and Cox, for public disclosure of private facts, false light and intentional infliction of emotional distress. Am. Compl. ¶¶ 77-94. For the reasons discussed below, each of these claims against Cox must be dismissed for failure to state a claim upon which relief may be granted.

## ARGUMENT

## I.    MOTION TO DISMISS STANDARD

Rule 12(b)(6) permits the Court to terminate lawsuits that are fatally flawed in their legal premises and thus to spare the litigants the burdens of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Granting judgment on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is thus warranted where – as here – it appears beyond doubt, based on the allegations contained in the complaint, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Alicke v. MCI Communications Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997). Particularly close scrutiny is warranted in the context of a complaint (like Steinbuch's) alleging claims based on mere speech or publication, due to the significant First

_____

[4] The Amended Complaint was personally served on Cox on or about January 6, 2007. Cox is unaware of any earlier effort or attempt to serve her and categorically denies any suggestion (*see* Plaintiff's Court-Instructed Memorandum Regarding Status of Service of Defendant Ana Marie Cox, filed on January 5, 2007) (Docket No. 71) that she had evaded service or otherwise impeded Plaintiff from finding her address.

Amendment concerns at stake. *See, e.g., Coles v. Washington Free Weekly,* 881 F. Supp. 26, 30 (D.D.C. 1995) ("Given the threat to the first amendment posed by nonmeritorious defamation actions, it is particularly appropriate for courts to scrutinize such actions at an early stage of the proceedings to determine whether dismissal is warranted"), *aff'd,* 88 F.3d 1278 (D. C. Cir. 1996) (*citing Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966) ("In the First Amendment area, summary procedures are … essential.   For the stake here, if harassment succeeds, is free debate."), *cert. denied*, 385 U.S. 1011 (1967)).

## II.    THE CLAIMS AGAINST COX ARE TIME-BARRED

The one-year statute of limitations completely bars Plaintiff's claims, and there is no way around it.  Because Plaintiff did not file the Amended Complaint until well after the expiration of the one-year limitations period, and his claims do not "relate back" to the filing of the original Complaint, the claims are all time-barred as to Cox, and they should be dismissed for this reason alone.[5]

Plaintiff's allegation is that a Wonkette blog entry or entries on May 18, 2004 linked to Cutler's blog and republished excerpts from it.   Am. Compl. ¶ 51.  This Court has already correctly held that the one-year statute of limitations applies to both of the privacy claims as well as the intentional infliction of emotional distress claim.  Tr. of April 5, 2006 Hearing at 58-59

---

[5] The affirmative defense of statute of limitations is properly raised on a 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).  The court may dismiss on statute of limitations grounds if the complaint on its face is conclusively time-barred, and "if no reasonable person could disagree on the date" on which the cause of action accrued. *Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61, 67 (D.D.C. 2003); *see also Blackmon-Malloy v. United States Capitol Police Bd.*, 338 F. Supp. 2d 97, 101 (D.D.C. 2004) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted when the facts giving rise to the defense are apparent on the face of the complaint."); *Jankovic v. Int'l Crisis Group*, 429 F. Supp. 2d 165, 173 (D.D.C. 2006) (granting rule 12(b)(6) motion to dismiss defamation and privacy claims on statute of limitations grounds).

(*citing Doe v. Southeastern University*, 732 F. Supp. 7 (D.D.C. 1990); *Grunseth v. Marriott*, 872 F. Supp. 1069 (D.D.C. 1995), *aff'd*, 79 F.3d 169 (D.C. Cir. 1996); *Thomas v. News World Communications*, 681 F. Supp. 55 (D.D.C. 1988)).  Therefore, the claims against Cox are time-barred because the Amended Complaint was filed on October 30, 2006 – long after the one-year statute of limitations expired on May 18, 2005.

As Plaintiff apparently concedes,[6] the only means by which he can escape dismissal of his Amended Complaint on statute of limitations grounds is if he can show that the Amended Complaint relates back to the original complaint pursuant to Federal Rule of Civil Procedure 15(c), a burden he manifestly cannot meet.  Rule 15(c) delineates the circumstances under which an amended pleading is deemed to relate back to the original pleading.  It provides that the amended pleading will relate back only if:

> (1)    relation back is permitted by the law that provides the statute of limitations applicable to the action; or
>
> (2)    the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3)    the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within [120 days after the original complaint was filed,] the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c) (emphasis added).  Thus, because the Amended Complaint seeks to add Cox as an additional defendant, it will be permitted to relate back only if Plaintiff shows that: (1)

---

[6] *See* Pl.'s Motion For Leave to File a First-Amended Complaint and Motion for Leave to Add an Additional Party at 3 (filed July 9, 2006) (arguing that claims against Cox relate back to the date of the original Complaint, under Fed. R. Civ. P. 15(c)).

the claims against Cox arose out of the occurrences in the original pleading; (2) Cox received notice of the action within 120 days of the filing of the original complaint *and* she would not be prejudiced by having to defend the suit; and (3) but for a "mistake concerning the identity of Cox," she would have been named as a defendant in the original complaint.   Fed. R. Civ. 15(c)(2) & (3).   The third prong of 15(c)(3) "explicitly requires that the party to be brought in by amendment knew, or should have known that, *but for a mistake concerning the identity of the proper party*, the action would have been brought against the party.   This language presupposes that the reason for a defendant not being named was a mistake of identity."   *Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116, 119 (D.D.C. 2005) (quotation and citation omitted; emphasis added).

In this Circuit, "the word 'mistake' [in Rule 15(c)(3)] is narrowly interpreted to preclude relation back of amendments where a plaintiff was fully aware of the defendant's identity during the limitations period."   *Sparshott v. Feld Entm't, Inc.*, 89 F. Supp. 2d 1, 3 (D.D.C. 2000) (plaintiff's confusion about the affiliation between original defendant and additional defendant added in amended complaint was not a "mistake" for Rule 15(c)(3) purposes, and claims were therefore time-barred as to newly added defendant).   Indeed, the Circuit Court has made clear, in a case directly on point, that relation back is not permitted in situations like this one, involving "a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged" – in other words, where "the mistake is one of legal judgment rather than a mere misnomer."   *Rendall-Speranza v. Nassim*, 107 F.3d 913, 917-18 (D.C. Cir. 1997) (rejecting plaintiff's argument that her failure to name the individual defendant's employer as a defendant had been a "mistake" within the scope of 15(c) because plaintiff was unaware that individual defendant had acted in the scope of his employment).   The D.C. Circuit pointed out that the

Advisory Committee Notes to the Rule "speak of … an 'intended defendant,' and of an amendment pursuant to the Rule as 'a name-correcting amendment.'"  *Id*.  It further explained: "In the adversarial system of litigation the plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations runs out; if she later discovers another possible defendant, she may not, merely by invoking Rule 15(c), avoid the consequences of her earlier oversight."  *Id.* at 919.  *See also Grigsby v. Johnson*, 1996 U.S. Dist. LEXIS 7034 at *15 (D.D.C. May 13, 1996) (an amended complaint will not relate back where failure to name a defendant in the original complaint "must be considered a matter of choice, not mistake") (*quoting Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994)).[7]

There was no "mistake of identity" here, *Gipson*, 382 F. Supp. 2d at 119, nor has Plaintiff alleged as much.  Plaintiff's failure to name Cox as a defendant in the original Complaint was not because he was confused as to Cox's identity; he simply chose not to include her as a defendant.  Indeed, he knew exactly who Cox was and understood the precise nature of her involvement in publicizing Cutler's blog from – at the very latest – the time he filed his original Complaint in May 2005, as the allegations involving her are essentially the same in the two versions of the complaint.  *See* Complaint at ¶¶ 16-24 and Am. Compl. at ¶¶ 51-68; *see Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 7 (D.D.C. 2001) (Friedman, J.) (pursuant to Rule 15(c)(3), denying motion for leave to add defendant outside of limitations period where plaintiff "had sufficient knowledge" of defendant's behavior well before the expiration of the limitations

---

[7] *See also Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 856 (D. Ariz. 1999) (relation back is "never allowed" where "the plaintiff is aware of the potential defendant's identity at the time the original complaint is filed but is uncertain whether the potential defendant may be found liable"); *West v. City of New York*, 1995 U.S. Dist. LEXIS 2057 at *13 (S.D.N.Y. Feb. 17, 1995) ("the fact that [plaintiff] did not know the full extent of [proposed defendant's] liability does not permit relation back where he knew of [proposed defendant's] identity but failed to ascertain the scope of his involvement before the statute of limitations expired").

period).  In his Motion for Leave to Amend, Plaintiff did not even attempt to allege any mistake, nor could he; his stated reason for seeking to amend the complaint to include Cox is that Cutler was "attempt[ing] to shift responsibility for publicizing" the blog to Cox, and therefore Plaintiff "needs to add as a defendant Cox."  Motion for Leave to Amend at 2.  Nor did Plaintiff address anywhere in his Motion to Amend the requirement of Rule 15(c) that there be a mistake regarding the identity of the party.[8]  The Amended Complaint cannot relate back with regard to the claims against Cox because there was no mistake of identity; naming Cutler as the only defendant was "a matter of choice, not mistake," *Grigsby*, 1996 U.S. Dist. LEXIS 7034 at *15, which Plaintiff now regrets.[9]

---

[8] Although Plaintiff quoted the text of Rule 15(c) in seeking leave to amend, *see* n.4 *supra*, he did not explain how he meets its requirements – particularly, the requirement in Rule 15(c)(3)(B) that Cox "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [her]."  He relied solely on the fact that Cox knew of the lawsuit and "invited to be added to the case."  Motion for Leave to Amend at 3.  While, even if this were true, it would not satisfy the "mistake" requirement, it should be noted that Steinbuch's characterization of Cox's statement is patently false:  Cox's obviously joking "invitation" to litigation in a blog posting in May 2005 was based on statements in her book "Dog Days" having nothing whatsoever to do with this matter, and not on Steinbuch's lawsuit.  *See*  http://wonkette.com/politics/media/finally-someone-pays-attention-to-the-washingtonienne-103791.php (posted May 17, 2005).  Regardless of this distortion, Steinbuch has failed to satisfy this "mistake" requirement.

[9] Nor does Plaintiff comply with the second prong of the requirement: that the notice given is such that no prejudice occurs to the new defendant.  While there is no question that Cox was aware of the lawsuit very shortly after it was filed, as she made a reference to the suit on Wonkette on May 17, 2005, the Complaint did not alert Cox that Plaintiff was considering adding *her* as a defendant.  As one district court  has explained, where the new defendant had notice of the lawsuit, but did not have notice that it would be added as a defendant, relation back would not be proper because "knowledge of an existing lawsuit cannot be equated with notice that one will be named as a defendant in that suit."  *Havoco of America, Ltd. v. Hilco, Inc.*, 750 F. Supp. 946, 953 (D. Ill. 1990) (disallowing relation back even though new defendant had been named as a non-party co-conspirator in the original complaint), *aff'd sub nom.*, *Havoco of America, Ltd. v. Sumitomo Corp.*, 971 F.2d 1332 (7th Cir. 1992).  Here, Cox had every reason to believe that she would *not* be a defendant in Steinbuch's lawsuit, as he knew who she was, where to find her, referenced her in the original Complaint, and discussed the need to take discovery from her (*see* Mem. in Opp. to Def.'s Motion to Dismiss at 15 (referring to need to take discovery from Cox)) – yet chose not to seek leave to add her as a defendant until well over two

Statutes of limitations allow potential defendants the certainty that they will not be subject to a lawsuit, and Cox is entitled to that certainty. *See Rendall-Speranza*, 107 F.3d at 918 (a "potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose--unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were… [otherwise he] would not be sure that he could rely upon the repose promised by the statute of limitations until all litigation was over"); *Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 856 (D. Ariz. 1999) (the "defendant deserves the protection of the statute of limitations because he or she may believe the plaintiff made a conscious decision not to include him or her").  On the face of the complaint, the claims in the Amended Complaint against Cox are time-barred, and the action must be dismissed against her in its entirety for that reason alone.

## III.  SECTION 230 OF THE COMMUNICATIONS DECENCY ACT BARS PLAINTIFF'S CLAIMS AGAINST COX

The Amended Complaint also must be dismissed as to Cox for the independent reason that Plaintiff's claims are barred by Section 230 of the Communications Decency Act, which immunizes interactive computer services like Cox's blog from liability "for their failure to edit, withhold or restrict access to offensive material disseminated through their medium." *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998) (Friedman, J.).  Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  This law preempts any state law to the contrary: "[n]o cause of action may be imposed under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).  In

---

years after the events in question occurred.  It would be extremely prejudicial to add her as a defendant at this late stage.

enacting Section 230, Congress sought to deter "the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium." *Blumenthal*, 992 F. Supp. at 50 (*quoting Zeran v. American Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998)). "The specter of tort liability in an area of such prolific speech would have an obvious chilling effect…Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect." *Zeran*, 129 F.3d at 330.

To determine whether Cox escapes liability under Section 230, the court must apply a three-pronged test:  (1) Cox must be the "provider or user" of an "interactive computer service;" (2) the cause of action from which Cox is claiming immunity must treat Cox as the "publisher or speaker" of the information; and (3) the "information" must have been "provided by another content provider."  *See, e.g., Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 830 (Cal. Ct. App. 2002); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 39 (Wash. Ct. App. 2001).  Whether a claim is barred by Section 230 is a question of law, properly decided on a motion to dismiss.  *E.g., Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) (granting 12(b)(6) motion to dismiss claim based on Section 230); *Chicago Lawyer's Committee for Civ. Rights Under the Law v. Craigslist*, 2006 U.S. Dist. LEXIS 82973 at *48 (N.D. Ill. Nov. 14, 2006) (granting 12(c) motion).[10]

The first prong "presents a low bar."  Ken S. Myers, *Wikimmunity: Fitting the Communications Decency Act to Wikipedia*, Harv. J.L. & Tech. 170, 179 (Fall 2006).  Cox is unquestionably a "user" of an "interactive computer service"[11] within the meaning of Section

---

[10] The legal standard is substantially the same for 12(b)(6) motions and 12(c) motions.  *Does I through III v. District of Columbia*, 238 F. Supp. 2d 212, 216 (D.D.C. 2002) (citations omitted).

[11] Congress defined "interactive computer service" as "any information service, system, or

230.  *See, e.g., Batzel v. Smith,* 333 F.3d 1018, 1030 (9th Cir. 2000) (the question of whether a website fits the definition of an "interactive computer service" need not be answered because the "language of § 230 (c)(1) confers immunity not just on 'providers' of such services, but also on 'users' of such services.")  The cases establish that she falls into this category merely by using an internet service provider ("ISP") to post on Wonkette.  For purposes of the CDA, a "user" is "anyone using an interactive computer service."  *Barrett v. Rosenthal*, 146 P.3d 510, 528 (Cal. 2006) (defendant who used Internet to gain access to newsgroups where she posted third party's article was a "user" under CDA); *see also Donato v. Moldow*, 865 A.2d 711, 718 (N.J. Super. Ct. App. Div. 2005) (first prong is satisfied under either of two rationales: as the "provider" of the website, or as the "user" of the ISP).

The second prong of the test requires that the cause of action from which Cox is claiming immunity must treat Cox as the "publisher or speaker" of the information.  The causes of action covered by the second prong are those that "would place a computer service provider in a publisher's role" by seeking to "hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content."  *Zeran*, 129 F.3d at 330.  In this case, the claims against Cox clearly treat her as the "publisher or speaker" of information about Steinbuch taken from Washingtonienne.  The torts of invasion of privacy for publication of private facts and false light can only be brought against defendants who are deemed to have "published" the information.  *See Restatement (Second) of Torts* §§ 652D, E (key element of invasion of privacy tort is that defendant gave "publicity" to harmful information by "communicating it to the public at large"); Oct. 30 Op. at 4.  Because

---

access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).

publication is a necessary element of these invasion of privacy torts, any privacy claims that seek to hold Cox liable for injury resulting from content created or developed by Cutler inherently treat her as a "publisher or speaker" of that content for purposes of Section 230. *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1121-22 (9th Cir. 2003) (dismissing claim of invasion of privacy pursuant to Section 230); *Parker*, 422 F. Supp. 2d at 501 (same); *Prickett v. Infousa, Inc.*, 2006 U.S. Dist. LEXIS 21867 at *19 (E.D. Tex. Mar. 30, 2006) (dismissing intrusion on seclusion and public disclosure of private facts privacy claims pursuant to Section 230); *Barrett v. Fonorow*, 799 N.E.2d 916, 920 (Ill. Ct. App. 2003) (dismissing claim of false light invasion of privacy pursuant to Section 230). Here, of course, Cox's linking to, describing and republication of the Washingtonienne posts is the basis of asserted liability. Similarly, Plaintiff's intentional infliction of emotional distress claim arises out of the same Wonkette blog entries and thus also treats Cox as a "publisher or speaker" of Cutler's content satisfying the second requirement of Section 230 immunity. *See, e.g., Ramey v. Darkside Prods., Inc.*, 2004 U.S. Dist. LEXIS 10107 at *21 (D.D.C. May 17, 2004) (applying Section 230 to dismiss intentional infliction of emotional distress claim); *Jane Doe One v. Oliver*, 755 A.2d 1000, 1003-04 (Conn. Super. Ct. 2000) (same), *aff'd*, 792 A.2d 911 (Conn. App. Ct. 2002), *cert. denied*, 796 A.2d 556 (Conn. 2002); *Winter v. Bassett*, 2003 U.S. Dist. LEXIS 26904 at *26 (M.D.N.C. Aug. 22, 2003) (same), *aff'd*, 2005 U.S. App. LEXIS 27119 (4th Cir. 2005).

Finally, the third prong requires that the "information" must have been "provided by another content provider." Congress defined "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(e)(2). Courts treat Section 230 immunity "as quite robust, adopting a relatively expansive definition of

'interactive computer service' and a relatively restrictive definition of 'information content provider.'" *Ramey*, 2004 U.S. Dist. LEXIS 10107 at *19 (*quoting Carafano*, 339 F.3d at 1123). Furthermore, the immunity applies even where the defendant performs "an active, even aggressive role in making available content prepared by others." *Blumenthal*, 992 F. Supp. at 52; *see also Barrett v. Rosenthal*, 146 P.3d at 528. The California Supreme Court recently addressed a situation analogous to the present one, in which an individual defendant posted a copy of another defendant's allegedly defamatory article on two newsgroups. *Barrett v. Rosenthal*, 146 P.3d at 514. Plaintiff argued that "those who actively post or republish information," as opposed to more passive users, are not protected by Section 230. *Id*. at 527. The Court rejected any such distinction between "active" and "passive" Internet use, holding that Section 230 exempted the defendant's republication of the article regardless of where she fell on this spectrum:

> [W]e reject the dissent's view [in *Batzel*] that actively selected and republished information is no longer "information provided by another information content provider under section 230(c)(1). All republications involve a 'transformation' in some sense. A user who actively selects and posts material based on its content fits well within the traditional role of "publisher." Congress has exempted that role from liability.

*Id*. at 528.

Here, it is undisputed that the Washingtonienne blog which contained all of the material to which Plaintiff objects was created by Cutler, and not by Cox. There is no allegation that Cox "had any role in creating or developing any of the information" about Steinbuch and therefore she cannot be considered an "information content provider" with respect to the information. *Blumenthal*, 992 F. Supp. at 50. *See also Ramey*, 2004 U.S. Dist. LEXIS 10107 at *20 ("because Defendant did no more than select and make minor alterations to [the content], it cannot, as a matter of law, be considered the content provider of the advertisement for purposes of § 230"). The third prong is thus clearly satisfied.

Plaintiff alleges only that Cox "described the Cutler blog's contents, republished excerpts on the Wonkette web site, and linked back to Cutler's public blog."  Am. Compl. ¶ 51.  These actions are well within the protection provided by Section 230, as they are "a publisher's traditional editorial functions, namely, whether to publish, withdraw, postpone or alter content provided by others" and are "the very conduct Congress chose to immunize by § 230."  *Donato*, 865 A.2d at 726 (finding § 230 immunity where complaint alleged that website operator "actively participated in selective editing, deletion and re-writing of anonymously posted messages").  Plaintiff is attempting to hold Cox to the liability standards applied to other (non-Internet) publishers and distributors, yet as this court has recognized, Congress has made a different policy choice with regard to internet providers and users – even those who take an "active" or "aggressive" role in making third-party content available on line.  *Blumenthal*, 992 F. Supp. at 51, 52; *see also Barrett v. Rosenthal*, 146 P.3d at 528 (user who "actively selected and republished information … based on its content" is immune from suit under Section 230).  Permitting plaintiff to make such a claim would have a massive impact on the blogosphere, and indeed on the entire Internet:  several courts have recognized the vast chilling effect that exposing providers and users to such liability could have on online speech.  *See Blumenthal*, 992 F. Supp. at 52; *Barrett v. Rosenthal*, 146 P.3d at 525 (listing cases).  The statutory mandate is clear:  Cox is immune from suit.

## IV.   THE PRIVATE FACTS CLAIM MUST BE DISMISSED BECAUSE THE ALLEGEDLY "PRIVATE" FACTS WERE ALREADY PUBLIC

Even taking all of Plaintiff's allegations as true, claim for public disclosure of private facts must be dismissed because the allegedly "private facts" were made public before Cox blogged about them.  As this Court has stated, Plaintiff's public disclosure of private facts claim "requires him to demonstrate that the defendant has 'given publicity' to the matter in question."

Oct. 30 Op. at 3 (*citing Restatement (Second) of Torts* §§ 652D; 652E).  Yet again and again, as the Court has also noted, Plaintiff has conceded that it was *Cutler* who "alone placed information about Mr. Steinbuch on a blog that is described repeatedly as being 'public,' 'publicly available,' and otherwise generally accessible to the public to read."  *Id.* at 4 (*citing* Am. Compl. ¶¶ 17-19, 22, 26, 30, 31, 34, 37, 39, 40-44, 46, 48, 49).  As Steinbuch pleads it, Cutler not only made her blog "publicly available" on the Internet (Am. Compl. ¶ 17) but took various steps to tell others (who then told others) about it (*id.* ¶¶ 26-28, 31, 49-50) with the intent and effect of reaching as broad of an audience as possible (*id.* ¶¶ 32, 34, 36).  *See also* Pl.'s Mem. in Opp. to Def.'s Motion to Dismiss (filed Sept. 15, 2005) at 18 ("Cox did not repeat the private facts that Cutler placed on her private blog … Cox said 'look over there, see what private facts Cutler is actively disclosing.'").  Cox's reference to and/or repetition of some of the very same facts already made public cannot support an invasion of privacy claim for publication of private facts.[12]

In short, Cox's actions cannot constitute a private facts claim because Plaintiff's privacy had already been invaded.  *See* Robert D. Sack, Sack on Defamation § 12.4.4 (3d ed. 2005) (no claim where "the facts in question were already known in the community"); *Restatement (Second) of Torts* § 652D cmt. c ("merely giving further publicity to information about the plaintiff which is already public" does not support a claim); *Wolf v. Regardie*, 553 A.2d 1213, 1221 (D.C. 1989) ("it is widely recognized that the interests in privacy fade when the information published already appears on the public record") (citations and internal quotations omitted).

---

[12] As the Court is aware, whether and to what extent Steinbuch publicized these matters – which he may have done before the Wonkette posts – is also an area of much dispute.  Should the case against Cox go forward, it will be necessary to take discovery on these issues.

Courts have frequently held that publication on the Internet constitutes "publicity" with respect to private facts claims. *See, e.g., Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1145 (S.D. Cal. 2005) (no privacy claim where photos had been posted on the Internet); *Hurvitz v. Hoefflin*, 84 Cal. App. 4th 1232, 1245 (Cal. Ct. App. 2000) ("there can be no privacy with respect to" reports that are available on the Internet). The District of Columbia Court of Appeals has likewise held that publication over other forms of mass media satisfies this requirement. *Wolf,* 553 A.2d at 1219, 1221 & n.14 (matters covered by local or regional newspapers or periodicals may not be considered private); *Vassiliades v. Garfinckel's*, 492 A.2d 580, 587 (D.C. 1985) ("'any broadcast over the radio … is sufficient to give publicity' to the private life of a person) (*quoting Restatement*).

Moreover, Plaintiff has repeatedly acknowledged as much, arguing, with respect to his claims against Cutler: "Placing something on the Internet, without any limitations in access such as password, constitutes widespread publicity. … If placing data on the Internet doesn't constitute publicity, what does?" (Pl.'s Mem. in Opp. to Def's Motion to Dismiss at 14). He has further submitted that "it is assumed that if the defendant uses a medium that is capable of widespread dissemination, publicity is satisfied. … If one broadcasts something on TV, but only 3 people tune in, it's still publicity." *Id.* at 15. Because the information in Cutler's Washingtonienne blog was globally disseminated before May 18, 2005, when Cox linked to it, the claim for publication of private facts must be dismissed for failure to state a claim upon which relief may be granted.

## V.  THE FALSE LIGHT CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF DID NOT ALLEGE THAT COX HAD KNOWLEDGE OR RECKLESS DISREGARD AS TO THE FALSITY OF THE WASHINGTONIENNE POSTS

The false light claim also fails. To plead a claim for false light invasion of privacy, a plaintiff must allege that "(a) the false light in which the other was placed would be highly

offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *White v. Fraternal Order of Police*, 909 F.2d 512, 522 (D.C. Cir. 1990) (*quoting Restatement (Second) of Torts* § 652E). While the requirements of notice pleading are not onerous, they do require Plaintiff to "allege[] the elements of a cause of action." *Messina v. Fontana*, 260 F. Supp. 2d 173, 177 (D.D.C. 2003) (allowing false light claim to move forward where Plaintiff alleged that the statements were false and that the defendants published the statements with malice). Plaintiff's Amended Complaint utterly fails to allege these elements.

The sum total of Plaintiff's allegations with respect to the false light claim are as follows:

79.    Defendants' actions constitute false light.

\*\*\*

81.    Defendants placed Plaintiff in a false light, subjecting Plaintiff to severe emotional distress, humiliation, embarrassment, anguish and other damages.

\*\*\*

83.    Other private and personal facts were scandalized in Cutler's public blog, the Washingtonienne, to attract more attention; For example, Plaintiff's response to Cutlers question "am I too lazy in bed?" of "I don't mind passive" was presented as "*he told me that he likes submissive women.*"

84.    Cutler's X-rated blog contained wholly apocryphal (false) statements about Plaintiff.

Nowhere in his Amended Complaint does Plaintiff allege the requisite state-of-mind requirement as to Cox: that she "had knowledge of" or "acted in reckless disregard" of the falsity of any of the republished Washingtonienne material. Plaintiff made no allegation whatsoever as to Cox's state of mind, and the claim must be dismissed for that reason. *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623-24 (D.C. Cir. 2001) (court will assume falsity in deciding 12(b)(6) motion if

"complaint alleges the falsity of any express or implied statements [and defendants'] knowledge of their falsity or reckless disregard for their truth," but not if "plaintiff has failed to allege all the material elements of his cause of action"). Even if the allegations in the Amended Complaint were sufficient as to Cutler, there is no reading of the Amended Complaint in which Plaintiff could be said to have alleged that Cox knew or recklessly disregarded that the Blog was false.

Nor has Plaintiff met the other requirements of this tort. Initially, he alleges as he must that the litany of claims supporting his private facts claim are *true*. *See* Am. Compl. ¶ 82; *Restatement (Second) of Torts* § 625D (publicity given to private life claim involves "damages for publicity given to <u>true</u> statements of fact") (emphasis added). It is difficult to see what false statements, if any, remains to support a false light claim against Cox, as Plaintiff has failed to identify any. Am. Compl. ¶ 84 (failing to identify any specific false statements). *See White*, 909 F.3d at 522 (allowing false light claim to survive 12(b)(6) motion where plaintiff specifically asserted the false impression defendant's actions created). In addition, even though the false light claim survived Cutler's motion to dismiss, it is impossible to identify any utterances which are "highly offensive" but at the same time not "substantially true." *See Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 40 (D.D.C. 2002) (*citing Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859 (D.C. 1999)) (false light claim must be dismissed where the statements, even if false, would not be "highly offensive to a reasonable person"); *White*, 909 F.2d at 526 (upholding dismissal of false light claim where "the picture created by the articles was substantially true"). The instant motion to dismiss should be granted with prejudice with respect to the false light claim because – in addition to being barred by the statute of limitations and Section 230 – the Amended Complaint alleges no false facts, the disclosure of which would be highly offensive, that Cox knew or recklessly disregarded.

## VI.  THE EMOTIONAL DISTRESS CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF HAS NOT ALLEGED EITHER OUTRAGEOUS CONDUCT OR THE REQUISITE LEVEL OF INTENT

Plaintiff has failed to state a claim for intentional infliction of emotional distress.  "To establish a claim for intentional infliction of emotional distress, a plaintiff must prove that the defendant engaged in:  (1) extreme and outrageous conduct that (2) intentionally or recklessly caused (3) severe emotional distress to another."  *Jung v. Jung*, 791 A.2d 46, 50 (D.C. 2002). With regard to the elements of outrageousness and intent, the court must initially decide whether the evidence, viewed in the light most favorable to plaintiff, reasonably indicates outrageous conduct or intent.  *Waldon v. Covington*, 415 A.2d 1070, 1078 (D.C. 1980).  If the complaint, on its face, does not support a claim for intentional infliction of emotional distress, the claim may and should be dismissed on a Rule 12(b)(6) motion.  *Witherspoon v. Philip Morris, Inc.*, 964 F. Supp. 455, 463 (D.D.C. 1997) (granting 12(b)(6) motion to dismiss where "even if Defendant's activity could be considered outrageous, Plaintiff has failed to plead that Defendant specifically intended to cause harm, emotional or otherwise, to the Plaintiff"); *Stevenson v. Bluhm*, 2006 U.S. Dist. LEXIS 79148 at *8 (D.D.C. Oct. 31, 2006) (Friedman, J.) (granting 12(b)(6) motion to dismiss claim for intentional infliction of emotional distress where allegations did "not rise to the level of outrageousness necessary to support a claim"); *Brown v. Sim*, 2005 U.S. Dist. LEXIS 35415 at *15 (D.D.C. Sept. 30, 2005) (Friedman, J.) (dismissing intentional infliction of emotional distress claim on 12(b)(6) motion and noting that "outrageousness" standard is "an extremely difficult standard to meet"); *Duncan v. Children's National Medical Center*, 702 A.2d 207, 212 (D.C. 1997) (dismissing intentional infliction of emotional distress claim on 12(b)(6) motion where defendant's alleged conduct was not sufficiently "outrageous" as a matter of law). Here, the complaint does not allege any conduct by Cox that is either outrageous or intentional, and the court should dismiss the claim.

Plaintiff's Amended Complaint does not point to any "extreme and outrageous conduct" by Cox. The conduct on Cox's part of which Plaintiff complains is that her blog republished, described and linked to Cutler's (Am. Compl. ¶ 54).[13] While this court allowed Plaintiff's emotional distress claim to survive Cutler's motion to dismiss, finding that Plaintiff had alleged extreme and outrageous conduct on Cutler's part, there is a vast difference between Cutler's alleged actions and Cox's alleged actions. Cutler explicitly described the sexual encounters she had with Plaintiff on her publicly accessible blog. Cox, on the other hand, is merely alleged to have described, linked to and excerpted Cutler's already public account (Am. Compl. ¶ 51), as countless blogs routinely do in reporting, commenting or just gossiping about content or events of interest – and indeed, as publishers and broadcasters of every medium do on a daily basis around the world. The content of Cutler's blog – describing sexual relationships she was having with more powerful Capitol Hill figures – was of obvious interest to the audience of Wonkette, a blog about politics in Washington, D.C., as apparently it was to those of *The Washington Post*, *The New York Times*, CNN and many other publications and television broadcasts around the world (Am. Compl. ¶ 58). While there may be an issue as to Cutler's conduct, Cox's acts – simply blogging about a scandal – cannot possibly constitute "outrageous or extreme" behavior.

The District of Columbia Court of Appeals has emphasized that extreme and outrageous conduct is a requirement that "is not an easy one to meet." *Drejza v. Vaccaro*, 650 A.2d 1308,

---

[13] As noted above, see fn 3 supra, when Cox republished the Washingtonienne posts, she carefully "sub[stituted] in other initials, on the off chance that [Cutler] used real initials and the whole thing isn't some elaborate prank." (http://wonkette.com/politics/media/the-lost-washingtonienne-wonkette-exclusive-etc-etc-4162.php).

Plaintiff also alleges that Cox went out drinking with Cutler (Am. Compl. ¶ 61), posed for pictures with Cutler (Am. Compl. ¶ 62), paid Cutler to write for Wonkette (Am. Compl. ¶ 66), and went on television with Cutler (Am. Compl. ¶ 67). It is not clear what, if anything, about these actions constitutes "outrageous" conduct calculated to cause emotional distress to Plaintiff. None of them would be sufficiently "outrageous" to support such a claim in any event.

1312 (D.C. 1994).  Intentional infliction of emotional distress liability attaches "only when the conduct goes beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community." *Waldon*, 415 A.2d at 1076. The court must consider "the specific context in which the conduct took place, for in determining whether conduct is extreme or outrageous, it should not be considered in a sterile setting, detached from the surroundings in which it occurred. … The context consists of the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place." *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993) (quotations and citation omitted).  Again, Cox is alleged only to have linked to and excerpted a blog that was already in public existence and accessible to anyone in the world.  This could hardly be considered "atrocious" or "intolerable," any more than the reports about the Blog in "mass media outlets" alleged by Steinbuch could be considered atrocious or intolerable.  Am. Compl. ¶ 58.  Cox's actions as a political blogger, as a matter of law, do not rise to the level of "extreme and outrageous" conduct required to state a claim, and the intentional infliction of emotional distress claim must be dismissed against her.

Nor has Steinbuch sufficiently alleged that Cox's behavior was "intentional or reckless." The "tort of intentional infliction of emotional distress requires a high standard of intent, that is, the intent must be to actually cause emotional harm and it must be specifically directed toward the person complaining of emotional harm." *Witherspoon*, 964 F. Supp. at 463 ("the intent requirement implies that a defendant must both know of the danger and know the danger would affect a particular plaintiff").  There is no allegation in the Amended Complaint that Cox knew of or directed her behavior toward Plaintiff – or even that she knew Plaintiff's identity on May 18, 2004, when she linked to the Blog.  *See Polsby v. Spruill*, 1997 U.S. Dist. LEXIS 11621, 25 Media L. Rep. 2259, 2267 (D.D.C. 1997) (intentionality requirement cannot be met

where "the plaintiff has provided no basis for the belief that the defendant knew the plaintiff at all"), *cert. denied*, 525 U.S. 1018 (1998). In *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993), cited favorably in *Witherspoon*, even defendant's knowledge that "its misconduct was almost certain to cause severe emotional distress to any person who might foreseeably consume the water and discover the facts" was not enough to state a claim for intentional infliction; the defendant had to "*actually kn[o]w of these particular plaintiffs*" and know that the particular plaintiffs would almost certainly suffer emotional distress. *Id.* at 820 (emphasis added). Again, it is important here to distinguish Cox's alleged behavior from Cutler's. Cutler obviously knew Plaintiff and his identity, while Cox is nowhere alleged to have had this information or personal contact, and therefore Cox's behavior cannot have been directed toward him.

Finally, all of Plaintiff's claims against Cox arise out of her blog entries republishing the Washingtonienne posts. Yet it is critical to bear in mind that even though Steinbuch manages to avoid asserting a defamation claim, he may not avoid the First Amendment. *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988) (limitations on defamation claim apply equally to claim for intentional infliction of emotional distress arising solely from allegedly injurious publication); *Foretich v. Advance Magazine Publishers, Inc.*, 765 F. Supp. 1099, 1104 (D.D.C. 1991) (plaintiffs may not invoke other torts as a means of "end-running . . . requirements of defamation law"). Courts have generally been extremely reluctant to punish the mere publication of lawfully acquired information, *Bartnicki v. Vopper*, 532 U.S. 514, 527-29 (2001); *Florida Star v. B.J.F.*, 491 U.S. 524 (1989); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975), and specifically leery of emotional distress claims in this context, in light of the important First Amendment interests at stake, even when the content may be less than edifying. *See Falwell*,

*supra* (no damages for intentional infliction of emotional distress based on parody advertisement in *Hustler* magazine that quoted from "interview" with Falwell puporting to describe Falwell's sexual experience with his mother in an outhouse); *Howell v. New York Post Co.*, 612 N.E.2d 699, 704-05 (N.Y. 1993) (affirming motion to dismiss intentional infliction and privacy claims based on newspaper's publication of embarrassing photograph).   In view of these First Amendment concerns – or even independently of them – the Court should dismiss Plaintiff's claim for intentional infliction of emotional distress because Cox's behavior was neither intentional nor outrageous.

## **CONCLUSION**

For the foregoing reasons, Defendant Cox respectfully requests that the court grant her motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6), and dismiss the First Amended Complaint with prejudice against Defendant Ana Marie Cox.

Dated this 26th day of January, 2007.

Respectfully submitted,

_____/s/   Laura R. Handman_____
Laura R. Handman (D.C. Bar No. 444386)
Amber L. Husbands (D.C. Bar No. 481565)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600
(202) 508 6699 fax

James Rosenfeld (*pro hac vice* application
   pending)
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, N.Y. 10019
(212) 489-8230
(212) 489-8340 fax

25

Charles R. Both (D.C. Bar No. 42424)
Law Offices of Charles R. Both
1666 Connecticut Avenue
Suite 500
Washington, D.C. 20009
(202) 833-9060
(202) 463-6686 (fax)

*Attorneys for Defendant Ana Marie Cox*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2007, I caused the foregoing to be served electronically on counsel of record by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF).


_____/s/ Amber L. Husbands_____
Amber L. Husbands