## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Steinbuch | : | 1:05-CV-970 (PLF) (JMF) |
| Plaintiff, | : | Judge Paul L. Friedman |
| | : | Magistrate Judge John M. |
| -v- | : | Facciola |
| | : | |
| | : | |
| | : | |
| Cutler and Cox | : | |
| Defendants. | : | |

### PLAINTIFF'S RESPONSE TO COX'S MOTION TO DISMISS

**I.  Plaintiff's Claims Against Cox Are Not Time-Barred Because They Relate Back to the Occurrences Set Forth in His Original Complaint**

Plaintiff is entitled to add Cox as a defendant in this lawsuit because the claims he asserts against her in his Amended Complaint relate back to the occurrences set forth in his original Complaint.  Under Fed. R. Civ. P. 15(c), an amended pleading naming a new party relates back to the original pleading when:

> (1) the claims in the amended pleading arise out of the "conduct, transaction, or occurrence" set forth in the original pleading;
>
> (2) the party to be brought in by amendment received notice of the action within 120 days of its institution such that the party will not be prejudiced in maintaining her defense on the merits; and
>
> (3) that party knew, or should have known, that the action would have been brought against the party but for Plaintiff's mistake concerning identity.

*Arthur v. Maersk, Inc.,* 434 F.3d 196, 203 (3d Cir. 2006); *Alberts v. Arthur J. Gallagher & Co.*, 341 B.R. 91, 97 (Bankr. D.D.C. 2006).  Accordingly, this Court should recognize Cox as a defendant in this lawsuit because (1) Plaintiff's claims against Cox in the Amended Complaint arise out of occurrences set forth in the original pleading, (2) Cox received notice of the action within 120 days of the filing

Dockets.Justia.com

of the original complaint such that she will not be prejudiced by defending her actions, and (3) Cox knew or should have known that but for Plaintiff's mistake concerning her identity, he would have named her as a defendant in the original Complaint.

### A. Plaintiff's claims against Cox in the Amended Complaint arose out of occurrences in the original Pleading

Plaintiff's amended complaint indisputably satisfies the first requirement of Rule 15(c)(3) because it simply names Cox as the newly-added defendant without altering the underlying causes of action or occurrences stated in the original complaint. Indeed, Cox concedes this point in her Motion to Dismiss by admitting that Plaintiff's assertions against her are "essentially the same in the two versions of the complaint." *See* Def.'s Motion to Dismiss at 9.

### B. Cox received notice of the Action within 120 days of the filing of the original Complaint such that she will not be prejudiced by defending herself of her actions

Cox admits she was aware of this lawsuit the very day after Plaintiff filed his original Complaint. *See* Cox's Motion to Dismiss at 10. Indeed, Cox apparently had also read Plaintiff's original Complaint by this time[1] throughout which Plaintiff laid out Cox's involvement in Cutler's Washingtonienne blog enterprise, specifically referencing her there on more than ten occasions. Cox, therefore, knew from the very beginning, in the original Complaint, that Plaintiff asserted that she was intimately involved with the events of the Washingtonienne blog. *See*, *Id.* at ¶ 21. Moreover, Plaintiff repeatedly raised issue with Cox's relationship with Cutler throughout his

---

[1] On May 17, 2005, the day after the original Complaint was filed, Cox informed her blog readers, "We've just received a copy of the suit filed by "RS" (aka Robert Steinbuch) against Jessica Cutler. The bad news? We are mentioned in it." *See* http://wonkette.com/politics/media/washingtonienne-suit-the-nasty-bits-103797.php.

2

original Complaint. *Id.* at ¶ 21 (Cox went out on a late-night drinking spree with Cutler, offered Cutler a place to sleep that night at her home in Arlington, Virginia, and later posed for suggestive photos with Cutler that Cox put on—and later removed from—her website); *id.* at ¶ 22 ("Cox hired Cutler to write for her website."); *id.* at ¶ 23 (Cox and Cutler went on Washington, DC Fox television together); *id.* at ¶ 24 (Cox and Cutler discussed posing jointly for *Playboy Magazine*).

Still, Cox denies in her Motion to Dismiss Plaintiff's Amended Complaint that she had any idea Plaintiff intended to name her as a defendant in this lawsuit. She did. On May 17, 2005, the day after the original Complaint was filed, Cox informed her blog readers, "We've just received a copy of the suit filed by "RS" (aka Robert Steinbuch) against Jessica Cutler. The bad news? We are mentioned in it."[2] What could be so bad about just getting news of being named in this lawsuit if Cox truly took Plaintiff's assertions to mean she had been *cleared* of all liability? Plaintiff's Complaint came as bad news to her because she knew it meant she would be called on to defend her actions. *See In re Integrated Resources Real Estate Ltd.*, 815 F. Supp. 620, 644 (S.D.N.Y. 1993) ("As long as the original complaint gives the defendant adequate notice, an amendment relating back is proper even if it exposes defendants to greater damages").

Plaintiff's original Complaint was not the only notice during the 120-day window that should have alerted Cox she would be required to provide a defense. *See* Pl.'s Mem. in Opp. to Def.'s Motion to Dismiss (Doc. #7) at 22 ("Cox may be liable for certain behavior."). Moreover, Cox had actual knowledge of these portions of the proceedings, as she has made it her ritual since Plaintiff filed his original Complaint

---

[2]   http://wonkette.com/politics/media/washingtonienne-suit-the-nasty-bits-103797.php.

to routinely update Wonkette readers with her perspective on advancements in the lawsuit.  *See* http://wonkette.com/search/cutler/bydate/?startIndex=60.  Neither will Cox be prejudiced by defending her actions in this lawsuit as she has been on notice both that one of the parties might implead her, *see id.* at 22 ("Of course, if Cutler . . . believes Cox responsible, she should implead her here.") and that discovery on her would be sought.  *See id.* at 15 ("Discovery of Ana Marie Cox will undoubtedly shed some light on this factual question.").  *See Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997) (The purpose of Rule 15(c) is "to avoid the harsh consequences of a mistake that is neither prejudicial nor a surprise to the misnamed party.").  Cox has not explained how she will be prejudiced in any way.

    **C.**    **Cox knew or should have known that but for the mistake concerning her identity, Plaintiff would have brought action against her.**

"The 'mistake' condition [of Rule 15(c)] does not isolate a specific type or form of error in identifying parties." *Advanced Powers Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450 (E.D. Pa. 1992).  Therefore, "those courts that take the broad view of the mistake requirement have the better-reasoned approach."  Moore's Federal Practice P15.19 [3][d] (3d ed. 2005).  Indeed, the 1966 advisory committee's notes for Rule 15 indicate "that relation back is not limited to situations in which the amendment simply 'correct[s] a misnomer or misdescription of a defendant.'"  *Arthur v. Maersk, Inc.,* 434 F.3d 196, 208 (3d Cir. 2006).  Moreover, there is no linguistic basis in the Rule for making a distinction between a misnomer, as when Plaintiff mistakenly provides an inaccurate description of the defendant, and any other type of mistake that renders the Plaintiff equally unable to identify the potentially liable party

4

or to name that party as a defendant in the original complaint. *See Alberts v. Arthur J. Gallagher & Co.*, 341 B.R. 91, 101 (Bankr. D.D.C. 2006).

Cox is mistaken that this Circuit's refusal in *Rendall-Speranza v. Nassim*, 107 F.3d 913, (D.C. Cir. 1997) to apply Rule 15(c)'s "mistake concerning the identity of the proper party" language to mistakes of law implies that its application is reserved strictly to misnomers. The one does not imply the other, and the Court's holding does not preclude a slightly broader reading of the rule. Indeed, the *Rendall-Speranza* Court in that very decision expressed a willingness to consider a more expansive application of the rule provided support is given "if not from the rule itself, then in the Advisory Committee Notes to the Federal Rules, or in the cases of our sister circuits, or in the policies behind either the rule or the statute of limitations." *Id.* at 918.

Some of sister circuits in fact do interpret the meaning of Rule 15(c) both narrowly to include misnomers and slightly more broadly to include mistakes in selecting the original defendants. The former reading is not inconsistent with, but is a subset of, the latter. For instance, the Second Circuit's holding that Rule 15(c) applies to correcting misnomers, *see Datskow v. Teledyne, Inc.,* 899 F.2d 1298 (2d Cir. 1990) (Rule 15(c) applies to amendments that seek to "correct a misnomer or misdescription of a defendant"); *Ingram v. Kumar,* 585 F.2d 566 (2d Cir. 1978) (upholding the district court's decision permitting plaintiff to amend her complaint to correct a misnomer when, due to a minor misspelling, she mistakenly named as the defendant a different physician than the one she intended), has not precluded district courts within the Second Circuit from freely expanding upon this narrow

5

interpretation of Rule 15(c). "The rule clearly covers not only cases where a party has been misnamed or misdescribed, but also cases where there exists a possibility that the plaintiff may have made a mistake in selecting the original defendants." *Sounds Express Int'l. Ltd. V. American Themes and Tapes Inc.,* 101 F.R.D. 694 697 (S.D.N.Y. 1984) to include, more generally, mistakes made in selecting the original defendants. *See also, Cimino v. Glaze,* 228 F.R.D. 169 (W.D.N.Y. 2005) ("Under Fed. R. Civ. P. 15(c), the mistake prerequisite should not be limited to cases of misnomer. . . . A court should allow an amendment to relate back to add a defendant that was not named at the outset, but was added later when plaintiff realized that the defendant should have been named."); *Koal Indus. Corp. v. Asland, S.A.* 808 F. Supp. 1143, 1157 (S.D.N.Y. 1992) ("Rule 15(c) . . . has been given a much broader reading" than misnomer).

      Plaintiff's case is distinguishable from *Rendall-Speranza v. Nassim*, 107 F.3d 913, (D.C. Cir. 1997). In that case, the plaintiff initially omitted her employer as a defendant in her original complaint because she had made "an error of judgment about whether an employer was liable for the act of its employee." Her error was a mistake of *law*, that is, her confusion centered around the substantive liability of a would-be defendant. Here, on the other hand, Plaintiff has not changed his mind about Cox's liability and is not employing a new strategy in his offense by adding her now. Consistently, throughout this lawsuit, since the filing of his original Complaint, Plaintiff has blamed Cox for her involvement in the Washingtonienne blog escapade. Cox admits Plaintiff's assertions of her liability are "essentially the same in the two versions of the complaint." *See* Def.'s Motion to Dismiss at 9. *Rendall-Speranza*, on

6

the other hand, never claimed that she initially intended to name her employer as a defendant when she first filed the lawsuit. Instead, she claims her reason for not initially identifying her employer as a defendant was because she did not believe her employer was liable for her injuries.

Plaintiff's case is more like *Tokio Marine Management v. Japan Intermodal Transport Co.,* 1991 U.S. Dist. LEXIS 15977 at *9 (S.D.N.Y. 1991). In that case, defendants similarly argued that because Plaintiff mentioned them in the original complaint without naming them as defendants, Plaintiff should be precluded from adding them as defendants in his amended complaint. However, the court held that, "although plaintiff did not include the vessel [the new defendant] as a defendant in the original complaint, the complaint does name the vessel as having transported the VCRs; therefore, it would be unreasonable not to know that the vessel should have been named as a defendant." (emphasis added). *See* Charles A. Wright et al., Federal Practice and Procedure § 1498, at 125 (1990) ("Common sense, prudence, and efficiency suggest to the reasonable man that he should pursue his initial investigation and prepare his defense . . . in such a manner as to collect and preserve evidence regarding all of the foreseeable actions arising from the event."); *Plubell v. Merck & Co.,* 434 F.3d 1070 (8th Cir. 2006) (The purpose of Rule 15(c) is to ensure "that at all times [pleadings] are to assist, not deter, the disposition of litigation on the merits.").

**II.    Section 230 of the Communications Decency Act Does Not Protect Cox from Plaintiff's Claims**

   **A. Cox is liable with respect to Cutler's blog because she knew that republishing it would be infringing on Plaintiff**

Cox argues that Section 230 of the Communications Decency Act immunizes her from Plaintiff's claims because she *only* described, republished excerpts of, and linked back to Cutler's blog. Section 230 "cannot be deemed to abrogate the common law principle that one who republishes defamatory matter originated by a third person is subject to liability if *he or she knows or has reason to know of its defamatory content.*" *Barrett v. Rosenthal,* 9 Cal. Rptr. 3d 142, 152 (Cal. App. 1st Dist. 2004) (overturned on other grounds) (emphasis in original) (*citing* Rest. 2d Torts, § 581(1). "An entity that exercises some degree of editorial control over the dissemination of the defamatory material will generally be liable for its publication (i.e., publisher liability). A newspaper, for example, may be liable for defamation if a letter to the editor that it publishes contains false and defamatory statements." *Barrett v. Fonorow,* 343 Ill. App. 3d 1184, 1192 (Ill. App. Ct. 2003). This Court should disallow Cox from taking protection under Section 230 for republishing material that she had reason to know, and did know, would be infringing to Plaintiff.

Cox knew that by publicizing Cutler's blog she was inviting legal liability, yet she posted the entire thing and Cutler's identity on Wonkette's website anyway. "OK," Cox informed her readers, "so we just spent half an hour trying to keep all the initials in Washingtonienne's blog straight just so that we could sub in other initials, on the off chance that she used real initials and the whole thing isn't some elaborate

prank."[3] Even being alerted that Cutler had just pulled the blog from Blogspot moments beforehand did not deter her.[4]  Moreover, she admits her initial reservation about identifying individuals referenced in the blog was a precautionary measure to avoid legal liability.  "It seems silly to not name names, but we're still not going to," Cox blogged at one point,[5] after which she confessed, "[o]ur life savings . . . that's why we won't be naming any names."[6]  Nevertheless, the explosion of reader traffic overcame her within just a couple of days, and she broke the news to her readers, "WASHINGTONIENNE SPEAKS!! WONKETTE EXCLUSIVE!! CREDIT WONKETTE!! . . . Wonkette spoke to Washingtonienne.  Her name is Jessica Cutler."[7]  Section 230 does not bar Plaintiff's claims against Cox for intentional infringement.

### B. Cox acted as an Information Content Provider when she published Cutler's identity

Section 230(c)(1) states, "No provider or user or an interactive computer service shall be treated as the publisher or speaker of any information provided by *another* information content provider." (Emphasis added.) 47 U.S.C. § 230(c)(1) (2000). "The adjective 'another' implies that a party may rightfully claim immunity even if it is it is itself an information content provider so long as it did not 'provide' the defamatory material at issue." *Barrett v. Fonorow,* 343 Ill. App. 3d 1184, 1196 (Ill. App. Ct. 2003).  At the very least, Cox was an information content provider with

---

[3] *See* http://wonkette.com/archives/the-lost-washingtonienne-wonkette-exclusive-etc-etc-004162.php.
[4] *Id.* (Cox explained to her readers, "her blog may be erased from Blogspot, but we have the whole sordid Washingtonienne saga right here.").
[5] *See* http://wonkette.com/archives/we-love-you-washingtonienne-004159.php.
[6] *See* http://wonkette.com/archives/washingtonienne-arent-you-bored-yet-009628.php.
[7] *See* http://wonkette.com/archives/the-lost-washingtonienne-wonkette-exclusive-etc-etc-004162.php.

9

regard to publishing Cutler's identity as the author of the Washingtonienne blog as the information was original and not merely a republication. Therefore, she cannot claim § 230 immunity. "Every one who takes part in the publication is charged with publication." *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 332 (4th Cir. 1997) (*citing* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 113, at 799 (5th ed. 1984).

### C. This Court must determine who publicized the Washingtonienne, as it must be at least Cutler or Cox, if not both

Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). When the information is not "provided" by another information content provider, then § 230(c) does not grant immunity to the provider or user of the interactive computer service for the information. Section 230(c) does not "afford[] immunity when providers and users of interactive computer services knew or had reason to know that the information provided was not intended for publication on the Internet" because the information is not "provided" within the meaning of § 230(c)(1). *See Batzel v. Smith,* 333 F.3d 1018, 1032 (9th Cir. 2003) (§ 230(c) did not confer immunity to an Internet service operator who posted on his listserv information received when he should have reasonably conclude that the sender did not intend for the information to be posted). To the extent that the Court determines that Cutler did not "provide" her blog within the meaning of § 230(c), then Cox can find no refuge in this provision.

### III. This Court has Already Found that Plaintiff has Stated Valid Causes of Action for Both False Light Invasion of Privacy and Intentional Infliction of Emotional Distress

Cox alleges in her Motion to Dismiss that Plaintiff's claims for both false light invasion of privacy and intentional infliction of emotional distress are insufficient. This Court has already found that Plaintiff has sufficiently met his burden with respect to these two claims. *See* Doc. 24 (denying motion to dismiss).

### IV. Plaintiff Preserves for Appeal this Court's Decision to Apply a One-year Statute of Limitations to His Claims

If, as Plaintiff has previously argued, Plaintiff's claim for the disclosure of private facts are governed by the three-year statute of limitations, then his assertions against Cox in his Amended Complaint will no longer need to relate back to the occurrences set forth in his original Complaint as he served her well within three years of the date she publicized Cutler's blog.

As Plaintiff previously argued, we believe that Maryland and D.C. apply the three-year statute of limitation provided for by statute to most invasion of privacy claims; only those invasion of privacy claims that mimic defamation claims are limited to a one-year statute of limitations, i.e., false-light claims. *Smith v. Esquire, Inc.,* 494 F. Supp. 967, (D. Md. 1980). As we discussed previously, in *Smith*, the Court held that if a plaintiff brings a claim for defamation and false light for the same underlying facts, the statute of limitations for the defamation action shall control both claims, because of their similarity, but if there is a distinct invasion of privacy claim for the disclosure of private facts, then there is no such restriction on the statute of limitations; and, the District of Columbia articulated the same distinction, *See Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1074-1075 (D.D.C. 1995) (invasion

11

of privacy only limited to one year because the claim was the same as the one for defamation).

Plaintiff recognizes that this Court ruled against Plaintiff on this aspect of the statute of limitations issue, but Plaintiff preserves his right to appeal this Court's decision as this issue has not yet been decided by the highest Court in D.C.

## CONCLUSION

For the foregoing reasons, Defendant Cox's motion should be denied.

Dated: February 20, 2007

 /s/ Jonathan Rosen<br>
Jonathan Rosen, Esq.<br>
1645 Lamington Rd.<br>
Bedminster, NJ 07921<br>
(908) 759-1116<br>
Attorney for Plaintiff